Peter E. Perkowski (SBN 199491)
peter@perkowskilegal.com
Matthew P. Kelly (SBN 224297)
PERKOWSKI LEGAL, PC
445 S. Figueroa Street, Suite 3100
Los Angeles, CA 90071
Telephone: (213) 426-2137

Attorneys for Defendants OKULARITY, INC. and JON NICOLINI

David Quinto (Bar No. 106232)
Joanna Ardalan (Bar No. 285384)
jardalan@onellp.com
ONE LLP
9301 Wilshire Boulevard, Penthouse Suite
Beverly Hills, CA 90210
Telephone: (310) 866-5157

Peter R. Afrasiabi (Bar No. 193336)
pafrasiabi@onellp.com
ONE LLP
4000 MacArthur Boulevard, East Tower Suite 500
Newport Beach, CA 92660
Telephone: (949) 502-2870

Attorneys for Defendants BACKGRID USA, INC., SPLASH NEWS AND PICTURE AGENCY, LLC, and XPOSURE PHOTO AGENCY, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTTECH MEDIA GROUP LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>OKULARITY, INC. et al.,<br><br>*Defendants*. | Case No. 2:20-cv-06298 RGK (Ex)<br><br>*Hon. R. Gary Klausner*<br><br>**DEFENDANTS' JOINT MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:         Sept. 28, 2020<br>Time:        9:00 a.m.<br>Place:        TBD<br><br>Compl. filed:    July 15, 2020<br><br>*No Trial Date Set* |

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................... 1

II.  RELEVANT FACTS ............................................................................. 2

   A.  DMCA framework .......................................................................... 2

   B.  Summary of allegations ................................................................ 3

   C.  Procedural history .......................................................................... 4

III.  LEGAL STANDARD ............................................................................ 5

IV.  ARGUMENT ........................................................................................ 6

   A.  The DMCA and RICO claims fail because they have not pleaded fraud and fraudulent conduct with particularity. ...................................... 6

      1.  The claim for misrepresentation under DMCA § 512(f) has not been pleaded with Rule 9 specificity. ................................................ 7

      2.  The RICO claim has not been pleaded with Rule 9 specificity. ............... 8

   B.  The RICO claims is barred on its face under Noerr-Pennington. ................ 10

   C.  The DMCA and RICO claims fail even if reviewed under Rule 8 ............. 12

      1.  The DMCA claim fails because ENTtech fails to properly allege the necessary elements. ...................................................................... 12

         a.  ENTtech has not pleaded a "misrepresentation." ..................................... 12

         b.  ENTtech has not properly pleaded "knowingly," which requires subjective bad faith. .................................................................. 13

         c.  ENTtech cannot properly plead "materially." ..................................... 14

         d.  ENTtech has not even pleaded the DMCA take-down notices sufficiently to satisfy Rule 8. .................................................... 15

      2.  The RICO claim fails as a matter of law. ............................................. 15

         a.  Predicate acts are factually and legally insufficient. ....................... 16

         b.  ENTtech does not and cannot plead a "pattern." .............................. 19

         c.  RICO enterprise has not been sufficiently pleaded. ......................... 20

   C.  ENTtech should not be granted leave to amend. .................................... 21

V.  CONCLUSION ....................................................................................... 22

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### Cases

4

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009) ...........................................................................5, 8

5

*Bell Atl. Corp. v. Twombly*,
     550 U.S. 554 (2007) ..............................................................................5

6

7

*Blake v. Dierdorff*,
     856 F.2d 1365 (9th Cir. 1988) ..............................................................8

8

9

*Blue Oak Med. Group v. State Comp. Ins. Fund*, No. 2:18-cv-03867-RGK-sk,
     2018 WL 6219892 (C.D. Cal. Nov. 7, 2018).....................8, 16, 20, 21

10

11

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
     140 F.3d 494 (3d Cir. 1998) ................................................................17

12

*Cadle Co. v. Schultz*,
     779 F. Supp. 392 (N.D. Tex. 1991).....................................................20

13

14

*Cahill v. Liberty Mut. Ins. Co.*,
     80 F.3d 336 (9th Cir. 1996)...................................................................5

15

16

*Cal. Motor Transport Co. v. Trucking Unlimited*,
     404 U.S. 508 (1972) ............................................................................11

17

18

*CyWee Group Ltd. v. HTC Corp.*,
     312 F. Supp. 3d 974 (W.D. Wa. 2018) ...............................................21

19

*Design Furnishings, Inc. v. Zen Path, LLC*, No. Civ. 2:10-2765 WBS GGH,
     2010 WL 5418893 (E.D. Cal. Dec. 23, 2010) ....................................12

20

21

*Eclectic Props. E. v. Marcus & Millichap Co.*,
     751 F.3d 990 (9th Cir. 2014)...............................................................16

22

23

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*,
     713 F.3d 502 (9th Cir. 2013)...............................................................21

24

25

*First Nationwide Bank v. Gelt Funding Corp.*,
     820 F. Supp. 89 (S.D.N.Y. 1993)........................................................20

26

27

*Goldfine v. Sichenzia*,
     118 F. Supp. 2d 392 (S.D.N.Y. 2000)..................................................15

28

MEMO OF Ps & As IN SUPPORT OF MOTION TO DISMISS

*Grauberger v. St. Francis Hosp.*,
    169 F. Supp. 2d 1172 (N.D. Cal. 2001) ............................................................ 18

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) ............................................................................................ 19

*Harris Custom Builders, Inc. v. Hoffmeyer*,
    1994 WL 329962 (N.D. Ill. 1994) ..................................................................... 18

*Hirsch v. ENTtech Media Group LLC*,
    S.D.N.Y. Case No. 1:19-cv-7031-AT (filed July 27, 2019) ................................ 3

*Humphreys v. City of Coolidge*, No. CV-17-04045-PHX-DWL,
    2019 WL 316240 (D. Ariz. Jan. 24, 2019) ........................................................ 16

*I.S. Joseph Co., Inc. v. J. Lauritzen A/S*,
    751 F.2d 265 (8th Cir. 1984) .............................................................................. 18

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ................................................................... 6, 8, 9, 13

*Kottle v. Nw. Kidney Ctrs.*,
    146 F.3d 1056 (9th Cir. 1998) ............................................................................ 10

*Lenz v. Universal Music Corp.*,
    815 F.3d 1145 (9th Cir. 2015) ............................................................................ 13

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ............................................................................ 22

*Lujan v. Mansmann*,
    956 F. Supp. 1218 (E.D. Pa. 1997) .................................................................... 20

