Peter E. Perkowski (SBN 199491)
peter@perkowskilegal.com
PERKOWSKI LEGAL, PC
445 S. Figueroa Street, Suite 3100
Los Angeles, CA 90071
Telephone: (213) 426-2137

Attorneys for Defendants Okularity, Inc.
and Jon Nicolini

Peter R. Afrasiabi (Bar No. 193336)
pafrasiabi@onellp.com
**ONE LLP**
4000 MacArthur Boulevard
Each Tower, Suite 500
Newport Beach, CA 92660
Telephone:   (949) 502-2870
Facsimile:    (949) 258-5081

David Quinto (Bar No. 106232)
Joanna Ardalan (Bar No. 285384)
jardalan@onellp.com
**ONE LLP**
9301 Wilshire Boulevard
Penthouse Suite
Beverly Hills, CA 90210
Telephone:   (310) 866-5157
Facsimile:    (310) 943-2085

Attorneys for Plaintiffs
Backgrid USA, Inc., Splash News and
Picture Agency, LLC, and Xposure Photo
Agency, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTTECH MEDIA GROUP LLC,<br><br>       Plaintiffs,<br><br>       v.<br><br>OKULARITY, INC.; JON NICOLINI;<br>BACKGRID USA, INC.; SPLASH<br>NEWS AND PICTURE AGENCY,<br>LLC; AND XPOSURE PHOTO<br>AGENCY, INC.<br><br>       Defendants. | Case No.: 2:20-cv-06298 RGK (Ex)<br>Hon.  R. Gary Klausner<br><br>**DEFENDANTS' JOINT<br>MEMORANDUM OF POINTS &<br>AUTHORITIES IN SUPPORT OF<br>MOTION FOR SANCTIONS**<br><br>Date:       October 26, 2020<br>Time:      9:00 a.m.<br>Place:     TBD<br><br>Compl. filed:    July 15, 2020<br>*No Trial Date Set* |

1

# **TABLE OF CONTENTS**

2

3

I. INTRODUCTION ...................................................................................... 1

4

II. BACKGROUND FACTS ........................................................................... 2

5

    A. Okularity's Services for the Photo Agencies............................... 2

    B. ENTtech's Infringements.............................................................. 3

6

III. LEGAL STANDARD ................................................................................ 4

7

    A. Standard for Rule 11 Sanctions .................................................... 4

8

    B. Standard for Sanctions under the Inherent Powers of the Court ............. 5

    C. Standard for Sanctions under the Local Rules ............................. 6

9

IV. ARGUMENT ............................................................................................. 6

10

    A. Tauler's Specific Allegations that Lacked a Reasonable Inquiry and
        Evidentiary Support .................................................................... 7

11

    B. Without Reasonable Inquiry and Factual Basis Supporting Key
        Allegations, ENTtech's Claims Are Wholly Frivolous, Without

12

        Evidentiary Support, and Sanctionable Under Rule 11 and the Court's

13

        Inherent Authority. ..................................................................... 12

14

    C. Tauler Has Been Subject to Rule 11 Sanctions Before for Failure to
        Make a Reasonable Inquiry and Has Been Called Out for Bringing a

15

        RICO Claim for an Improper Purpose..................................... 14

16

    D. Rule 11 Sanctions Are Appropriate because the FAC Is Frivolous and
        Designed with an Improper Purpose. ...................................... 15

17

    E. Sanctions under the Court's Inherent Power Are Also Appropriate ...... 16

18

    F. Sanctions Are Also Appropriate under the Local Rules ........................ 17

19

    G. Sanctions Should Also Issue for ENTtech's False Proof of Service with
        Respect to Splash News and Picture Agency LLC ................................ 17

20

V. CONCLUSION ......................................................................................... 18

21

22

23

24

25

26

27

28

---

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Altmann v. Homestead Mortg. Income Fund*,
  887 F. Supp. 2d 939 (E.D. Cal. 2012) ................................................. 15

*B.K.B. v. Maui Police Dep't*,
  276 F.3d 1091 (9th Cir. 2002) ............................................................... 5

*Backgrid et al., v. ENTtech*,
  2:20-cv-06803-RSWL-RAO ............................................................ 1, 18

*Estate of Blue v. Cnty. of Los Angeles*,
  120 F.3d 982 (9th Cir. 1997) ................................................................. 5

*Bus. Guides, Inc. v. Chromatic Commc'n Enters., Inc.*,
  498 U.S. 533, 111 S. Ct. 922 L. Ed. 2d 1140 (1991) ............................ 4

*Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC.*,
  2018 WL 4385368 (S.D. Cal. Sept. 14, 2018) ................................. 4, 14

*Chambers v. NASCO, Inc.*,
  501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) ........................ 5

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ............................................................... 4

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990) ............... 4, 15

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) ................................................................. 5

*G.C. & K.B. Invs., Inc. v. Wilson*,
  326 F.3d 1096 (9th Cir. 2003) ............................................................... 5

*Holgate v. Baldwin*,
  425 F.3d 671 (9th Cir. 2005) ................................................................. 5

*In re Itel Securities Litigation*,
  791 F.2d 672 (9th Cir. 1986) ............................................................... 17

ii

*Montrose Chem. Corp. v. Am. Motorists Ins. Co.*,
    117 F.3d 1128 (9th Cir. 1997) ............................................................... 5

