1  Peter E. Perkowski (SBN 199491)
   peter@perkowskilegal.com
2  Matthew P. Kelly (SBN 224297)
   PERKOWSKI LEGAL, PC
3  445 S. Figueroa Street, Suite 3100
   Los Angeles, CA 90071
4  Telephone: (213) 426-2137

5  Attorneys for Defendants OKULARITY, INC. and JON NICOLINI

6  David Quinto (Bar No. 106232)
   Joanna Ardalan (Bar No. 285384)
7  jardalan@onellp.com
   ONE LLP
8  9301 Wilshire Boulevard, Penthouse Suite
   Beverly Hills, CA 90210
9  Telephone: (310) 866-5157

10 Peter R. Afrasiabi (Bar No. 193336)
   pafrasiabi@onellp.com
11 ONE LLP
   4000 MacArthur Boulevard, East Tower Suite 500
12 Newport Beach, CA 92660
   Telephone: (949) 502-2870
13
14 Attorneys for Defendants BACKGRID USA, INC., SPLASH
   NEWS AND PICTURE AGENCY, LLC, and XPOSURE PHOTO
15 AGENCY, INC.

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18
   ENTTECH MEDIA GROUP LLC,          | Case No. 2:20-cv-06298 JWH (Ex)
19
              *Plaintiff,*            | *Hon. John W. Holcomb*
20
   v.                                | **DEFENDANTS' JOINT REPLY
21                                    | MEMORANDUM OF POINTS &
   OKULARITY, INC. et al.,           | AUTHORITIES IN SUPPORT OF
22                                    | MOTION FOR SANCTIONS**
              *Defendants.*
23                                    | Date:     October 26, 2020
                                      | Time:     9:00 a.m.
24                                    | Place:    TBD
25                                    | Compl. filed:   July 15, 2020
26                                    | *No Trial Date Set*
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants' motion identified some 17 different allegations in the First Amended Complaint ("FAC"), grouped into seven categories, that lacked a reasonable inquiry and evidentiary support. For many of them, Robert Tauler and Tauler Smith LLP (together, "Tauler") had information—orally and in writing—that directly contradicted the allegations in the FAC. Nevertheless, Tauler filed the FAC with those baseless allegations anyway.

In a scattershot Opposition, Tauler makes no effort to explain the factual grounds for its allegations. Tauler doesn't address three of the seven categories that Defendants offered as a basis for sanctions. Two others were addressed inadequately. For the two most important categories of factually deficient allegations—namely, that Okularity did not conduct a fair-use analysis before sending DMCA take-down notices to Instagram, and that those notices were produced and sent automatically—Tauler fails to explain why it filed the FAC even though it was provided with facts showing that its allegations were factually baseless. There is no justification.

Tauler argues that determining whether its allegations have factual support can be determined only after discovery. That's not how it works. Tauler needs some evidentiary support for its allegations *before* it makes them and presents them to the Court. But leaving that aside, discovery won't help Tauler here because the key facts necessary to decide this motion aren't subject to any dispute: Tauler had information in its possession, including information provided by Defendants, that contradicted a significant portion of its FAC—nearly 30% (17 allegations out of 57) of the entire pleading. Despite having that information, Tauler conducted no additional investigation or inquiry; instead, it filed the FAC with those baseless factual allegations. That is textbook sanctionable conduct. The Court should grant the motion.

## II.   ARGUMENT

### A.   The Ninth Circuit has rejected ENTtech's argument that the Photographs are not copyrightable.

ENTtech's primary argument—in reality, about five pages of "facts," nearly all of which pertain to another case—appears to be that the Photographs are not sufficiently original to be copyrightable. (Br. at 1-5.) The Ninth Circuit has squarely rejected this argument (which ENTtech has not pleaded in any event).

Addressing the threshold for copyrightability, in *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991), the Supreme Court held that "[t]he *sine qua non* of copyright[ability] is originality" and that "[o]riginal, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* at 345 (citation omitted). The Supreme Court described this requisite degree of creativity as "extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Id.* (citation omitted).

Applying this standard to photography, the Ninth Circuit has stated that "[w]hen this articulation of the minimal threshold for copyright protection is combined with the minimal standard of originality required for photographic works, the result is that even the slightest artistic touch will meet the originality test for a photograph." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000). The Ninth Circuit in essence held that photography automatically meets the standard:

> In assessing the "creative spark" of a photograph, we are reminded of Judge Learned Hand's comment that "***no photograph, however simple, can be unaffected by the personal influence of the author***." This approach, according to a leading treatise in the copyright area, "has become the prevailing view," and as a result, "almost any[] photograph may claim the necessary originality to support a copyright merely by virtue of the photographers' [sic] personal choice of subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken." This circuit is among the majority of courts to have

adopted this view. Thus, we have noted that "courts have recognized repeatedly that the creative decisions involved in producing a photograph may render it sufficiently original to be copyrightable and 'have carefully delineated selection of subject, posture, background, lighting, **and perhaps even perspective alone as protectable elements of a photographer's work**.'"