*Mercer Publ'g, Inc. v. Smart Cookie Ink, LLC*, No. C12-0188JLR,
    2012 WL 12863934 (W.D. Wash. July 25, 2012) ................................. 10, 11, 12

*Midwest Grinding Co. v. Spitz*,
    976 F.2d 1016 (7th Cir. 1992) ............................................................................ 15

*Nationwide Mut. Ins. Co. v. Darden*,
    503 U.S. 730 (1992) .............................................................................................. 7

*Neder v. United States*,
    527 U.S. 1 (1999) .................................................................................................. 7

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ................................................................................ 6, 8

MEMO OF Ps & As IN SUPPORT OF MOTION TO DISMISS

*Online Policy Group v. Diebold, Inc.*,
    337 F. Supp. 2d 1195 (N.D. Cal. 2004) ............................................................ 12

*Peterson v. Phil. Stock Exch.*,
    717 F. Supp. 332 (E.D. Pa. 1989) ..................................................................... 18

*Plount v. Am. Home Assur. Co.*,
    668 F. Supp. 204 (S.D.N.Y. 1987) ............................................................... 15, 16

*Polaris Images Corp. v. ENTtech Media Group LLC*,
    S.D.N.Y. Case No. 1:19-cv-8208-KPF (filed Sept. 3, 2019) ............................. 3

*Religious Tech. Center v. Wollersheim*,
    971 F.2d 364 (9th Cir. 1992) ........................................................................... 19

*Richmond v. Nationwide Cassel L.P.*,
    52 F.3d 640 (7th Cir. 1995) ............................................................................. 20

*Rossi v. Motion Pictures Ass'n of Am. Inc.*,
    391 F.3d 1000 (9th Cir. 2004) ......................................................................... 13

*Schreiber Distr. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393, 1400-01 (9th Cir. 1986) ........................................................... 9

*Schwartzwald v. ENTtech Media Group LLC*,
    S.D.N.Y. Case No. 1:19-cv-5505-JPO (filed June 12, 2019) ............................ 3

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) ......................................................................................... 16

*Shropshire v. Canning*, No. 10-cv-1941-LHK,
    2011 WL 90136 (N.D. Cal. Jan. 11, 2011) ........................................................ 2

*Somers v. Apple*,
    729 F.3d 953 (9th Cir. 2013) ............................................................................. 5

*Sosa v. DIRECTV, Inc.*,
    437 F.2d 923 (9th Cir. 2006) ................................................................ 10, 11, 17

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ............................................................................. 5

*Suris Gen. Contr. Corp. v. New Metro. Fed. Sav. & Loan Ass'n*,
    873 F.2d 1401 (11th Cir. 1989) ....................................................................... 15

*Turner v. Cook*,
    362 F.3d 1219 (9th Cir. 2004) ......................................................................... 19

MEMO OF Ps & As IN SUPPORT OF MOTION TO DISMISS

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't,*
    770 F.3d 834 (9th Cir. 2014) ................................................................ 17

*United States v. Enmons,*
    410 U.S. 396, 400 (1973) ...................................................................... 17

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ............................................................ 6, 7

**Statutes**

17 U.S.C. § 512 .............................................................................................. 2

17 U.S.C. § 512(c)(1) ..................................................................................... 2

17 U.S.C. § 512(c)(1)(C) ............................................................................... 2

17 U.S.C. § 512(c)(3) ..................................................................................... 2

17 U.S.C. § 512(c)(3)(A) ............................................................................... 2

17 U.S.C. § 512(c)(3)(A)(v) ........................................................................ 13

17 U.S.C. § 512(f) ............................................................................ 3, 4, 7, 12

17 U.S.C. § 512(g)(1) ................................................................................. 3, 7

17 U.S.C. § 512(g)(2)(A) ............................................................................ 3, 7

17 U.S.C. § 512(i)(1)(A) ................................................................................ 3

18 U.S.C. § 1341 .......................................................................................... 16

18 U.S.C. § 1951(a) ..................................................................................... 17

18 U.S.C. § 1951(b)(2) ................................................................................ 17

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................. 5

Fed. R. Civ. P. 9(b) ........................................................................................ 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

After committing numerous acts of infringement and, as a consequence, being deemed a "repeat infringer" by Instagram and thus having its account suspended, plaintiff ENTtech Media Group LLC was desperate to get its account restored. Incensed that the statutory framework set out in the Digital Millennium Copyright Act ("DCMA") operated as intended, ENTtech turned its attention to the owners of the copyrights in the images it infringed—defendants BackGrid USA, Inc., Splash News and Picture Agency, LLC, and Xposure Photo Agency, Inc. (the "Photo Agencies")—and their agent, Okularity, Inc. and its CEO Jon Nicolini (together "Okularity").[1] In an attempt to gain leverage, ENTtech manufactured claims out of whole cloth, accusing Defendants of running a "fraudulent scheme" to "extort" settlement payments out of itself, the victim.

Except there's no fraud, no scheme, and no extortion. There is only the straight-forward application of a program created by Congress—the DMCA— working as designed to protect the rights of copyright owners and protect platforms like Instagram from liability for infringements like ENTtech's. Viewed in that context, this case presents serial wrongdoer ENTtech—which has not once denied that it infringed the Photo Agencies' copyrights—casting itself as the victim of a racketeering enterprise comprising the owners of the very copyrights it used without authorization (and their agent), which enterprise availed itself of legal process set up to protect those copyrights, thereby "injuring" ENTtech. It is judicial gaslighting and an abuse of process.

The claims, such as they are, predictably fail to meet any relevant standard,

---

[1] Okularity and the Photo Agencies are separately represented. So as not to burden the Court with multiple duplicative arguments, Defendants have prepared this joint brief and are filing it in support of their separately filed motions to dismiss. In addition, the Photo Agencies are responding now, even though their deadline to respond has not yet arrived and one of the Agencies, BackGrid, has yet to be served with the First Amended Complaint.

factually or legally. The First Amended Complaint ("FAC") sounds in fraud, but ENTtech cannot met the heightened pleading standards of Rule 9(b). On top of that, the DMCA claim fails because ENTtech has not—and cannot—allege that the copyrighted images it used without authorization are noninfringing. Without that key allegation, there has been no "misrepresentation" that "material or activity is infringing," as required under the statute. For its part, the RICO claim cannot survive scrutiny either: Defendants are immune from RICO liability, under the *Noerr-Pennington* doctrine, because their activity, even as alleged in the FAC, is protected by the First Amendment right to petition. And in any event, ENTtech has failed to adequately allege necessary elements of each claim.

The FAC is fatally flawed and should be dismissed with prejudice.