*Moser v. Bret Harte Union High School Dist.*,
    366 F. Supp. 2d 944 (E.D. Cal. 2005) ................................................... 5

*In re Outlaw Laboratory, LP Litigation*,
    2019 WL 3858900 (S.D. Cal. Aug. 15, 2019).......................................14

*Tauler Smith LLC v. Valerio*,
    2020 WL 1921789 (C.D. Cal. Mar. 6, 2020). ................................... 2, 15

*Townsend v. Holman Consulting Corp.*,
    929 F.2d 1358 (9th Cir. 1990) .............................................................15

*Truesdell v. S. Cal. Permanente Med. Grp.*,
    209 F.R.D. 169 (C.D. Cal. 2002)..........................................................16

**Statutes**

17 U.S.C. § 512 .................................................................................. 8, 13, 14

17 U.S.C. § 512(i) ...................................................................................... 1, 11

17 U.S.C. § 512(f) .................................................................................11, 12, 13

17 U.S.C. §§ 512(g)(1), (g)(2)(A) ................................................................ 4

17 U.S.C. § 512(g)(2) ................................................................................... 4

17 U.S.C. § 512(g)(3) ................................................................................... 3

**Other Authorities**

Cal. R. Prof. Conduct 3.3(a)(1) ............................................................... 6, 17

Fed. R. Civ. P. 11.............................................................................*passim*

Fed. R. Civ. P. 11(b)(1) .............................................................................15

Fed. R. Civ. P. 11(b)(3) ............................................................................. 4

Fed. R Civ. P. 11(c)(1).............................................................................16

Fed. R. Civ. P. 11(c)(2).............................................................................16

iii

1

Fed. R. Civ. P. 11(c)(4)............................................................................ 16

2

L.R. 83-3.1.2 ............................................................................................ 6

3

L.R. 83-7 .................................................................................................. 6

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF PS & AS ISO MOTION FOR SANCTIONS**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants Okularity, Inc., Jon Nicolini, Backgrid USA, Inc., Splash News and Picture Agency LLC, and Xposure Photo Agency Inc., (collectively "Defendants") take no pleasure in bringing a motion for sanctions against plaintiffs' counsel, Robert Tauler and his firm Tauler Smith LLP (collectively "Tauler"). Defendants are forced to bring this motion because the First Amended Complaint runs afoul of Rule 11 in that many of the key facts supporting the claims run contrary to information provided to ENTtech, making the claims unwarranted and frivolous. In addition, the First Amended Complaint was brought for an improper purpose: to gain leverage in the infringement claim which was brought against ENTtech and in the pursuit of de-suspending ENTtech's Instagram account after it violated Instagram's Terms of Use.[1,2]

Defendants have been accused of "scheming" to take down ENTtech's Instagram account by making material misrepresentations in DMCA notices they issued to Instagram. Defendants did nothing of the sort. The Instagram account was taken down because ENTtech violated Instagram's Terms of Use, which includes a repeat infringer policy; ENTtech was a repeat infringer according to Instagram.[3] ENTtech's gripe should lie not with Defendants, but with Congress for passing the DMCA, as Instagram did precisely what was required to reap the benefits of the DMCA safe harbor.

ENTtech and Tauler never had a good faith basis to bring the DMCA misrepresentation and RICO claims in this action. Tauler has been aware of the facts

---

[1] The initial Complaint also ran afoul of Rule 11, but this motion focuses on the First Amended Complaint.

[2] *Backgrid et al., v. ENTtech*, 2:20-cv-06803-RSWL-RAO.

[3] An internet service provider, like Instagram, is required to have repeat infringer policy under 17 U.S.C. § 512(i), to take advantage of the DMCA safe harbor.

**MEMORANDUM OF PS & AS ISO MOTION FOR SANCTIONS**

negating the allegations at issue in this motion *before* the initial Complaint was filed. Indeed, Okularity, Nicolini, and their counsel provided a substantial amount of information to Tauler and ENTtech informing Tauler that his allegations ran afoul of Rule 11 and that they needed to be investigated further. (*See* Nicolini Decl., ¶¶ 7, 8, Ex. B, C; *see also* Perkowski Decl., Ex. A.)  The information provided to him by Okularity was accurate. Tauler simply disregarded the information provided to him and pursued frivolous claims, without any reasonable or competent inquiry or basis in fact.  Tauler had no basis to say that Defendants "schemed" or engaged in an enterprise of criminal activity to take down ENTtech's Instagram account. Defendants simply followed the DMCA.[4]  Defendants also served a Rule 11 letter, which was also ignored by Tauler. (*See* Perkowski Decl., Ex. A.)

## II.     BACKGROUND FACTS

### A.     Okularity's Services for the Photo Agencies

BackGrid USA, Inc., Splash News and Picture Agency, LLC, and Xposure Photo Agency Inc. (each a "Photo Agency" and collectively the "Photo Agencies") license photo and video content to their customers, including to many of the largest media outlets in the world. Because the Photo Agencies rely on licensing fees from customers, having the same content available unlicensed and widely distributed threatens the Photo Agencies' entire business model. (Nicolini Decl. ¶ 3.) To guard against this, the Photo Agencies contract with Okularity to search for unauthorized uses of images from the Photo Agencies' libraries, among other services, including the issuing of Digital Millennium Copyright Act ("DMCA") takedown notices. (*Id*.)