*Id.* at 1076-77 (citations omitted) (emphasis added) (alterations in original).

Candid photos are not devoid of copyright protection. *See Morris v. Young*, 925 F. Supp. 2d 1078, 1083 (C.D. Cal. 2013) (photos of band performing on stage protected by copyright); *see also Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1177 (9th Cir. 2012) (photographs of a secret celebrity wedding considered creative and entitled to copyright protection). Indeed, courts across the country have had no trouble concluding that paparazzi photographs, like the ones at issue here, are deserving of copyright protection. *E.g.*, *Balsley v. LFP, Inc.*, 691 F.3d 747, 760 (6th Cir. 2012) (paparazzo did not "direct [the subject] or create the background for the images," but did have "control over the exposure of the film (i.e., shutter speed and flash settings), used … artistic skill to edit the pictures for size, color, and clarity, and chose which images to publish based on the allurement of the subject."); *Barcroft Media, Ltd. v. Coed Media Group, Ltd.*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) (paparazzi photography "certainly involves skill and is not devoid of expressive merit"); *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515 (S.D.N.Y. 2020) (rejecting fair use defense as to paparazzi photographs); *Sands v. CBS Interactive Inc.*, No. 18-cv-7345 (JSR), 2019 WL 1447014 (S.D.N.Y. Mar. 13, 2019) (defendant infringed paparazzi photographs); *Baraban v. Time Warner, Inc.*, No. 99 Civ. 1569 JSM, 2000 WL 358375, at *4 (S.D.N.Y. 2000).

Tauler provides *no* authority for its novel proposition that paparazzi photographs are not copyrightable. It cites only two cases; both are contrary to Tauler's point. In *Galvin v. Illinois Republican Party*, 130 F. Supp. 3d 1187 (N.D. Ill. 2015), the parties "did not dispute" that a copyright claim was adequately pleaded, including the element of a valid copyright. *Id.* at 1191. The decision there turned on fair use, not copyrightability. Likewise, Tauler's parenthetical quotation of *Fitzgerald*

*v. CBS Broadcasting, Inc.*, 491 F. Supp. 2d 177 (D. Mass. 2007), demonstrates that the paparazzi-style photograph there was entitled to protection. *See id.* at 188 (photograph "exercised no more than the minimum authorial decision-making necessary to make a work copyrightable").[1]

Like the allegations of the First Amended Complaint ("FAC"), Tauler's assertion that the Photographs here are not copyrightable is baseless. The Photographs are registered, and are sufficiently creative and original—enough so that ENTtech decided they were worth copying and distributing to hundreds of thousands of its followers. Even if Tauler is right, though, that outcome does not help it here, where Defendants seek sanctions based on factual allegations in the FAC for which Tauler had no evidentiary support. As set forth below, the rest of Tauler's Brief does not provide justification for those unfounded allegations either.

## B. Tauler does not adequately address any of the allegations that lack evidentiary support.

Defendants raised seven categories of allegations that Tauler made without adequate evidentiary support. Tauler spends fewer than three pages of briefing attempting to wave away those concerns. Tauler even fails to address some deficiencies, and none of its arguments justify its baseless allegations.

### 1. Tauler tacitly concedes having no basis to allege that Okularity did not consider fair use.

The first ground for sanctions in Defendants' motion is that Tauler had no evidentiary basis to allege that Okularity did not consider fair use before sending DMCA take-down notices. *Tauler does not address this issue at all*, thus conceding that it had no basis to make those allegations.

Tauler's brief contains *no* arguments justifying its baseless allegations on this issue. At most, Tauler states (in the Section labeled "Facts") that the Photographs are

---

[1] Significantly, the Photographs at issue here are timely registered. That means the copyright carries a presumption of validity, which ENTtech would have the burden to disprove. *See* 17 U.S.C. § 410.

not entitled to copyright protection—which again is legally baseless—and that the "lack of creativity" is one element of the fair-use analysis. That partial recitation of fair-use principles falls well short of addressing fair use in total. But even more significantly, Tauler's discussion wholly fails to address the matter raised in the Motion: Nicolini told Tauler that Okularity considered fair use before sending the DMCA take-down notices (Nicolini Decl. ¶ 7), so Tauler had no basis to allege otherwise. The failure to address this issue is a tacit admission that it is true.