## II.   RELEVANT FACTS

### A.   DMCA framework

Congress adopted the DMCA, 17 U.S.C. § 512, in 1998 in part to address copyright issues with user-generated content, such as videos and pictures posted to internet service providers ("ISPs") and other website owners. *E.g.*, *Shropshire v. Canning*, No. 10-cv-1941-LHK, 2011 WL 90136, at *4 (N.D. Cal. Jan. 11, 2011). The statute sets forth a process whereby copyright owners can give ISPs and websites a "notification of claimed infringement"—that is, notice that copyrighted material has been placed on the site "at the direction of a user." 17 U.S.C. §§ 512(c)(1), (c)(3). Commonly called a "take-down notice," among other things the notification must identify the infringing and infringed work, contain a "statement that the complaining party has a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law," and be sworn under penalty of perjury. 17 U.S.C. § 512(c)(3)(A). The ISP or website is immunized from liability if it responds to the take-down notice by acting "expeditiously to remove, or disable access to, the material." 17 U.S.C. § 512(c)(1)(C). This is commonly referred to as the "safe harbor."

But while acting expeditiously is necessary for an ISP or website to avail itself of the safe harbor, it's not sufficient. An ISP must also have "adopted and reasonably implemented, and informs [users of its] system or network of, a policy that provides for the termination in appropriate circumstances of [users] who are repeat infringers." 17 U.S.C. § 512(i)(1)(A). Instagram, a social media network where users post photo and video content, has adopted such a repeat infringer policy.[2] Instagram does not publish details of the policy, such as how it defines "repeat infringer."

In addition, to avail itself of the safe harbor for the "good faith disabling of access to, or removal of," infringing content, the ISP or website must "take[] reasonable steps promptly to notify the subscriber that it has removed or disabled access to the material." 17 U.S.C. §§ 512(g)(1), (g)(2)(A).

Among the protections provided for the users of the ISP or website, the DMCA provides for a legal claim when content is removed as a result of take-down notices that contain misrepresentations. Specifically, "[a]ny person who knowingly materially misrepresents … *that material or activity is infringing*" is liable for damages that result from the ISP or website "removing or disabling access to the material or activity claimed to be infringing." 17 U.S.C. § 512(f) (emphasis added).

## B.    Summary of allegations[3]

ENTtech is a serial infringer. This case alone involves the infringement of 48 copyrighted photographs owned by the Photo Agencies.[4] (FAC ¶¶ 29, 37.) ENTtech does not deny that it infringed the photos. Rather, this case is about the consequences flowing from those infringements, and whether Defendants, by engaging in lawful

---

[2] *See* https://help.instagram.com/1586774981367195?helpref=page_content. This policy is referenced in the FAC. (FAC ¶¶ 14, 39.)

[3] As they must, Defendants accept as true the allegations of the FAC. Separately, Defendants are serving and will later file a Motion for Sanctions under Fed. R. Civ. P. 11 because ENTtech and its counsel knew them to be false when filing the FAC.

[4] ENTtech has been sued for copyright infringement other times as well. *See Schwartzwald v. ENTtech Media Group LLC*, S.D.N.Y. Case No. 1:19-cv-5505-JPO (filed June 12, 2019); *Hirsch v. ENTtech Media Group LLC*, S.D.N.Y. Case No. 1:19-cv-7031-AT (filed July 27, 2019); *Polaris Images Corp. v. ENTtech Media Group LLC*, S.D.N.Y. Case No. 1:19-cv-8208-KPF (filed Sept. 3, 2019).

1   actions contemplated by the DMCA, have engaged in conduct that amounts to

2   violations of DMCA § 512(f) or of RICO.

3         The Photo Agencies are photo agencies that license copyrighted images to

4   some of the biggest media outlets in the world. (*See* FAC ¶¶ 25-26.) Okularity is their

5   agent. (FAC ¶ 24.) Using software, Okularity searches the Internet for unauthorized

6   uses of the Photo Agencies' copyrighted images. (FAC ¶ 15.) According to ENTtech,

7   through this software Okularity generates and submits DMCA notices to social media

8   platforms, including Instagram, for unauthorized images it finds, and it does so

9   "without any of the investigation, warning or legal analysis required by the DMCA,"

10  specifically without any consideration of fair use. (FAC ¶ 15; *see* FAC ¶¶ 27, 40.)

11  Because the DMCA take-down notices are allegedly sent automatically, without

12  analyzing fair use, ENTtech alleges that they contain misrepresentations as to

13  Okularity's "good faith belief" that the material is infringing. (FAC ¶ 51.)

14        Okularity allegedly continues to file DMCA take-down notices until Instagram

15  disables the account; only then does Okularity allegedly begin negotiating to settle

16  claims of infringement. (FAC ¶¶ 15-16.) ENTtech claims that the account suspension

17  provides leverage for maximizing settlement recoveries on behalf of the Photo

18  Agencies, amounting to extortion. (FAC ¶ 16.) This process—from the sending of

19  DMCA notices to the negotiating of settlements—constitutes a fraudulent scheme

20  according to ENTtech. (FAC ¶¶ 12-18.)

21        **C.    Procedural history**

22        ENTtech filed its initial Complaint on July 15, 2020. (ECF 1.) On August 5,

23  counsel for all Defendants sent a letter to ENTtech's counsel identifying numerous

24  deficiencies in the Complaint, including that the DMCA claim and the RICO claim

25  were legally and factually baseless. (Perkowski Decl. Ex. 1.) The parties' counsel

26  telephonically discussed the Complaint's deficiencies on August 6. (Perkowski Decl.

27  ¶ 6.) At the time, ENTtech's counsels' response to the substance of Defendants'

28  identified deficiencies amounted to, simply: "We disagree." (*Id.*)

4

Nevertheless, ENTtech filed the FAC the following week. (ECF 23.) The FAC dropped two state-law claims that were preempted (and subject to a potential anti-SLAPP motion), but it doubled down on the DMCA and RICO claims. The FAC did not cure the deficiencies in the DMCA and RICO claims that Defendants previously identified: there were no substantive or meaningful changes to the "Allegations Common to All Causes of Action (FAC¶¶ 12-34), and the DMCA claim was entirely unchanged (FAC ¶¶ 35-43).

In the RICO claim, ENTtech added an allegation concerning the Photo Agencies' participation in the alleged enterprise (FAC ¶ 49), an allegation concerning the fraudulent nature of the DMCA take-down notices (FAC ¶ 51), an allegation concerning alleged extortion (FAC ¶ 52), several allegations concerning the Photo Agencies' filing of a lawsuit for copyright infringement against ENTtech (FAC ¶¶ 53-54), and allegations concerning injury (FAC ¶¶ 55).