Okularity's CEO Jon Nicolini handles all DMCA takedown notices that are sent on behalf of the Photo Agencies, including those issued to Instagram related to the ENTtech Instagram account. As Nicolini explained to ENTtech's counsel,

---

[4] Tauler was called out in another opinion for filing a RICO claim for an improper purpose. It appears the lesson has not been learned. *See Tauler Smith LLC v. Valerio,* 20-cv-00458 AB (ASx), 2020 WL 1921789 (C.D. Cal. Mar. 6, 2020).

MEMORANDUM OF PS & AS ISO MOTION FOR SANCTIONS

1  Robert Tauler, before the FAC was filed, each infringement was reviewed for fair

2  use prior to Nicolini issuing a DMCA notice to Instagram. (Nicolini Decl. ¶¶ 6, 7.)

3  **B.  ENTtech's Infringements**

4  The claims in this matter arise out of Okularity's actions concerning plaintiff

5  ENTtech's unauthorized use of 34 photographs belonging to the Photo Agencies,

6  which ENTtech caused to be uploaded onto ENTtech's Instagram account. Over a

7  period of about a month, Nicolini caused to be sent to Instagram DMCA takedown

8  notices as directed to the ENTtech account. (Nicolini Decl. ¶ 5.)  In addition, before

9  sending each of the 35 DMCA takedown notices, Nicolini considered whether

10  ENTtech's uses may be fair use. He concluded that fair use did not apply to any of

11  the 34 instances of infringements by ENTtech. (Nicolini Decl. ¶ 6.) None of the 35

12  DMCA takedown notices at issue here were sent to Instagram by a fully automated

13  system. (*Id*.)

14  Tauler spoke with Nicolini before he filed this lawsuit. During those

15  discussions, Nicolini told Tauler that Nicolini personally reviewed each

16  infringement for fair use prior to issuing a DMCA takedown notice and further that

17  the takedown notices were not issued by a fully automated process. (Nicolini Decl.

18  ¶¶ 6, 7.)  He also discussed the spreadsheet detailing information about the

19  infringement that he had sent to ENTtech earlier.[5] (Nicolini Decl. ¶ 8, Ex. B.)

20  Tauler also had information from Instagram about the infringement. This is

21  known to be true because Tauler himself filed counternotifications that he personally

22  signed under penalty of perjury, where he contended the DMCA notices issued by

23  Okularity were issued because of a "mistake or misidentification."[6] (Nicolini Decl.

24  _____

25  [5] Tauler has no non-frivolous basis to claim that ENTtech's infringement was fair use.
   Significantly, he did not allege the same in the First Amended Complaint, which

26  failure is one of the bases for Defendants' 12(b)(6) motion.

27  [6] *See* 17 U.S.C. § 512(g)(3). Defendants cannot contemplate a non-frivolous
   justification for declaring that the takedowns were issued as a result of "mistake" or

28  "misidentification." This declaration is significant. Under the DMCA, if Defendants
   had not filed suit on the infringements within 10 business days, then Instagram would

3

Ex. D.) Instagram is required to notify a user, such as ENTtech, when content is removed or disabled. *See* 17 U.S.C. §§ 512(g)(1), (g)(2)(A).

## III.   LEGAL STANDARD

### A.   Standard for Rule 11 Sanctions

When an attorney "present[s] to the court … a pleading, … [the] attorney … certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, … the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). The "heart of Rule 11" is the message conveyed by the signer's certification that he "has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both." *Bus. Guides, Inc. v. Chromatic Commc'n Enters., Inc.*, 498 U.S. 533, 542, 111 S. Ct. 922, 112 L. Ed. 2d 1140 (1991). "An attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact … ." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). The "central purpose of Rule 11 is to deter baseless filings" by imposing a duty on attorneys to certify that they have "conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact [and] legally tenable." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990) (partially superseded, on other grounds, by 1993 Rule 11 amendment).

"District courts have broad discretion to sanction a party or attorney under Rule 11." *Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC.,* 3:16-cv-02810-BEN-bgs, 2018 WL 4385368, at * 3 (S.D. Cal. Sept. 14, 2018) (citing *DeMarco v. Depotec Corp.*, 131 F. Supp. 2d 1185, 1186 (S.D. Cal. 2001), *Cooter & Gell,* 496 U.S. at 385, and *Barber v. Miller,* 146 F.3d 707, 709 (9th Cir. 1998)). "Federal Rule of Civil Procedure 11 provides for the imposition of sanctions when a

---

put the ENTtech Instagram account back up. 17 U.S.C. § 512(g)(2). As such, this perjurious counternotification would have resulted in the re-instatement of the Account if the Agencies did not take prompt action.

filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. Cnty. of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997) (citing *Simpson v. Lear Astronics Corp.,* 77 F.3d 1170 (9th Cir. 1996)). "Frivolous filings are 'those that are both baseless and made without a reasonable and competent inquiry.'" *Id*; *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) (finding that a single frivolous claim was sufficient for Rule 11 sanctions).