But the Court need not rely solely on Nicolini's statement because before Tauler filed the FAC it had some of the fair-use analysis performed by Okularity: Tauler had the DMCA take-down notices themselves, and those notices contain a substantial fair-use analysis. (Nicolini Decl., Ex. D.) Though Tauler claims that Okularity would not turn them over, we know that Tauler had the take-down notices because he filed counter-notifications to them, and those counter-notifications contain the fair-use analysis. (*Id.*)

Second, Defendants sent Tauler a letter on August 5, 2020, fully informing Tauler that Okularity considered fair use. (Perkowski Decl Ex. A.) Under a Section header that read "The Complaint contains factual contentions that lack evidentiary support," the letter states:

> You [Tauler] are aware—because Mr. Nicolini told you—of two things: that Mr. Nicolini personally reviewed each DMCA notice before it was sent, and that Mr. Nicolini considered fair use before sending the DMCA notices. Allegations in the Complaint to the contrary violate your obligation not to sign and present documents to the court that contain misrepresentations.

*Id.* at 4. Despite the information in this letter, which Tauler subsequently discussed with Defendants' counsel, Tauler filed the FAC just a few days later and included the same factually baseless allegations. The Ninth Circuit has held that filing a FAC after being informed of factual baselessness of the original complaint is sanctionable. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir. 1990). This is exactly what Tauler did here.

**2.  Tauler filed the FAC despite being told, repeatedly, that the DMCA take-down notices were not sent by automated systems.**

The second ground for sanctions in Defendants' motion is that Tauler had no evidentiary basis to allege that Okularity generated and sent the DMCA take-down notices using automated systems without human input. Tauler attempts to deflect this accusation by manufacturing a factual dispute, claiming that he heard Mr. Nicolini say something different. (Br. at 7-8.) The effort fails.

As above, the Court need not even consider Mr. Nicolini's statements to conclude that Tauler's allegations are sanctionable. That is because, again, Tauler had contrary information in writing before it filed the FAC. Defendants' August 5 letter informed Tauler "that Mr. Nicolini personally reviewed each DMCA notice before it was sent." (Perkowski Decl. Ex. A.) If after speaking with Mr. Nicolini on the phone Tauler truly had any misunderstanding about Okularity's process, that misunderstanding was cleared up no later than August 5. Nevertheless, Tauler filed the FAC and included allegations without factual basis to do so. Again, the Ninth Circuit has said this is sanctionable. *See Townsend*, 929 F.2d at 1366 (filing amended complaint after being informed of contrary facts, and without doing additional inquiry or investigation, was sanctionable).

**3.  Tauler's conflicting allegations about Okularity's agency relationship cannot be justified by "maybes."**

The third ground for sanctions in Defendants' motion is that Tauler had no evidentiary basis to make conflicting allegations about Okularity's agency relationship with the Photo Agencies. Tauler argues that both statements could, hypothetically, be true. But that's not the point. By making these factual allegations in the FAC, Tauler represented to the Court that it had conducted an investigation and had a good-faith basis to conclude that both these allegations are true. But they can't be reconciled: If it's "not clear" whether Okularity had the authority to act as an agent for the Photo Agencies, the unqualified allegation that Okularity sent DMCA take-

6

down notices as agent for the Photo Agencies has no support. And conversely, if Okularity sent DMCA take-down notices as the Photo Agencies' agent, then an unqualified allegation that it's "not clear" whether it had that authority has no factual support. At bottom, whether these allegations can be harmonized by threading a needle doesn't address the issue: Tauler did not conduct an adequate investigation to justify making the allegations.

### 4.   Tauler's explanation on the number of take-down notices doesn't hold water.

Another ground for sanctions in Defendants' motion is that Tauler had no evidentiary basis to allege that Okularity sent 48 DMCA take-down notices. Tauler's explanation is that he referenced a spreadsheet provided by Okularity, which listed 48 unique instances of alleged infringement and then, presumably, Tauler assumed that a take-down notice was sent for each one.

But that explanation is nonsensical. For one thing, the spreadsheet (Nicolini Decl., Ex. B) clearly shows that about eight infringements took place on Twitter, not Instagram, and about another nine took place on Paper Magazine's website. (*Id.*) Obviously, Okularity did not send DMCA take-down notices to Instagram for photographs appearing on other platforms, and Tauler had no evidentiary basis to state otherwise. For another thing, Tauler knows the exact number of DMCA take-down notices because it filed counter-notifications to them. (Nicolini Decl., Ex. D.)

Even on the most basic of factual circumstances that form the basis of its claims, Tauler appears to be going for raised eyebrows rather than accuracy. Regardless of the motivation, Tauler's allegations lacked a reasonable inquiry and evidentiary support and therefore are sanctionable.