## III.   LEGAL STANDARD

Under the Federal Rules, claims should be dismissed at the outset of litigation if a plaintiff fails to plausibly allege a cognizable legal theory or sufficient facts to support its legal theory. *See Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Plausibility requires pleading facts, as opposed to conclusory allegations or the 'formulaic recitation of the elements of a case of action.'" *Somers*, 720 F.3d at 959-60 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). In ruling on a motion under Rule 12(b)(6), while the Court must accept well-pleaded allegations as true and construe them in the light most favorable to the non-moving party, *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), the Court may disregard "[t]hreadbare recitals"—the unsupported conclusions and unreasonable inferences meant merely to plead required elements consistent with a defendant's liability. *Iqbal*, 556 U.S. at 678; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Allegations of fraud, however, must meet the heightened pleading requirement of Rule 9(b). *See* Fed. R. Civ. P. 9(b). Rule 9(b) requires that allegations of fraud be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (internal quotation marks omitted). This standard requires a plaintiff to state the time, place, and content of the alleged misrepresentation and, critically, explain why the statement is false or misleading. *See id.*; *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994).

## IV.   ARGUMENT

The FAC falls well short of these standards as to both claims.

### A.   The DMCA and RICO claims fail because they have not pleaded fraud and fraudulent conduct with particularity.

Each of plaintiff's claims fail because they are based on averments of fraud the circumstances of which plaintiff has not pleaded with particularity.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Because of the serious nature of the allegations, even claims without fraud as an element must meet this standard when the averments on which they are based sound in fraud.

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege … that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim must satisfy the particularity requirement of Rule 9(b).

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). The failure here to plead the circumstances of the fraud with particularity infects both claims.

Both of ENTtech's claims "sound in fraud." In the first substantive allegation of the FAC, ENTtech describes an alleged "scheme" that is based on the alleged

6

"manipulation" of DMCA take-down notices (FAC ¶ 12) and that is carried out using "fraudulent" methods (FAC ¶ 18). According to ENTtech, the DMCA notices themselves contain "fraudulent statements." (FAC ¶ 18.) This alleged fraudulent scheme, centered on fraudulent statements made in DMCA notices, forms the basis of both claims. In short, ENTtech has attempted to allege "a unified course of fraudulent conduct" and "rel[ies] entirely on that course of conduct as the basis of" both claims. *Vess*, 317 at 1103.

### 1. The claim for misrepresentation under DMCA § 512(f) has not been pleaded with Rule 9 specificity.

The first claim asserts a violation of the DMCA, which provides that "[a]ny person who knowingly and materially misrepresents … that material or activity is infringing" is liable to any person "injured by such misrepresentation, as the result of … relying upon such misrepresentation … ." 17 U.S.C. § 512(f). It is a "well-established rule of construction that 'where Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.'" *Neder v. United States*, 527 U.S. 1, 21 (1999) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 730, 739 (1992)). The established meaning of "misrepresentation," which appears three times in § 512(f), requires a Rule 9 pleading standard.

Yet of the DMCA take-down notices here—whether there are 48 (FAC ¶ 29), or "at least" 48 (FAC ¶ 37), or only 14 (FAC ¶ 50)—none of them is alleged with any specificity at all. Even though Instagram doubtlessly took "reasonable steps promptly to notify" ENTtech each time it removed content in response to Okularity's DMCA notices, 17 U.S.C. §§ 512(g)(1), (g)(2)(A), ENTtech includes no allegations connecting each take-down notice, and its content, with any particular Photo Agency or any specific image (the "who," "where," and "how"), and when each was sent (the "when"). Without these allegations, the claim fails.

ENTtech likewise fails to plead "particularized allegations of the circumstances *constituting* fraud." *GlenFed*, 42 F.3d at 1547 (emphasis in original). Merely identifying a statement is not enough; a statement "must be false to be fraudulent." *Id.* at 1547-48. At most, ENTtech alleges that Defendants "made third-party § 512(f) misrepresentations to Instagram stating that Plaintiff's images … were infringing intellectual property rights owned by" the Photo Agencies. (FAC ¶ 37.) This alone is a "threadbare recital" of claim elements that the Supreme Court has instructed should be disregarded. *See Iqbal*, 556 U.S. at 678. What, exactly, is the misrepresentation? ENTtech does not allege anywhere that its Instagram posts are noninfringing, so Defendants' representation concerning infringement is not false. Without more, there is nothing in the FAC "specific enough to give defendants notice of the particular misconduct which is alleged to constitute fraud." *Neubronner*, 6 F.3d at 671 (internal quotation marks omitted).

## 2. The RICO claim has not been pleaded with Rule 9 specificity.

The same analysis applies to the RICO claim. "[I]n RICO cases, Rule 9(b) requires that fraud be pled with particularity to state a claim for relief." *Blue Oak Med. Group v. State Comp. Ins. Fund*, No. 2:18-cv-03867-RGK-sk, 2018 WL 6219892, at *3 (C.D. Cal. Nov. 7, 2018). This is an exacting standard:

> To allege fraud with particularity, a plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. A plaintiff might do less and still identify the statement complained of; indeed, the plaintiff might do less and still set forth some of the circumstances of the fraud. But the plaintiff cannot do anything less and still comply with Rule 9(b)'s mandate to set forth with particularity those circumstances which *constitute* the fraud.

*GlenFed*, 42 F.3d at 1548 (emphases in original); *see also Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988) (plaintiffs must allege statements and "the reasons for their falsity").

ENTtech pleads predicate acts of "using the mails or wires in furtherance of a scheme to defraud." (FAC ¶ 47.) Fraud is a necessary element of these claims too. *See Schreiber Distr. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986) (if fraudulent acts are the basis of the alleged pattern of racketeering activity, Rule 9(b) requires plaintiff to allege with particularity). Yet one searches in vain for *any* factual allegations in the FAC that meet this requirement.

In fact, ENTtech's allegations in this regard are so bereft that all of them can be easily listed:

- "Defendants … are engaged in a scheme to deprive Plaintiff of its digital assets through a pattern of fraudulent statements made in DMCA Notices and directly to Plaintiff" (FAC ¶ 18.)

- Defendants "are using unfair, fraudulent and illegal methods to carry out their scheme" (FAC ¶ 19.)

These allegations are devoid of facts necessary to satisfy Rule 9(b). While ENTtech identifies the allegedly false statement—DMCA notices—it makes no attempt to "set forth an explanation as to why the statement … was false or misleading." *GlenFed*, 42 F.3d at 1548. As in *GlenFed*, this failure renders the FAC insufficient.