When a complaint is the subject of a Rule 11 inquiry, the Court "must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quoting *Christian*, 286 F.3d at 1127); *see also Montrose Chem. Corp. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1133 (9th Cir. 1997). Subjective bad faith is not required; rather, the standard is objective reasonableness. *See*, *e.g.*, *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003). Unreasonableness is viewed "from the perspective of a competent attorney admitted to practice before the district court." *Moser v. Bret Harte Union High School Dist.*, 366 F. Supp. 2d 944, 950 (E.D. Cal. 2005).

### B.   Standard for Sanctions under the Inherent Powers of the Court

A federal court may "resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct"—whether or not that conduct could also be sanctioned under Rule 11—to deter improper litigation conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). An attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power. *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001) *see also B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107–08 (9th Cir. 2002)

1  (attorney's knowing and reckless introduction of inadmissible evidence was

2  tantamount to bad faith and warranted sanctions under § 1927 and the court's

3  inherent power).

4      **C.    Standard for Sanctions under the Local Rules**

5        Local Rule 83-3.1.2 provides that "in order to maintain the effective

6  administration of justice and the integrity of the Court," each attorney must comply

7  with the Rules of Professional Conduct of the State Bar of California, the State Bar

8  Act, together with "the decisions of any court applicable thereto." The California

9  Rules of Professional Conduct provide that members "shall not [¶] knowingly make

10  a false statement of fact or law to a tribunal or fail to correct a false statement of

11  material fact or law previously made to the tribunal by the lawyer." Cal. R. Prof.

12  Conduct 3.3(a)(1). Local Rule 83-7 provides that the Court may impose

13  monetary sanctions "if the Court finds that the conduct was willful, grossly

14  negligent, or reckless."

15  **IV.    ARGUMENT**

16        Tauler filed the Complaint with frivolous allegations that had not been

17  supported by reasonable inquiry and were brought for the purpose of getting an

18  unfair advantage with respect to the Photo Agencies' infringement claims. When

19  informed of the baselessness of the allegations, Tauler doubled down by filing the

20  First Amended Complaint, which equally lacks evidentiary support and was also

21  brought for an improper purpose.[7]

22  / / /

23  / / /

24  / / /

25

26

27  [7] The initial Complaint alleged additional state law claims that were preempted and subject

28  to an anti-SLAPP motion, for which Tauler was given notice. (Perkowski Decl. Ex. A.) Presumably he dropped the state law claims for these reasons.

6

## A.   Tauler's Specific Allegations that Lacked a Reasonable Inquiry and Evidentiary Support

False Allegation Lacking Reasonable Inquiry and Evidentiary Support:

Nicolini Failed to Review Fair Use

On July 9, 2020, Nicolini told Tauler that Nicolini considered whether fair use would apply to ENTtech's infringements before causing DMCA takedown notices to be sent. (Nicolini Decl. ¶¶ 6, 7.) Specifically, Nicolini told Tauler that he personally reviewed each infringement for fair use prior to issuing a DMCA notice.  Tauler has no information that Nicolini did not personally review each infringement prior to issuing the DMCA notice. Further, had Tauler reviewed ENTtech's infringements himself, he would have seen that fair use is not a plausible legal argument for any of the 34 unauthorized uses. Rather, the infringing photos were posted on Instagram, in their entirety, with minimal commentary, lacking any sort of transformation, and directly competing with the licensees of the Photo Agencies. (Nicolini Decl. Ex. A.) Tauler would have no non-frivolous basis to contend that fair use applies here and certainly no inquiry supporting the notion that Nicolini did not review the infringement.

There is no question that Tauler had access to screenshots of the infringements and/or the infringing photos and additional critical information that he did not review or simply ignored. On July 8, 2020, Nicolini sent a detailed spreadsheet to ENTtech's CEO Tom Florio and its Executive Vice President of Audience Development Lily Kwong. (Nicolini Decl. ¶ 8.) The spreadsheet provided detail for every alleged infringement: each infringement's page URL (that is, where the infringement was located on the Internet); each infringement's image URL (where the image was stored on the Internet); a unique URL where a copy of the photograph owned by the Photo Agencies could be accessed; a unique Image ID; the name of the copyright owner (i.e., the Photo Agency); the copyright registration certificate number, if available; the copyright registration application number, if available; the

7

photograph's date of first publication; the date of the unauthorized use; and the date Okularity discovered the infringement. (Nicolini Decl. Ex. B.)

Then, Nicolini also sent to Mr. Florio and Ms. Kwong, using WeTransfer, files containing copies or screenshots of the photographs that were used without authorization.[8] (Nicolini Decl. ¶ 8, Ex. C.) In the data transfer, Nicolini included 29 screenshots along with a summary PDF containing most of the Instagram usages. Within hours of the transfer, the WeTransfer application notified Nicolini that both Mr. Florio and Ms. Kwong had downloaded all the files. (Nicolini Decl. ¶ 8, Ex. C.)

In their discussions, Tauler and Nicolini both referenced the spreadsheet and the WeTransfer files multiple times, so there is no doubt that Tauler had this information. (Nicolini Decl. ¶ 8.)