### 5.   Tauler does not address three other bases for sanctions

There are three other bases for sanctions set forth in Defendants' motion: they are that Tauler had no evidentiary support to allege that Okularity made an extortionate demand of $4.6 million; that Defendants engaged in a fraudulent

1   scheme; and that the Photo Agencies filed a separate baseless lawsuit. Tauler does
2   not address any of these issues, which are alone sufficient to warrant sanctions.

3       **C.**    **ENTtech does not contest that it filed an inaccurate proof of service.**

4       In its opposition, Tauler admits "it is true" that it was informed that the initial
5   attempt to serve defendant Splash News was not complete. (Br. at 15.) That notice,
6   which was sent to Tauler on July 23, 2020, is entitled "Rejection of Service of
7   Process," and it states that the service of process "cannot be forwarded to the
8   intended party." (Ardalan Decl. Ex. D.) Despite being informed of the rejection,
9   Tauler filed a Proof of Service *on August 6* (ECF 17), nearly two weeks later.

10      Tauler doesn't dispute any of the above. Inexplicably, Tauler appears to
11  believe that the August 6 proof of service was valid, because it resulted in service of
12  some other entity. But it didn't—the attempt was rejected, and no one was served.
13  Filing the proof of service is a representation to the Court that service was effected on
14  the party named in the complaint. Tauler *knew* that wasn't true but did it anyway.
15  That's a misrepresentation to the Court, and there's no question that such conduct is
16  sanctionable.

17      Moreover, despite knowing that service was ineffective, Tauler omitted that
18  fact from discussions with counsel for Defendants. Instead, Tauler maintained the
19  fiction that it had served defendant Splash News even though it had not; before the
20  FAC was filed, Tauler's position in that regard would even have forced Splash News
21  to respond to the initial complaint to avoid missing a deadline. Tauler also used the
22  improper proof of service to gain leverage, claiming that Splash News did not timely
23  meet and confer on a motion to dismiss, which occurred the same day the proof of
24  service was filed, six days before the deadline to file the motion. (Ardalan Decl. ¶ 2.)
25  And on August 25, long after the initial proof had been stricken, Tauler asked the
26  court to take judicial notice of it. *See Backgrid et al. v. ENTtech*, 2:20-cv-06803-
27  RSWL (ECF 24, fn.3). Tauler wholly fails to even address this blatant lack of candor.
28  This conduct should not be tolerated.

Tauler also argues that it filed a valid proof of service a week later, on August 12, as if doing so negated the previous misrepresentations and omissions. It doesn't. Tauler didn't file the second, proper proof of service because it wanted to correct the record. It did so only because the Court had stricken the improper proof because it failed to comply with the local rules. (Ardalan Decl. ¶ 2.) Filing a valid proof of service does not undo the previous sanctionable conduct.

**D.      Whether the FAC states valid claims sufficient to survive a motion to dismiss does not mean Tauler had a proper purpose.**

Tauler appears to believe that he cannot be sanctioned for having an improper purpose so long as his claims are "non-frivolous" substantively. (Br. at 11-12.) The problem with that analysis is this: The claims asserted in the FAC are substantively non-frivolous—having survived a motion to dismiss (in part) for now—*only because Tauler has made factual allegations that lack evidentiary support*. It's very easy to state "valid" legal claims when the factual bases for them are made up. The conduct—manufacturing facts to support those legal claims—proves the improper purpose. Tauler's purpose in filing the FAC is not to vindicate its client's "version of events" (Br. at 12), because that "version of events" is fiction. As set out in Defendants' opening brief, Tauler's purpose was to harass Defendants so that they would agree to allow Instagram to restore ENTtech's account.

Tauler's resort to authority looking favorably on substantively non-frivolous claims in the context of Rule 11 does not work here. If the claims are substantively valid here, it is only because of Tauler's sanctionable conduct and improper purpose.

## III.   CONCLUSION

The Court should grant the motion and sanction Tauler for the reasons above and in Defendants' motion.

1

2   Dated: October 9, 2020          Respectfully submitted,

3                                   **PERKOWSKI LEGAL, PC**

4                                   By:    /s/ Peter Perkowski

5                                          Peter E. Perkowski

6                                          Attorneys for Defendants
                                           Okularity, Inc. and Jon Nicolini
7

8   Dated: October 9, 2020          **ONE LLP**

9                                   By:    /s/ Joanna Ardalan

10                                         David Quinto
                                           Peter Afrasiabi
11                                         Joanna Ardalan

12                                         Attorneys for Defendants BackGrid USA, Inc.,
                                           Splash News and Picture Agency, LLC, and
13                                         Xposure Photo Agency, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY MEMO OF Ps & As IN SUPPORT OF MOTION FOR SANCTIONS