In this claim, ENTtech tries to explain why the DMCA notices are false, but the allegation is circular and untenable: According to ENTtech, the DMCA notices are fraudulent because they contain a statement that the party "has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner," when in fact, defendants "knew that this statement was false." (FAC ¶ 51.[5]) This effort fails. It's an attempt to turn an allegation about scienter— undifferentiated as to all Defendants and averred generally—into the basis for an entire fraud-based "scheme" and two fraud-based claims, which must be pleaded with particularity. The very idea turns Rule 9(b) on its head.

---

[5] Importantly, paragraph 51 of the FAC appears only in the RICO claim; it is not alleged as part of the DMCA claim and therefore cannot be used to support that claim.

1    Despite two tries to plead them, ENTtech's claims rely on conclusory or non-

2    existent allegations of fraudulent conduct. They should be dismissed under Rule 9(b).

3    **B.      The RICO claims is barred on its face under *Noerr-Pennington*.**

4    Because the RICO claim is based on Defendants' protected activities of

5    petitioning for redress, it is barred under the *Noerr-Pennington* doctrine.

6    The *Noerr-Pennington* doctrine is derived from the Petition Clause of the First

7    Amendment, U.S. Const., amend 1; it provides that "those who petition any

8    department of the government for redress are generally immune from statutory

9    liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.2d 923, 929

10   (9th Cir. 2006). Claims based on the exercise of First Amendment rights present a

11   danger of chilling those rights; thus, under *Noerr-Pennington*, courts will impose

12   heightened pleading obligations on the party asserting those claims. *See Kottle v. Nw.*

13   *Kidney Ctrs.*, 146 F.3d 1056, 1063 (9th Cir. 1998). Specifically:

> In its pleadings, the party [asserting claims] must explain exactly why the alleged conduct is not protected by the *Noerr-Pennington* doctrine. If it fails to do so, even at the Rule 12(b)(6) stage, the court must dismiss the claim and thereby preserve the "breathing space" afforded to First Amendment guarantees.

18   *Mercer Publ'g, Inc. v. Smart Cookie Ink, LLC*, No. C12-0188JLR, 2012 WL

19   12863934, at *3 (W.D. Wash. July 25, 2012) (citations omitted).

20   There are four inquiries under *Noerr-Pennington*: (1) whether defendants'

21   conduct constitutes a petitioning activity; (2) whether the proposed liability burdens

22   that activity; (3) if so, whether a doctrinal exception applies, and (4) if no exception,

23   whether the statute—here, RICO—must be construed to include the protected

24   activity; if not, the court find the defendant immune from the statutory liability and

25   the claim non-actionable. *See Mercer*, 2012 WL 12863934, at *3.

26   First, there is no question but that all the conduct ENTtech complains of here—

27   sending allegedly false DMCA notices (FAC ¶¶ 15, 18, 50-51), sending pre-litigation

28   demands for settlements (FAC ¶¶ 16, 23, 28-31, 52), and filing a lawsuit (FAC

10

¶¶ 53-54)—constitutes petitioning activity. Generally, each of the three activities relates to pre-suit or judicial processes designed to vindicate legal rights, and the "right to use judicial and pre-litigation procedures to resolve purported copyright disputes is protected activity" under *Noerr-Pennington*. *Mercer*, 2012 WL 12863934, at *4. Moreover, specifically, each of the three activities here has expressly been found to be "protected activity" for *Noerr-Pennington* purposes. *See id.* at *4-5 (sending DMCA take-down notices is protected activity); *Sosa*, 437 F.3d at 934-39 (sending pre-litigation settlement demand letters was protected activity); *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition.").[6]

Next, imposing liability under RICO would undoubtedly burden Defendants' petitioning rights here. *See Sosa*, 437 F.3d at 933, 938-39 (statutory liability under RICO, based on protected activity of sending pre-litigation demands, would burden the protected activity).

Third, there are no allegations—much less allegations that would meet a heightened pleading standard—that would permit a conclusion that an exception to *Noerr-Pennington* applies. "To adequately plead the sham exception, a party must allege facts that suggest that the accused conduct is objectively baseless."[7] *Mercer*, 2012 WL 12863934, at *4. There are no such allegations here. *See id.*

Finally, the Ninth Circuit has already adjudicated—in Defendants' favor—that RICO claims, and its predicate statutes of mail and wire fraud, "do not permit the maintenance of a lawsuit for the sending of a pre-litigation demand to settle legal claims that do not amount to a sham." *Sosa*, 437 F.3d at 942. It is not stretch to apply the same reasoning to pre-litigation DMCA take-down notices, and litigation itself,

---

[6] The result holds true even if the petitioning activity is ultimately unsuccessful. "[E]ven 'unsuccessful but reasonably based suits advance some First Amendment interests" and are thus within the reach of *Noerr-Pennington*." *Mercer*, 2012 WL 12863934, at *4.

[7] The only other *Noerr-Pennington* exception, obtaining a patent through fraud on the patent office, does not apply here.

that are likewise do not amount to a sham. Stated differently, these statutes can be construed in a way that allows for the immunity under *Noerr-Pennington*. *E.g.*, *Mercer*, 2012 WL 12863934, at *4 (applying *Sosa* when "nothing in the statutory text must be read to 'clearly reach the conduct at issue'").

Accordingly, Defendants' conduct is immune from RICO liability under the *Noerr-Pennington* doctrine.

## C.   The DMCA and RICO claims fail even if reviewed under Rule 8.

Even if the claims satisfy Rule 9(b), they are still legally and factually insufficient for other reasons.

### 1.   The DMCA claim fails because ENTtech fails to properly allege the necessary elements.

The language of the DMCA is clear in its requirements:

> Any person who knowingly materially misrepresents under this section—
> (1) *that material or activity is infringing*, …
> * * *
> shall be liable for any damages … incurred by the alleged infringer … as a result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing … .

17 U.S.C. § 512(f) (emphasis added). Thus, to plead a valid claim for violation of DMCA § 512(f), a plaintiff must plead facts tending to show that defendant (1) knowingly, and (2) materially (3) misrepresented that copyright infringement has occurred. *See Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004). ENTtech has failed to plead each element with facial plausibility.