Despite receipt of this information and lacking any good faith basis, Tauler alleged the following in the First Amended Complaint:

- "Okularity does this [sends DMCA takedown notices] without any of the investigation, warning, or legal analysis required by the DMCA … " (FAC ¶ 15.)[9]

- "However, since the DMCA Notices are automatically generated and submitted without any attorney supervision, Okularity does not engage in any analysis prior to generating and filing DMCA takedown notices as it should." (FAC ¶ 27.)

- "Defendants [sic] misconduct includes its failure to take into consideration 'fair use' as a defense to their alleged claims." (FAC ¶ 40.)

- "Not only did Defendants fail to consider fair use []" (FAC ¶ 41.)

---

[8] WeTransfer is an internet-based computer file transfer application that allows the sending of large data files.
[9] Notably, the DMCA does not require any "warning" before sending a takedown notice. *See generally* 17 U.S.C. § 512 (establishing and describing DMCA takedown process).

8

**MEMORANDUM OF PS & AS ISO MOTION FOR SANCTIONS**

- "When Okularity … submitted the DMCA notices to Instagram … Nicolini knew (and thus, Okularity and all of its principals also knew) that no 'good faith' basis existed for believing that Plaintiff's uses of the images were unauthorized." (FAC ¶ 51.)
- "Rather, the Defendants all knew that the notices were based solely on the results of a software application created to scan the internet for copies of images in which copyrights had been claimed – without any inquiry (much less, a good faith inquiry) into whether the uses of those images were "authorized by the copyright owner, its agent, or the law." (FAC ¶ 51.)

<u>False Allegation Lacking Reasonable Inquiry and Evidentiary Support:</u>
<u>Okularity Sent Notices by Automated System</u>

On July 14, 2020, Nicolini told Tauler that none of the 35 DMCA takedown notices at issue in this case were sent to Instagram by a fully automated system. Instead, as Nicolini informed Tauler, Nicolini himself reviewed each one and caused it to be sent to Instagram. (Nicolini Decl. ¶¶ 6, 7.)  Tauler has no basis to contest Nicolini's representation. Tauler did not even make this allegation "on information and belief," which too would not have had a reasonable factual basis because he has no basis for such information or belief.

Despite receipt of this information and lacking any good faith basis, Tauler alleged the following in the First Amended Complaint:

- "Through its proprietary software, Okularity automatically generates and submits DMCA Notices to any social media platform, including Instagram, containing an Image in Okularity's database." (FAC ¶ 15.)
- "Okularity does this without any of the investigation, warning, or legal analysis required by the DMCA … " (FAC ¶ 15.)
- "By automatically generating and submitting DMCA Notices, Okularity has failed to follow the terms of the DMCA." (FAC ¶ 17.)

9

**MEMORANDUM OF PS & AS ISO MOTION FOR SANCTIONS**

- "However, since the DMCA Notices are automatically generated and submitted without any attorney supervision, Okularity does not engage in any analysis prior to generating and filing DMCA takedown notices as it should." (FAC ¶ 27.)

<u>False Allegation Lacking Reasonable Inquiry and Evidentiary Support:</u>
<u>Okularity Made an Extortionate Demand of $4.6 Million</u>

Nicolini's initial communication with Tauler stated that he did not have settlement authority but noted that the "maximum" exposure ENTtech could face would be the statutory damages maximum for willful infringement. (Nicolini Decl. ¶ 10.) This is clear from the images contained in the FAC itself, which includes an email where Nicolini stated that the infringements "could fetch up to $150,000 [per infringement], for a total of $4.65 million." (FAC ¶ 30.) No one demanded $4.6 million, even though that amount was authorized by Title 17.

Despite receipt of this e-mail message and lacking any good faith basis, Tauler alleged the following in the First Amended Complaint:

- "Plaintiff's CEO immediately contacted Defendants, and was faced with the extortionate demand of $4.6 million dollars ..." (FAC ¶ 23.)

Significantly, this mistruth was one of the "predicate acts" for which ENTtech bases its RICO claim. (FAC ¶¶ 23, 46.)

<u>False Allegation Lacking Reasonable Inquiry and Evidentiary Support:</u>
<u>Defendants Engaged in a Scheme to Deprive ENTtech of Its Instagram Account and</u>
<u>Did So by Issuing Fraudulent DMCA Notices</u>

As demonstrated by the information above, Okularity had a good faith basis to send the DMCA takedown notices. (*See* Nicolini Decl., ¶¶ 6, 7, Exs. B, C.) They were sent after a review for fair use. (*See* Nicolini Decl., ¶¶ 6, 7.) And Nicolini caused them to be sent individually, not automatically. *Id.*

Tauler was aware of all of this information, yet he alleged that the DMCA notices were "fraudulent" and were part of a "scheme." The "scheme," of course, is

10

not a scheme at all. It is a statutory process created by Congress: The DMCA prescribes the issuing of takedown notices (by an owner or agent) and if the notices accumulate to the extent that the ISP determines the user has violated its repeat infringer policy, the user is terminated. 17 U.S.C. § 512(i). That is what happened here.

Despite knowledge of these circumstances, Tauler alleged the following:

- "Defendants (1) are engaged in a scheme to deprive Plaintiff of its digital assets through a pattern of fraudulent statements made in DMCA Notices …" (FAC ¶ 18.)
- "Okularity sent fraudulent notices to Instagram …" (FAC ¶ 50.)
- "improper DMCA notices" (FAC ¶ 52.)