#### a.   ENTtech has not pleaded a "misrepresentation."

An essential element of the claim is "that defendant falsely misrepresented a claim of copyright infringement." *Design Furnishings, Inc. v. Zen Path, LLC*, No. Civ. 2:10-2765 WBS GGH, 2010 WL 5418893, at *4 (E.D. Cal. Dec. 23, 2010). But ENTtech makes no effort to plead any facts showing that defendants made a misrepresentation "that material or activity is infringing." In ENTtech's view, it is

12

1   enough to allege that Defendants had no "good faith belief" that material was

2   infringing because Defendants allegedly did not consider fair use before sending

3   DMCA take-down notices.[8] (FAC ¶ 51.) This interpretation collapses two elements of

4   the claim into one, thus stretching the statute to the breaking point.

5     Under ENTtech's theory, a party is liable under DMCA § 512(f) when it lacks

6   a "good faith belief" that material is infringing—for example, because it did not

7   analyze fair use—even when the material actually is infringing. But only a false

8   statement can be a misrepresentation. *See GlenFed*, 6 F.3d at 1548. A true statement

9   that "material … is infringing" cannot be a misrepresentation if the material actually

10   infringes. So when "material … is infringing," the statute is not violated. ENTtech's

11   interpretation reads an essential element right out of the statute: namely, that

12   "material or activity is infringing."[9]

    **b. ENTtech has not properly pleaded "knowingly," which**

**requires subjective bad faith.**

15     In this Circuit, the DMCA provision that provides for take-down notices that

16   would be subject to a § 512(f) claim, 17 U.S.C. § 512(c)(3)(A)(v), "imposes a

17   subjective good faith requirement upon copyright owners." *Rossi v. Motion Pictures*

18   *Ass'n of Am. Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004). As such, the "knowingly"

19   element of § 512(f) is measured from a subjective standard. *See id.* at 1004-05.

---

[8] The omission is telling. If ENTtech believed its conduct was noninfringing, if it had any facts at all to support such an assertion, it surely would have highlighted those facts. Such allegations are not optional, though. They are required by the statute, and without them there is no liability. The claim fails without factual allegations showing a misrepresentation "that material or activity is infringing." ENTtech has none. The Photo Agencies have filed a separate lawsuit for copyright infringement of the images. *See BackGrid et al. v. ENTtech Media Group, LLC*, 2:20-cv-06803-RSWL.

[9] There are some cases stating that a party "faces liability if it knowingly misrepresented in the takedown notification that it had formed a good faith belief the video was not authorized by the law, i.e., did not constitute fair use." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154 (9th Cir. 2015). But *Lenz* and the cases like it do not suffer from the problem ENTtech has here: in each of those cases, the party also alleged that the material was noninfringing. Defendants are aware of no case that allows a DMCA § 512(f) claim to proceed based solely on an allegation that "good faith belief" was misrepresented without an additional allegation of noninfringement.

13

But ENTtech has failed to allege any facts supporting the notion that Okularity or the Photo Agencies had bad faith in issuing the take-down notices. The crux of ENTtech's DMCA claim is that fair use was allegedly not considered before sending the notices.[10] Critically, though, ENTtech does not (and cannot) allege that the copyrighted images it posted constituted fair use or otherwise were permitted by law. So even accepting as true ENTtech's baseless allegation that Okularity failed to consider fair use, ENTtech cannot assert DMCA misrepresentation when that alleged failure is immaterial to them. Unless Okularity's alleged failure to consider fair use is meaningful and relevant *to the material that was taken down*, the DMCA § 512(f) claim does nothing more than seek a judicial ruling on a hypothetical.

Certainly the "knowingly" element has not been pleaded against the Photo Agencies. The FAC alleges: "Nor is it clear that Okularity has any right to send DMCA notices on behalf of Backgrid, Splash, or Xposure." (FAC ¶ 41.) Accepting that as true, then the Photo Agencies could not have engaged in any conduct with subjective bad faith. This admission independently demonstrates that subjective bad faith has not been pleaded against the Photo Agencies.

### c. ENTtech cannot properly plead "materially."

ENTtech makes no effort to plead any facts showing that Defendants "materially" misrepresented anything. The reason is clear: without an allegation that ENTtech's Instagram posts constitute fair use or were authorized by law, any alleged misrepresentation about Okularity's "good faith belief" on that issue would have no effect. In short, ENTtech's Instagram posts were removed because they actually are infringing, not because Okularity supposedly misrepresented its belief that they were infringing.

ENTtech attempts to manufacture a claim based solely on defendants' alleged lack of "good faith belief"—just the "knowingly" element of DMCA § 512(f). That's not enough. The DMCA claim should be dismissed.

---

[10] This contention will be subject to a Rule 11 motion.

1

2

### d.   ENTtech has not even pleaded the DMCA take-down notices sufficiently to satisfy Rule 8.

3   ENTtech's allegations regarding the DMCA take-down notices themselves are

4   devoid of sufficient facts to satisfy the *Iqbal*/*Twombly* standards. At the very least,

5   ENTtech should be required to identify the works they believe are at issue and which

6   Photo Agency it contends was behind the issuing of the notice. It is possible that

7   ENTtech posted works owned by someone *other than the Photo Agencies* that were

8   subject to a DMCA take-down notice that the Photo Agencies and Okularity have no

9   knowledge about, yet were counted towards ENTtech's repeat infringer status by

10   Instagram. Such information is a threshold issue that should be pleaded.

11   Accordingly, the DMCA claim should be dismissed.

12   ### 2.   The RICO claim fails as a matter of law.

13   Like many plaintiffs, ENTtech misuses a RICO claim—the "thermonuclear

14   device" of civil litigation, *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394 (S.D.N.Y.

15   2000)—to try to create an offense with a threat of treble damages. *Midwest Grinding*

16   *Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) ("civil RICO plaintiffs persist in

17   trying to fit a square peg in a round hole by squeezing garden-variety business

18   disputes into civil RICO actions"). The widespread abuse of RICO stems from a

19   generous compensation scheme coupled with the fact that modern business uses mail

20   and wires, thus providing a jurisdictional hook. *See id.*; *Suris Gen. Contr. Corp. v.*

21   *New Metro. Fed. Sav. & Loan Ass'n*, 873 F.2d 1401, 1404 (11th Cir. 1989) (RICO

22   was not intended to give plaintiffs the opportunity to "boot-strap" garden-variety

23   business claims "into a 'federal case'" by couching allegations in RICO language).

24   Moreover, just as courts impose heightened pleading requirements to protect

25   against the irreparable damage to reputation and goodwill that results from charges of

26   fraud, so too must courts safeguard against lightly made claims labeling one a

27   "racketeer." *Plount v. Am. Home Assur. Co.*, 668 F. Supp. 204, 206 (S.D.N.Y. 1987).