<u>False Allegation Lacking Reasonable Inquiry and Evidentiary Support:</u>

<u>Defendants Sent 48 Takedown Notices</u>

Okularity issued only 35 DMCA notices to Instagram regarding ENTtech's account. For the reasons stated above, Tauler knew of the true number of DMCA takedown notices, as he even filed precisely the same number of counternotifications to Instagram. (*See* Ex. D.) Nevertheless, Tauler alleged that there were 48 takedown notices when there were not.

- "It was only after Okularity filed forty-eight (48) DMCA take-down notices against Paper that Instagram disabled Paper's account." (FAC ¶ 29.)
- "On at least 48 instances in 2019 and 2020 Defendants willfully, knowingly and materially made third-party §512(f) misrepresentations to Instagram stating that Plaintiff's images, some over three years old, were infringing intellectual property rights owned by one of the Clearinghouse Defendants." (FAC ¶ 37.)

/ / /

/ / /

**MEMORANDUM OF PS & AS ISO MOTION FOR SANCTIONS**

<u>False Allegation Lacking Reasonable Inquiry and Evidentiary Support:</u>
<u>Inconsistent Statements about Whether Okularity Was the Photo Agencies' Agent</u>

Tauler makes inconsistent statements that he is not aware whether Okularity is the agent of the Photo Agencies and that Okularity is the agent of the Photo Agencies. Both statements cannot be true. (*Compare* FAC ¶ 41("clear that Okularity has any right to send DMCA notices on behalf of Backgrid, Splash or Xposure"), *with* FAC ¶ 51 ("Okularity (acting through Nicolini), submitted the DMCA notices to Instagram [] on behalf of their principals [the Photo Agencies].").) Since one of these allegations must be false, Tauler lacked a good-faith basis in making it.

<u>False Allegation Lacking Reasonable Inquiry and Evidentiary Support:</u>
<u>Agency Defendants filed a separate lawsuit "purposely without regard to the truth or</u>
<u>falsity of the allegation that any of Plaintiff's uses of the photographs was prohibited</u>
<u>by law"</u>

Tauler alleged that when the Agency Defendants filed their lawsuit against ENTtech that they did so "purposely without regard to the truth or falsity of the allegation that any of Plaintiff's uses of the photographs was prohibited by law." (FAC ¶ 53.) This is untrue. As discussed above, the infringements were not fair use and there was no other reason why ENTtech should be allowed to use the Agency's photographs (and Tauler alleges no such reason). There is no good-faith basis to say the lawsuit was filed without regard to the truth or falsity of the allegations that the Photos were prohibited by law.

**B.**  **Without Reasonable Inquiry and Factual Basis Supporting Key Allegations, ENTtech's Claims Are Wholly Frivolous, Without Evidentiary Support, and Sanctionable Under Rule 11 and the Court's Inherent Authority.**

Tauler filed a First Amended Complaint that had two causes of action: Misrepresentation of DMCA notices under 17 U.S.C. § 512(f) and RICO. Both of these claims are frivolous because key factual allegations on which they are based,

12

1   as discussed above, are not objectively reasonable and because there was no

2   reasonable inquiry into the same. No reasonable attorney, presented with the

3   information made available to Tauler, would conclude that there was a factual basis

4   for the allegations made in the FAC.

5       DMCA Misrepresentation claim: ENTtech contends that Defendants failed to

6   "take into consideration 'fair use' as a defense to their alleged claims." (FAC ¶ 40.)

7   As discussed above, this allegation is objectively unreasonable because he lacks

8   evidentiary support. Tauler had no basis to say that Okularity did not consider fair

9   use; in fact, he was told the opposite. Further, ENTtech alleges that "they never sent

10  any demand letter to Plaintiff until after Instagram disabled Plaintiff's account."

11  (FAC ¶ 41.) A demand letter is not necessary under the DMCA. *See* 17 U.S.C.§ 512.

12  These unsupported allegations could never amount to a DMCA § 512(f) claim and

13  no reasonable lawyer would conclude that there was a misrepresentation. Tauler has

14  no colorable DMCA misrepresentation claim; he manufactured one to create an

15  offense to the Photo Agencies infringement claims against ENTtech.

16      Moreover, with respect to the Photo Agencies, ENTtech contends that is it

17  both not "clear that Okularity has any right to send DMCA notices on behalf of

18  Backgrid, Splash or Xposure" (FAC ¶ 41) and that "Okularity (acting through

19  Nicolini), submitted the DMCA notices to Instagram [] on behalf of their principals

20  [the Photo Agencies]." (FAC ¶ 51.) Both statements cannot be true. No reasonable

21  attorney would make these two contradictory allegations to the Court.

22      RICO claim: ENTtech cannot say that it is a victim to a "scheme" to defraud it

23  of its Instagram account when ENTtech is a serial and repeat infringer and lost its

24  Instagram account because it was deemed the same by Instagram. ENTtech is the

25  bad actor here, for repeatedly using the Photo Agencies' copyrighted images without

26  authorization. Defendants sought to vindicate their important intellectual property

27  rights by sending valid DMCA takedown notices. There is no evidentiary support for

28  either fraud-based predicate acts or extortionate ones. Thus, there is no objective

13

**MEMORANDUM OF PS & AS ISO MOTION FOR SANCTIONS**

1   basis to say that Defendants had a "scheme to defraud and extort" when all they did

2   was follow the law. ENTtech cannot and has not made a single supported allegation

3   of unlawful conduct, and so the RICO claim is wholly baseless and frivolous.