28   This "solicitude for defendants' good names" has led courts to require that RICO

elements be pleaded with specificity: "It would make little sense to require that the elements of fraudulent predicate acts be pled with particularity" to protect reputation, "while allowing the overarching civil RICO claim—with its far greater capacity for reputational damage—to be alleged generally." *Id.* at 207.

Here, ENTtech's RICO claim suffers from its attempt to fit the square peg in a round hole. To plead a RICO claim, ENTtech must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) that injured its business or property. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). On top of the deficiencies described above, and even without regard to heightened pleading standards, ENTtech has not satisfied the requirements necessary to plead the elements of racketeering activity, pattern, and enterprise.

### a.    Predicate acts are factually and legally insufficient.

ENTtech's predicate acts of racketeering activity fall into three categories: (1) mail fraud, (2) wire fraud, and (3) extortion, all based on the sending of DMCA take-down notices, pre-litigation demands, and the filing of a complaint by the Photo Agencies. These predicate acts cannot support the RICO claim here.

*Mail fraud*: "The mail fraud statute is implicated only where mail is 'sent or delivered by the Postal Service [or] ... any private or commercial interstate carrier.'" *Humphreys v. City of Coolidge*, No. CV-17-04045-PHX-DWL, 2019 WL 316240, at *5 (D. Ariz. Jan. 24, 2019) (quoting 18 U.S.C. § 1341). ENTtech has not pleaded use of the mail, only the use of automated systems and email. This is not enough. *See id.*

*Wire fraud*: To state a claim for mail and wire fraud, the plaintiff must show: (1) the formation of a scheme to defraud; (2) the use of the mails or wires in furtherance of that scheme; and (3) the specific intent to defraud. *See Eclectic Props. E. v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). But significantly, as this Court decided in *Blue Oak Medical Group*, to plead that a scheme exists to defraud "parties must plead facts which tend to exclude 'plausible or innocuous alternative explanation[s]' for any fraudulent intent." 2018 WL 6219892 at *4. The

much more plausible explanation that has not been excluded is that ENTtech is a repeat infringer of photographs belonging to the Photo Agencies, those Agencies sent DMCA notices to vindicate their important intellectual property rights, and Instagram terminated ENTtech's account under Instagram's repeat-infringer policy. ENTtech has made no effort to plead that Defendants had a specific intent to defraud, or that there was a scheme to defraud, and that the wires were used in furtherance of the same. As such, the wire fraud predicate act has not been properly alleged.

*Extortion*: The Hobbs Act prohibits attempts "in any way or degree [to] obstruct[], delay[], or affect[] commerce ... by ... extortion ...." 18 U.S.C. § 1951(a). "The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened ... fear ...." 18 U.S.C. § 1951(b)(2). "Fear," in this context, "can include fear of economic loss." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't*, 770 F.3d 834, 838 (9th Cir. 2014) ("*UBC*"). But the Hobbs Act does *not* impose "liability for threats of [baseless] litigation where the asserted claims do not rise to the level of a sham." *Sosa*, 437 F.3d at 939-40.

"[T]he fear of economic loss is a driving force of our economy that plays an important role in many legitimate business transactions." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 523 (3d Cir. 1998). But while there is a difference "between legitimate use of economic fear—hard bargaining—and wrongful use of such fear—extortion," *UBC*, 770 F.3d at 838, the Supreme Court has held that economic fear becomes extortion only "where the obtaining of the property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property." *United States v. Enmons*, 410 U.S. 396, 400 (1973).

That is not the case here, where the Photo Agencies have legitimate legal claims under the Copyright Act based on the unauthorized use of their images. Accordingly, any use of economic pressure by Defendants was not "wrongful," and therefore there is no extortion to support a RICO claim. *See UBC*, 770 F.3d at 841

(dismissing RICO claim based on economic pressure from legitimate legal claims). Holding otherwise would seriously implicate First Amendment principles: if seeking redress for legal wrongs could be a RICO predicate act, RICO itself would probably be unconstitutional.

Not surprisingly, the weight of authority therefore holds that the filing of a legal claim does not implicate the "fear" provision of an extortion cause of action. *See*, *e.g.*, *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984) (rejecting argument that the threat of legal action, for the purpose of frightening the plaintiff into making payments, amount to the infliction of "fear" within the meaning of the Hobbs Act). The result holds even if the legal claims asserted had no basis:

> We can not agree that the threat alleged here constituted the infliction of "fear" for purposes of the extortion statute. We assume for purposes of argument ... that the threat to sue was groundless and made in bad faith. Such conduct may be tortious under state law, but we decline to expand the federal extortion statute to make it a crime.

*Id.* (concluding that threats to sue did "not qualify as acts of racketeering bringing RICO into play"). Concluding that threats to file a civil action constitute a "pattern of racketeering activity" would cause citizens to "feel that their right of access to the courts of this country had been severely chilled." *Id.* RICO cannot extend that far.

Moreover "allegations of improper legal filings … are best addressed through state law tort remedies rather than resort to criminal statutes and RICO claims." *Grauberger v. St. Francis Hosp.*, 169 F. Supp. 2d 1172, 1178 (N.D. Cal. 2001); *see also Peterson v. Phil. Stock Exch.*, 717 F. Supp. 332, 336 (E.D. Pa. 1989) ("The ordinary resort to legal process does not rise to the level of a 'wrongful use' of force or fear.") (citation omitted); *Harris Custom Builders, Inc. v. Hoffmeyer*, 1994 WL 329962, at *4 (N.D. Ill. 1994) (alleged scheme of filing lawsuits to enforce an allegedly illegally obtained copyright does not constitute a predicate act of racketeering for purposes of RICO) (citing cases). Where the alleged "threat" concerns the use of DMCA notices and Instagram rules to leverage payment for

1  legitimate legal claims, even if those notices are allegedly improper (and they are

2  not), then they cannot support a claim for extortion.

3      ENTtech has no legally viable RICO claim based on these allegations. The

4  claims should be dismissed.