4        As discussed above, the key underlying facts to these claims were refuted and

5   not otherwise inquired about by Tauler. These claims then are grievances regarding

6   the existing law codified in 17 U.S.C. § 512, not about Defendants' actions.

7   **C.    Tauler Has Been Subject to Rule 11 Sanctions Before for Failure to**

8   **Make a Reasonable Inquiry and Has Been Called Out for Bringing**

9   **a RICO Claim for an Improper Purpose.**

10       In *Certified Nutraceuticals,* 2018 WL 4385368 at *6-7, the district court for

11  the Southern District of California sanctioned Tauler for failing to make a reasonable

12  inquiry into his allegations. In that case, Tauler falsely alleged that his client was the

13  assignee to a patent even though he "admitted that at the time the Complaint was

14  filed, he was aware that FCEI (*i.e.,* not Mr. Alkayali) was listed as the assignee of

15  the '319 Patent" and was on further notice of the same when the defendant in that

16  case filed an answer stating the same."  He admitted at the hearing he did not know

17  whether his client was the assignee "either way," but it did not stop him from filing a

18  declaration that said his client was the assignee. *Id.* at *7. This frivolous position

19  ultimately got him sanctioned in the Southern District of California.

20       Since *Certified Nutraceuticals,* Tauler has confronted another Rule 11 motion

21  but escaped. *In re Outlaw Laboratory, LP Litigation,* 2019 WL 3858900, at *6 (S.D.

22  Cal. Aug. 15, 2019), the Court ultimately decided Tauler's conduct was not

23  sanctionable but noted the following about Tauler's behavior in *Certified*

24  *Nutraceuticals*: *"while disturbing, the Court is unwilling, at this juncture, to weigh

25  Mr. Tauler's conduct in the Certified Nutraceuticals against him or consider it as

26  evidence of a larger pattern of sanctionable behavior." Id.*

27       Judge Birotte, in this District, warned Tauler of Rule 11 when Tauler Smith

28  LLP (as plaintiff) brought a RICO claim against a former business associate. Judge

14

Birotte stated in his order granting judgment on the pleadings with respect to Tauler's RICO claim: "[t]his seems to be a business relationship that ended poorly, not a criminal enterprise's continuing pattern of racketeering activity that threatens the public. The Court tends to agree that 'by appearances' the RICO claim was added for an 'improper purpose.' Fed. R. Civ. P. 11(b)(1)." *Tauler Smith LLC v. Valerio,* 20-cv-00458 AB (ASx), 2020 WL 1921789 (C.D. Cal. Mar. 6, 2020).

### D. Rule 11 Sanctions Are Appropriate because the FAC Is Frivolous and Designed with an Improper Purpose.

The facts demonstrate that Tauler was informed of evidence that contradicts the allegations in this Complaint, failed to make a reasonable inquiry into the same, all while bringing the claims for an improper purpose. Rather than paint a truthful picture, Tauler chose to allege that the Defendants engaged in a criminal-like scheme to defraud ENTtech. Tauler intentionally filed a Complaint contending that Defendants had unlawfully filed unjustified DMCA takedown notices with Instagram as a pattern and practice to extort ENTtech. This assertion, however, lacks any connection to the reality of the underlying facts. Defendants took active steps to demonstrate that the Photo Agencies were protecting their copyrighted materials in good faith.

Given the dearth of evidentiary support and the clear notice given to Tauler, the Complaint is wholly frivolous, and the conclusion must be that it was designed for an improper purpose. "The central purpose of Rule 11 is to deter baseless filings." *Cooter & Gell*, 496 U.S. at 393. Sanctions are appropriate—indeed, "must be imposed"—when the paper is either frivolous or filed for an improper purpose. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). "Frivolous" means "a filing that is both baseless and made without a reasonable and competent inquiry," whether partially or in the entirety. *Id.* at 1358, 1364-65. The standard is one of objective reasonableness. *Altmann v. Homestead Mortg. Income Fund*, 887 F. Supp. 2d 939, 955 (E.D. Cal. 2012).

**MEMORANDUM OF PS & AS ISO MOTION FOR SANCTIONS**

The Court may impose both monetary and non-monetary sanctions for the violations of Rule 11. *See* Fed R. Civ. P. 11(c)(2); *Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 175 (C.D. Cal. 2002).  The Court should impose sanctions sufficient "to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).  Plaintiff made no objectively reasonable and independent inquiry to determine whether the serious allegations against Defendants were well grounded in fact or law. Had Tauler done so, ENTtech could not have sued. *Truesdell*, 293 F.3d at 1153-54 (upholding sanctions when complaint "stated allegations … that Plaintiff's counsel must have known were false"; allegations were "at best, disingenuous … when all along counsel had personal knowledge" of facts that disproved the allegations).