5          **b.      ENTtech does not and cannot plead a "pattern."**

6      ENTtech fails to adequately plead a pattern of racketeering activity. To plead a

7  "pattern," ENTtech must show either "a series of related predicates extending over a

8  substantial period of time" or "past conduct that by its nature projects into the future

9  with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241-42

10  (1989). "Predicate acts extending over a few weeks or months and threatening no

11  future criminal conduct do not satisfy this requirement: Congress was concerned in

12  RICO with long-term criminal conduct." *Id.* at 242.

13      The allegations of a pattern of racketeering activity fall woefully short of these

14  requirements. Assuming that sending "fraudulent" DMCA take-down notices can be

15  a predicate act of an alleged RICO claim, ENTtech does not plead "long-term"

16  conduct. Rather, ENTtech alleges that "Okularity sent fraudulent DMCA notices to

17  Instagram … over fourteen times from June 4-5, 2020." (FAC ¶¶ 50.) A two-day

18  period is not "extending over a substantial period of time." Even crediting ENTtech's

19  allegation that there were 48 DMCA take-down notices "in 2019 and 2020" (FAC

20  ¶ 37), there is still no closed-ended continuity under RICO.[11] *See Turner v. Cook*, 362

21  F.3d 1219, 1230-31 (9th Cir. 2004) (no closed-ended continuity when 94 fraudulent

22  communications happened in a two-month span, and an additional three occurred

23  sporadically in the preceding year); *Religious Tech. Center v. Wollersheim*, 971 F.2d

24  364, 366-67 (9th Cir. 1992) ("[w]e have found no case in which a court has held the

25

26

---

27  [11] ENTtech also alleges, "on information and belief," that the scheme has been ongoing since 2018. (FAC ¶ 56.) This is inconsistent with its other allegations and also is the type of rote recitation of elements, without factual support, that the Court

28  is not required to credit on a motion to dismiss.

1   requirement to be satisfied by a pattern of activity lasting less than a year").[12]

2       The allegations are insufficient to make out a "pattern" of racketeering and the

3   RICO claim should be dismissed.

4                   **c.      RICO enterprise has not been sufficiently pleaded.**

5       ENTtech's construction of a RICO enterprise is cursory and conclusory. If a

6   plaintiff alleges an association-in-fact enterprise, as attempted here, it must state:

7           facts indicating the existence of an ongoing organization,
            formal or informal, that functions as a continuing unit over time
8           through a hierarchical or consensual decision-making structure.
            To satisfy the "continuing unit" requirement, the plaintiff must
9           plead specific facts establishing that the association exists for
            purposes other than simply to commit the predicate acts.
10

11  *Cadle Co. v. Schultz*, 779 F. Supp. 392, 397 (N.D. Tex. 1991) (internal quotation

12  marks and footnotes omitted); *see also Lujan v. Mansmann*, 956 F. Supp. 1218, 1231

13  (E.D. Pa. 1997) (properly pleaded enterprise requires (1) names of people or entities

14  comprising it; (2) its structure, purpose, function, course of conduct; (3) information

15  on whether defendants are employed by it; (4) statement on whether defendants are

16  associated with it; and (5) statement on whether defendants are separate from,

17  members of, or are the enterprise). Courts have not hesitated to dismiss RICO claims

18  for failure to clearly identify the RICO enterprise. *E.g.*, *Richmond v. Nationwide*

19  *Cassel L.P.*, 52 F.3d 640, 645-46 (7th Cir. 1995); *First Nationwide Bank v. Gelt*

20  *Funding Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993) (dismissing RICO claim when

21  plaintiff did not plead "any facts regarding the continuity of structure or personnel" of

22  the enterprise).

23      In *Blue Oak Medical Group*, this Court decided that the plaintiff had not

24  adequately alleged enterprise with sufficient factual detail (especially in light of the

25  Rule 9 pleading standard). *See* 2018 WL 6219892, at *3-4. There, this Court stated

26  that "it [was] unclear from the Complaint how the Defendants work together to

27  _____

28  [12] ENTtech cannot allege open-ended continuity either. Its Instagram account is
    suspended, so there is no ongoing threat of repetition.

achieve their common purpose of putting Blue Oak out of business," and that Blue Oak has not pleaded with particularity a "scheme to defraud," even though plaintiff had alleged:

> [T]he common purpose of the enterprise is to (1) financially harm and ultimately put out of business patient oriented medical providers; (2) induce Plaintiff to dispense medicine to injured workers covered by [State Fund], at Plaintiff's expense; (3) avoid paying Plaintiff for medicine dispensed by Blue Oak; and (4) retain money owed to Blue Oak. The enterprise carries out this common purpose by authorizing RFA's [sic] for the provision of medications and promising to pay for them, by inducing Blue Oak to dispense the medications to patients, and then consistently delaying payment and ultimately never paying at all [and that e]ach Defendant coordinated with one another to implement and conceal the enterprise.

*Blue Oak Med. Group*, 2018 WL 6219892, at *4 (internal quotation marks and citations omitted) (second and third alteration in original).

These allegations in Blue Oak provide more detail that what is alleged here, as the FAC makes no effort to explain how the Defendants engaged in an enterprise with respect the relationships among one another. Indeed, the allegations do not even break down the actions or omission of each Defendant, but instead lumps them together (the "Clearinghouse Defendants" and "Okularity"). These allegations are insufficient.

### C.   ENTtech should not be granted leave to amend.

ENTtech should not be granted leave to amend.

"In determining whether dismissal without leave to amend is appropriate, courts consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed*, undue prejudice …, and futility of the amendment." *CyWee Group Ltd. v. HTC Corp.*, 312 F. Supp. 3d 974, 981 (W.D. Wa. 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (emphasis added). The discretion to deny leave to amend "is particularly broad where the plaintiff has previously amended the complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013)

21

(internal quotation marks omitted). And futility is determined by a situation where, even with new facts and allegations, there is not a legal theory that would give relief to plaintiff. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (denying leave to amend appropriate when "pleading could not possibly be cured by the allegation of other facts") (internal quotation marks omitted).

ENTtech has already amended its complaint once and did so with full knowledge of its deficiencies. Having chosen not to cure the deficiencies once, ENTtech should not be granted leave to try again. Moreover, the FAC suffers from being legally untenable in multiple ways, such that leave to amend would be futile. Namely, ENTtech cannot plead a valid RICO claim under *Noerr-Pennington*, so leave to amend should be denied. Similarly, ENTtech cannot plead a valid DMCA claim because it cannot allege that *any* of its uses of images owned by the Photo Agencies are noninfringing. Leave to amend should be denied as to that claim too.

# V.   CONCLUSION

The Court should dismiss without leave to amend.

Dated: August 24, 2020        Respectfully submitted,

**PERKOWSKI LEGAL, PC**

By:   /s/ Peter Perkowski

Peter E. Perkowski

Attorneys for Defendants
Okularity, Inc. and Jon Nicolini

Dated: August 24, 2020        **ONE LLP**

By:   /s/ Joanna Ardalan

David Quinto
Peter Afrasiabi
Joanna Ardalan

Attorneys for Defendants BackGrid USA, Inc.,
Splash News and Picture Agency, LLC, and
Xposure Photo Agency, Inc.