Rule 11 requires that counsel have in hand sufficient credible information (as opposed to speculation) to enable an objectively reasonable attorney to form the belief that the allegations to which he put his name are supported by evidence. Tauler did not, as no such evidence exists. And Tauler made the allegations in the face of information Okularity provided to Tauler that contradicted the false allegations contained in the filed complaint. Because Tauler filed a complaint with factual contentions for which there is no evidentiary support, the Court should sanction both Robert Tauler and Tauler Smith LLP.  *See* Fed. R Civ. P. 11(c)(1) (providing court may impose sanctions "on any attorney, law firm, or party that violated the rule or is responsible for the violation" and that "[a]bsent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee").

### E.    Sanctions under the Court's Inherent Power Are Also Appropriate

As discussed above, Tauler alleged critical facts to ENTtech's causes of action against Defendants without factual basis or investigation, rendering the DMCA claim and the RICO claim frivolous and not warranted by law. The purpose of these claims was to gain an advantage in the copyright infringement claims to which

16

ENTtech and Tauler were on notice. Moreover, the purpose was to create leverage to get ENTtech's Instagram account reinstated, which was taken down because Instagram deemed ENTtech a repeat infringer under its Terms of Use. *In re Itel Securities Litigation,* 791 F.2d 672, 675 (9th Cir. 1986) (sanctions are justified when a party acts *for an improper purpose*—even if the act consists of making a truthful statement or a non-frivolous argument or objection. The improper purpose was the attempt to gain tactical advantage in another case). Such bad faith is sufficient to justify sanctions under the Court's inherent power.

### F.    Sanctions Are Also Appropriate under the Local Rules

The factual and legal positions taken by Tauler on behalf of his client are not just inconsistent with the truth, but also seek to mislead the court with a false statement of facts, as described above. *See supra* Section IV.A.  The numerous misstatements that make up the substance of these claims were clearly incorrect to Tauler, who pursued them anyway, willfully or at least recklessly. As such, under Cal. R. Prof. Conduct 3.3(a)(1) and the Local Rules, the Court should impose sanctions.

### G.    Sanctions Should Also Issue for ENTtech's False Proof of Service with Respect to Splash News and Picture Agency LLC

ENTtech served the wrong entity.  It attempted to serve Splash News and Picture Agency LLC at the agent for service of process for Splash News & Picture Agency LLC, a different entity. (Ardalan Decl., ¶¶ 2-4, Ex. A-D.)  On or around July 23, 2020, the agent for service of process for Splash News & Picture Agency notified Tauler that the service was rejected. (Ardalan, Decl. Ex. C.) On August 8, 2020 Tauler filed a proof of service claiming Splash was served. (Dkt. 17.) Ardalan notified Tauler that Splash, defendant in this case, was never served. Ardalan Decl.,

/ / /

/ / /

/ / /

**MEMORANDUM OF PS & AS ISO MOTION FOR SANCTIONS**

¶¶ 2-4, Ex. B, D.[10] Tauler claimed he would investigate what happened, but did nothing to correct the record, although the Court struck the proof of service because it failed to comply with the Local Rules.  (Ardalan Decl., ¶ 2.) In a separate action filed by the Photo Agencies against ENTtech, on ***August 25***, ENTtech asked that court to take judicial notice of the Proof of Service filed with respect to Splash. *See Backgrid et al. v. ENTtech*, 2:20-cv-06803-RSWL (Dkt. 24, footnote 3.); (Ardalan Decl., ¶ 5.)   Such a blatant misrepresentation to the Court is also sanctionable.

## V.    CONCLUSION

The circumstances here demonstrate that Tauler filed a First Amended Complaint that is factually and legally deficient under Rule 11, the California Rules of Professional Conduct, and the Local Rules of the Central District of California. He did so despite knowing that the facts were contrary to the allegations he was making in the pleading, and also despite being put on notice as to the baseless—and sanctionable—nature of his actions. (*See* Perkowski Decl. Ex. A.)

/ / /

/ / /

/ / /

---

[10] The service date became significant because Tauler refused to provide any extension to Splash and by the time the proof of service was filed and Splash saw the misleading proof of service. Splash only had six days to meet and confer for its motion to dismiss. (Ardalan Decl., ¶ 2.) Tauler refused to grant any courtesy with respect to shortening the meet and confer time allowance under 7-3 or agreeing to an extension of time to respond, which Splash requested to avoid the intervention of the Court.

**MEMORANDUM OF PS & AS ISO MOTION FOR SANCTIONS**

1    Okularity and the Photo Agencies respectfully request that this Court issue

2  sanctions under Rule 11, the Court's inherent power, and the Local Rules, in the

3  amount of fee's spent by Defendants to date, and in striking the frivolous factual and

4  legal allegations of the First Amended Complaint.

5

6  Dated:  September 25, 2020          **PERKOWSKI LEGAL, PC**

7                                      By: /s/Peter E. Perkowski

8                                          Peter E. Perkowski

9                                          Attorneys for Defendants

10                                         Okularity, Inc. and Jon Nicolini

11

12  Dated:  September 25, 2020          **ONE LLP**

13                                      By: /s/ Joanna Ardalan

14                                          Joanna Ardalan
                                           David Quinto
15                                         Peter Afrasiabi

16                                         Attorneys for Defendants BackGrid USA,

17                                         Inc., Splash News and Picture Agency,

18                                         LLC, and Xposure Photo Agency, Inc.

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF PS & AS ISO MOTION FOR SANCTIONS**