Peter E. Perkowski (SBN 199491)
peter@perkowskilegal.com
Matthew P. Kelly (SBN 224297)
matt@perkowskilegal.com
PERKOWSKI LEGAL, PC
445 S. Figueroa Street, Suite 3100
Los Angeles, CA 90071
Telephone: (213) 426-2137

Attorneys for Defendants OKULARITY, INC.
and JON NICOLINI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTTECH MEDIA GROUP LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>OKULARITY, INC. et al.,<br><br>*Defendants.* | Case No. 2:20-cv-06298 JWH (Ex)<br><br>*Hon. John W. Holcomb*<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Date:    Dec. 11, 2020<br>Time:    9:00 a.m.<br>Place:    By video conference per Court notice<br><br>Compl. filed:    July 15, 2020<br><br>*No Trial Date Set* |

1

## **TABLE OF CONTENTS**

2

**Page**

3    I.      INTRODUCTION.................................................................1

4    II.     RELEVANT FACTS ............................................................2

5        A.    DMCA framework ........................................................2

6        B.    Summary of allegations ................................................4

7        C.    Procedural history .........................................................5

8    III.    LEGAL STANDARD ..........................................................6

9    IV.     ARGUMENT .......................................................................7

10       A.    The SAC fails to plead a sham exception to *Noerr-Pennington* immunity...7

11       B.    The RICO claim has not been pleaded with Rule 9 specificity. ..................10

12       C.    The RICO claims fail even if reviewed under Rule 8...............................12

13           1.    Predicate acts are factually and legally insufficient. ............13

14           2.    ENTtech does not and cannot plead a "pattern."...................16

15           3.    RICO enterprise has not been sufficiently pleaded. ..............17

16       D.    ENTtech should not be granted leave to amend again...............................18

17   V.      CONCLUSION .................................................................19

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................... 6

*Asia Econ. Inst. v. Xcentric Ventures, LLC*, No. CV 10-1360 SVW PJWX,
2010 WL 4977054 (C.D. Cal. July 19, 2010) ....................................... 14

*Baker v. FirstCom Music*, LACV 16-8931 VAP (JPRx),
2017 WL 9510144 (C.D. Cal. July 27, 2017) ....................................... 14

*Bell Atl. Corp. v. Twombly,*
550 U.S. 554 (2007) ............................................................................... 6

*Blake v. Dierdorff,*
856 F.2d 1365 (9th Cir. 1988)............................................................... 11

*Blue Oak Med. Group v. State Comp. Ins. Fund*, No. 2:18-cv-03867-RGK-sk,
2018 WL 6219892 (C.D. Cal. Nov. 7, 2018).......................... 11, 13, 18

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,*
140 F.3d 494 (3d Cir. 1998) ................................................................. 14

*Cadle Co. v. Schultz,*
779 F. Supp. 392 (N.D. Tex. 1991)....................................................... 17

*Cahill v. Liberty Mut. Ins. Co.,*
80 F.3d 336 (9th Cir. 1996)..................................................................... 6

*CyWee Group Ltd. v. HTC Corp.,*
312 F. Supp. 3d 974 (W.D. Wa. 2018) ................................................. 19

*Eclectic Props. E. v. Marcus & Millichap Co.,*
751 F.3d 990 (9th Cir. 2014)................................................................. 13

*Ecological Rights Found. v. Pac. Gas & Elec. Co.,*
713 F.3d 502 (9th Cir. 2013)................................................................. 19

*First Nationwide Bank v. Gelt Funding Corp.,*
820 F. Supp. 89 (S.D.N.Y. 1993).......................................................... 18

*Foad Consulting Group, Inc. v. Azzalino,*
270 F.3d 821 (9th Cir. 2001)................................................................... 8

*Goldfine v. Sichenzia*,
    118 F. Supp. 2d 392 (S.D.N.Y. 2000) ................................................................ 12

*Grauberger v. St. Francis Hosp.*,
    169 F. Supp. 2d 1172 (N.D. Cal. 2001) ............................................................. 16

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) ......................................................................................... 16

*Harris Custom Builders, Inc. v. Hoffmeyer*,
    1994 WL 329962 (N.D. Ill. 1994) .................................................................... 16

*Hirsch v. ENTtech Media Group LLC*,
    S.D.N.Y. Case No. 1:19-cv-7031-AT (filed July 27, 2019) ............................... 4

*Humphreys v. City of Coolidge*, No. CV-17-04045-PHX-DWL,
    2019 WL 316240 (D. Ariz. Jan. 24, 2019) ...................................................... 13

*I.S. Joseph Co., Inc. v. J. Lauritzen A/S*,
    751 F.2d 265 (8th Cir. 1984) ........................................................................... 15

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ................................................................ 7, 11, 12

*Kottle v. Nw. Kidney Centers*,
    146 F.3d 1056 (9th Cir. 1998) ................................................................ 7, 8, 10

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ......................................................................... 19

*Lujan v. Mansmann*,
    956 F. Supp. 1218 (E.D. Pa. 1997) ................................................................. 17

*Malin v. Singer*,
    217 Cal. App. 4th 1283 (2013) ........................................................................ 10

*Mercer Pub'lg, Inc. v. Smart Cookie Ink, LLC*, No. C12-0188 JLR,
    2012 WL 12863934 (W.D. Wash. July 25, 2012) ...................................... 8, 9, 10

*Midwest Grinding Co. v. Spitz*,
    976 F.2d 1016 (7th Cir. 1992) ......................................................................... 12

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ................................................................................. 7

*People v. Hesslink*,
    167 Cal. App. 3d 781 (1985) ........................................................................... 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Peterson v. Phil. Stock Exch.*,
    717 F. Supp. 332 (E.D. Pa. 1989) ....................................................................16

*Plount v. Am. Home Assur. Co.*,
    668 F. Supp. 204 (S.D.N.Y. 1987) .................................................................12

*Polaris Images Corp. v. ENTtech Media Group LLC*,
    S.D.N.Y. Case No. 1:19-cv-8208-KPF (filed Sept. 3, 2019)........................4

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ...................................................................................8, 9

*Religious Tech. Center v. Wollersheim*,
    971 F.2d 364 (9th Cir. 1992)........................................................................17

*Richmond v. Nationwide Cassel L.P.*,
    52 F.3d 640 (7th Cir. 1995) .........................................................................17

*Schreiber Distr. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393, 1400-01 (9th Cir. 1986) .....................................................11

*Schwartzwald v. ENTtech Media Group LLC*,
    S.D.N.Y. Case No. 1:19-cv-5505-JPO (filed June 12, 2019) ........................4

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) .....................................................................................13

*Shropshire v. Canning*, No. 10-cv-1941-LHK,
    2011 WL 90136 (N.D. Cal. Jan. 11, 2011) ...................................................2

*Sinclair v. Ziff Davis, LLC*, No. 18-cv-790 (KMW),
    2020 WL 3450136 (S.D.N.Y. June 24, 2020)................................................8

*Somers v. Apple*,
    729 F.3d 953 (9th Cir. 2013)..........................................................................6

*Sosa v. DirecTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006).........................................................................14

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)..........................................................................6

*Suris Gen. Contr. Corp. v. New Metro. Fed. Sav. & Loan Ass'n*,
    873 F.2d 1401 (11th Cir. 1989)....................................................................12

*Turner v. Cook*,
    362 F.3d 1219 (9th Cir. 2004)......................................................................17

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't,*
 770 F.3d 834 (9th Cir. 2014) ......................................................................... 14, 15

*United States v. Enmons,*
 410 U.S. 396, 400 (1973) ..................................................................................... 15

*Vess v. Ciba-Geigy Corp. USA,*
 317 F.3d 1097 (9th Cir. 2003) .............................................................................. 10

**Statutes**

17 U.S.C. § 204(a) ........................................................................................................ 2, 8

17 U.S.C. § 512 ................................................................................................................. 2

17 U.S.C. § 512(c)(1) ....................................................................................................... 2

17 U.S.C. § 512(c)(1)(C) ................................................................................................. 3

17 U.S.C. § 512(c)(3) ....................................................................................................... 2

17 U.S.C. § 512(c)(3)(A) ................................................................................................. 3

17 U.S.C. § 512(f) ............................................................................................................ 3

17 U.S.C. § 512(g)(1) ....................................................................................................... 3

17 U.S.C. § 512(g)(2)(A) ................................................................................................. 3

17 U.S.C. § 512(i)(1)(A) .................................................................................................. 3

18 U.S.C. § 1341 ............................................................................................................. 13

18 U.S.C. § 1951(a) ........................................................................................................ 14

18 U.S.C. § 1951(b)(2) ................................................................................................... 14

Cal. Penal C. § 519 ......................................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 6

Fed. R. Civ. P. 9(b) ..................................................................................................... 7, 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION[1]

After committing numerous acts of copyright infringement and, as a consequence, being deemed a "repeat infringer" by Instagram and thus having its account suspended, plaintiff ENTtech Media Group LLC was desperate to get its account restored. Incensed that the statutory framework set out in the Digital Millennium Copyright Act ("DCMA") operated as intended, ENTtech turned its attention to the owners of the copyrights in the images it infringed—defendants BackGrid USA, Inc., Splash News and Picture Agency, LLC, and Xposure Photo Agency, Inc. (the "Photo Agencies")—and their agent, Okularity, Inc. and its CEO Jon Nicolini (together "Okularity"). To gain leverage, ENTtech manufactured claims out of whole cloth, casting itself as the victim and accusing Defendants of running a "fraudulent scheme" to "extort" settlement payments. The result of ENTtech's fantasy is a baseless claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

But there is no fraud, no scheme, and no extortion. There is only the straight-forward application of a program created by Congress—the DMCA—working as designed to protect the rights of copyright owners and protect platforms like Instagram from liability for infringements like ENTtech's. Viewed in that context, this case presents serial wrongdoer ENTtech—which, despite filing three versions of a complaint, still has not denied that it infringed the Photo Agencies' copyrights—casting itself as the victim of a racketeering enterprise comprising the owners of the very copyrights it used without authorization (and their agent), which enterprise availed itself of statutory process set up to protect those copyrights, thereby "injuring" ENTtech. It is judicial gaslighting and an abuse of process.

The Court, with Judge Klausner presiding, already concluded that the RICO

---

[1] Though the Court recently issued an Order to Show Cause re: Sanctions (ECF 54), Okularity files this Motion and Memorandum on its deadline to respond to the SAC so as to preserve its challenges if ENTtech chooses to proceed with the SAC.

claim was legally deficient under the *Noerr-Pennington* doctrine but granted leave to amend so that ENTtech could try to plead a sham exception. (ECF 40.) The Court granted leave because while the "FAC does not allege facts to support its sham exception argument," ENTtech had "argued [in briefing] that 'Defendants lack exclusive licensing rights to the copyright material.'" (ECF 40, at 3-4.) But ENTtech's amendment contains only strained and legally frivolous allegations to support its theory: nothing but allegations about the photographs being posted to Instagram and the Internet, but not one fact about a signed writing that is required to convey ownership or exclusive rights. *See* 17 U.S.C. § 204(a). Far from successfully pleading a sham, ENTtech's additional allegations are legally inaccurate or describe conduct that is expressly permitted by law and subject to the litigation privilege.

Judge Klausner did not reach the issue of whether ENTtech had pleaded a plausible RICO claim. (ECF 40, at 3 (declining to address "Defendants' second argument" challenging RICO).) The SAC does nothing to cure these deficiencies previously argued but not decided. ENTtech has done nothing more than plead additional conduct related to Defendants' efforts to enforce valid copyrights that ENTtech still does not dispute it is infringing. The RICO claim is fatally flawed and should be dismissed with prejudice.

## II.    RELEVANT FACTS

### A.    DMCA framework

Congress adopted the DMCA, 17 U.S.C. § 512, in 1998 in part to address copyright issues with user-generated content, such as videos and pictures posted to internet service providers ("ISPs") and other website owners. *E.g.*, *Shropshire v. Canning*, No. 10-cv-1941-LHK, 2011 WL 90136, at *4 (N.D. Cal. Jan. 11, 2011). The statute sets forth a process whereby copyright owners can give ISPs and websites a "notification of claimed infringement"—that is, notice that copyrighted material has been placed on the site "at the direction of a user." 17 U.S.C. §§ 512(c)(1), (c)(3). Commonly called a "take-down notice," among other things the notification must

2

identify the infringing and infringed work, contain a "statement that the complaining party has a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law," and be sworn under penalty of perjury. 17 U.S.C. § 512(c)(3)(A). The ISP or website is immunized from liability if it responds to the take-down notice by acting "expeditiously to remove, or disable access to, the material." 17 U.S.C. § 512(c)(1)(C). This is commonly referred to as the "safe harbor."

But while acting expeditiously is necessary for an ISP or website to avail itself of the safe harbor, it's not sufficient. An ISP must also have "adopted and reasonably implemented, and informs [users of its] system or network of, a policy that provides for the termination in appropriate circumstances of [users] who are repeat infringers." 17 U.S.C. § 512(i)(1)(A). Instagram, a social media network where users post photo and video content, has adopted such a repeat infringer policy.[2] Instagram does not publish details of the policy, such as how it defines "repeat infringer."

In addition, to avail itself of the safe harbor for the "good faith disabling of access to, or removal of," infringing content, the ISP or website must "take[] reasonable steps promptly to notify the subscriber that it has removed or disabled access to the material." 17 U.S.C. §§ 512(g)(1), (g)(2)(A).

Among the protections provided for the users of the ISP or website, the DMCA provides for a legal claim when content is removed as a result of take-down notices that contain misrepresentations. Specifically, "[a]ny person who knowingly materially misrepresents … *that material or activity is infringing*" is liable for damages that result from the ISP or website "removing or disabling access to the material or activity claimed to be infringing." 17 U.S.C. § 512(f) (emphasis added).

---

[2] *See* https://help.instagram.com/1586774981367195?helpref=page_content. This policy is referenced in the SAC. (SAC ¶¶ 14, 39.)

**B.     Summary of allegations[3]**

ENTtech is a serial infringer. This case alone involves the infringement of numerous copyrighted photographs owned by the Photo Agencies.[4] (SAC ¶¶ 29, 37.) ENTtech does not deny that it infringed the photos. Rather, this case is about the consequences flowing from those infringements, and whether Defendants, by engaging in lawful actions contemplated by the DMCA, have engaged in conduct that violates RICO.

The Photo Agencies are photo agencies that license copyrighted images to some of the biggest media outlets in the world. (*See* SAC ¶¶ 25-26.) Okularity is their agent. (SAC ¶ 24.) Using software, Okularity searches the Internet for unauthorized uses of the Photo Agencies' copyrighted images. (SAC ¶ 15.) According to ENTtech, through this software Okularity generates and submits DMCA notices to social media platforms, including Instagram, for unauthorized images it finds, and it does so "without any of the investigation, warning or legal analysis required by the DMCA," specifically without any consideration of fair use. (SAC ¶ 15; *see* SAC ¶¶ 27, 40.) ENTtech alleges that because the DMCA take-down notices are purportedly sent automatically, without analyzing fair use, they contain misrepresentations as to Okularity's "good faith belief" that the material is infringing. (SAC ¶ 51.)

Okularity allegedly continues to file DMCA take-down notices until Instagram disables the account; only then does Okularity allegedly begin negotiating to settle claims of infringement. (SAC ¶¶ 15-16.) ENTtech claims that the account suspension provides leverage for maximizing settlement recoveries on behalf of the Photo Agencies, amounting to extortion. (SAC ¶ 16.) This process—from the sending of

---

[3] As they must, Defendants accept as true the allegations of the SAC, even though those allegations are without evidentiary support to the same extent as when made in the FAC, as the Court recognized in issuing the OSC re: Sanctions. (ECF 54.)

[4] ENTtech has been sued for copyright infringement other times as well. *See Schwartzwald v. ENTtech Media Group LLC*, S.D.N.Y. Case No. 1:19-cv-5505-JPO (filed June 12, 2019); *Hirsch v. ENTtech Media Group LLC*, S.D.N.Y. Case No. 1:19-cv-7031-AT (filed July 27, 2019); *Polaris Images Corp. v. ENTtech Media Group LLC*, S.D.N.Y. Case No. 1:19-cv-8208-KPF (filed Sept. 3, 2019).

4

DMCA notices to the negotiating of settlements—constitutes a fraudulent scheme according to ENTtech. (SAC ¶¶ 12-18.)

### C.   Procedural history

ENTtech filed its Complaint on July 15, 2020. (ECF 1.) After Defendants identified numerous deficiencies in the Complaint, including that the DMCA claim and the RICO claim were legally and factually baseless, ENTtech filed a First Amended Complaint ("FAC") that dropped two state-law claims that were preempted (and subject to a potential anti-SLAPP motion), but kept claims under the DMCA and RICO. Defendants moved to dismiss both claims of the FAC. (ECF 26, 28.)

The Court, Judge Klausner presiding, denied the motion as to the DMCA claim but granted the motion with leave to amend as to the RICO claim. (ECF 40, at 1.) The Court concluded that the *Noerr-Pennington* doctrine barred the RICO claim and that ENTtech had not alleged facts to support a sham exception to the doctrine. (ECF 40, at 3-6.) In dismissing the RICO claim, the Court granted ENTtech leave to amend to plead facts sufficient to plead the sham exception. (ECF 40, at 6.) The Court did not reach Defendants' other challenges to the RICO claim, instead granting leave to amend on the shame exception.

Nevertheless, the SAC is virtually unchanged from the FAC, except as follows. ENTtech alleges that:[5]

- Okularity's DMCA take-down notices urged Instagram to disable ENTtech's account as a repeat offender (SAC ¶ 50);

- Okularity's DMCA take-down notices were "objectively unreasonable, and … subjectively a sham" because it "had not undertaken a good faith assessment of whether Plaintiff's use of any images was not authorized by the law" (SAC ¶ 50);

- The Photo Agencies had no right to issue DMCA take-down notices because they did not possess exclusive rights in the photos due to: (a) the

---

[5] A document comparing the SAC to the FAC is attached as an Appendix.

authors had previously posted the images to Instagram, "thereby
affording Instagram an express license (under the Instagram terms of
use)" and (b) "[m]any (if not all) of the photos were also distributed
wide across other internet sites, thereby implicitly licensing the public at
large to use them" (SAC ¶ 50);

- The filing of an infringement suit by the Photo Agencies (C.D. Cal.
  No. 20-cv-6803), for the purpose of maintaining Instagram's suspension
  of ENTtech's account, was a sham because the Photo Agencies never
  moved for injunctive relief (SAC ¶ 53), and because it prevented
  ENTtech from removing the images itself (SAC ¶ 54);

- Defendants' counsel and an executive for one of the Photo Agencies
  made settlement offers or demands that included a discussion of
  settlement terms, such as communicating with Instagram about restoring
  ENTtech's account (SAC ¶ 54).

## III.   LEGAL STANDARD

Under the Federal Rules, claims should be dismissed at the outset of litigation
if a plaintiff fails to plausibly allege a cognizable legal theory or sufficient facts to
support its legal theory. *See Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013);
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Plausibility requires pleading facts, as
opposed to conclusory allegations or the 'formulaic recitation of the elements of a
case of action.'" *Somers*, 720 F.3d at 959-60 (quoting *Bell Atl. Corp. v. Twombly*,
550 U.S. 554, 555 (2007)). In ruling on a motion under Rule 12(b)(6), while the
Court must accept well-pleaded allegations as true and construe them in the light
most favorable to the non-moving party, *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,
337-38 (9th Cir. 1996), the Court may disregard "[t]hreadbare recitals"—the
unsupported conclusions and unreasonable inferences meant merely to plead required
elements consistent with a defendant's liability. *Iqbal*, 556 U.S. at 678; *Sprewell v.
Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

1    Allegations of fraud, however, must meet the heightened pleading requirement

2    of Rule 9(b). *See* Fed. R. Civ. P. 9(b). Rule 9(b) requires that allegations of fraud be

3    "specific enough to give defendants notice of the particular misconduct which is

4    alleged to constitute the fraud charged so that they can defend against the charge and

5    not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d

6    666, 671 (9th Cir. 1993) (internal quotation marks omitted). This standard requires a

7    plaintiff to state the time, place, and content of the alleged misrepresentation and,

8    critically, explain why the statement is false or misleading. *See id.*; *In re GlenFed,*

9    *Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994).

10   **IV.    ARGUMENT**

11       ENTtech's third attempt to plead a valid RICO claim fails as a matter of law.

12       **A.    The SAC fails to plead a sham exception to *Noerr-Pennington***

13           **immunity.**

14       There are no allegations—much less allegations that would meet a heightened

15   pleading standard—that would permit a conclusion that an exception to *Noerr-*

16   *Pennington* applies.

17       In the context of court actions, the Ninth Circuit "recognizes three

18   circumstances in which a[] … defendant's activities might fall into the sham

19   exception." *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1060 (9th Cir. 1998). First,

20   if there is just one alleged sham action (or a small number), plaintiff "must

21   demonstrate that the lawsuit was (1) objectively baseless, and (2) a concealed attempt

22   to interfere with [its] business relationships." *Id.* Second, if there are series of sham

23   actions, "the question is not whether any one of them has merit … but whether they

24   are brought pursuant to a policy of starting legal proceedings without regard to the

25   merits and for the purpose of injuring a market rival." *Id.* (internal quotation marks

26   omitted). Third, "if the alleged [conduct] involves making intentional

27   misrepresentations to the court, litigation can be deemed a sham if a party's knowing

28   fraud upon, or its intentional misrepresentations to, the court deprive the litigation of

7

1  its legitimacy." *Id*. (internal quotation marks omitted). ENTtech has pleaded none of
2  these.

3      *Objective baselessness*. As to the first sham circumstance, ENTtech has failed
4  to show that Defendants' legal claims are objectively baseless, which is evaluated "in
5  the sense that no reasonable litigant could realistically expect success on the merits."
6  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-
7  61 (1993), *cited in Mercer Pub'lg, Inc. v. Smart Cookie Ink, LLC*, No. C12-0188
8  JLR, 2012 WL 12863934, at *4 (W.D. Wash. July 25, 2012). To do so here, ENTtech
9  would need to allege facts showing that the copyright infringement claims, on which
10  Defendants' conduct is based, are objectively baseless—either the Photo Agencies
11  don't own valid copyrights or ENTtech has not infringed them. But ENTtech does
12  not do so: there are no allegations that would, if accepted as true, cast doubt on the
13  Photo Agencies' infringement claims.

14      At most, ENTtech alleges that some (not all) of the images were posted on
15  Instagram and "widely" across the Internet. (SAC ¶ 50.) But even accepting such
16  allegations as true, the result does not follow: neither posting to Instagram nor to the
17  Internet gives ENTtech, or anyone, the right to reproduce or distribute copyrighted
18  images without license or authorization. The suggestion is preposterous, baseless, and
19  sanctionable.[6] ENTtech's ultimate allegation—that the Photo Agencies lacked
20  exclusive rights (SAC ¶ 50)—need not be accepted as true both because it is a bare
21  conclusion, but also because it is contrary to law, which states that any transfer of
22  copyright ownership or exclusive rights must be in writing. *See Foad Consulting*
23  *Group, Inc. v. Azzalino*, 270 F.3d 821, 825 (9th Cir. 2001) (transfer of any of the
24  exclusive rights of copyrights must be in writing); 17 U.S.C. § 204(a) ("A transfer of

25

_____

26  [6] It is true that an Instagram post gives Instagram a license (though ENTtech cites no
   policy or term of use). But Instagram's license is not an exclusive license, nor is it
27  accompanied by a right for third parties—other than Instagram—to use an image. *See*
   *Sinclair v. Ziff Davis, LLC*, No. 18-cv-790 (KMW), 2020 WL 3450136, at *1-2
28  (S.D.N.Y. June 24, 2020) (Instagram's policies "are insufficiently clear" to conclude
   that its users are automatically granted a sublicense to use content).

copyright ownership" is not valid unless in writing signed by owner of the rights conveyed). ENTtech has pleaded no such writing. Moreover, ENTtech has seen the copyright registrations covering each of the photographs it is alleged to have infringed, and ENTtech had them before filing the SAC. *See BackGrid USA, Inc. v. ENTtech*, No. 2:20-cv-6803 RSWL (attachments to Complaint (ECF 1) and First Am. Complaint (ECF 22)); *see also* ECF 53 (Photo Agencies' counterclaims in this action). These registrations are prima facie evidence of the Photo Agencies' ownership of the photographs at issue.

ENTtech was given an opportunity to amend based on its representation that the Photo Agencies do not have exclusive rights to the photographs. ENTtech has no support for that assertion. But even assuming that ENTtech's allegations of "motive"—that Defendants acted with a purpose of suspending ENTtech's Instagram account—are true, such allegations alone are not sufficient to support the sham exception. That approach has been roundly rejected precisely in the context of DMCA take-down notices and pre-litigation demand letters. *See Mercer*, 2012 WL 12863934, at *4. There, the court surveyed the allegations and concluded that while they "may constitute evidence of an alleged 'ulterior purpose[],' the Supreme Court has made clear that 'an objectively reasonable effort to litigate cannot be sham regardless of subjective intent.'" *Id.* (quoting *Prof'l Real Estate Investors*, 508 U.S. at 57) (alteration in original). The same here: ENTtech's allegations do not "suggest that the accused conduct is objectively baseless." *Id.* The sham exception therefore does not apply.

*Injuring a market rival*: The second sham circumstance does apply for two reasons: first, ENTtech does not allege a series of sham litigation actions against it (or anyone else); but second, even if it did, Defendants and ENTtech are not market rivals—and certainly are not alleged to be market rivals.

*Litigation misrepresentations*: The third sham circumstance does not apply because ENTtech has not alleged any facts showing that Defendants made "knowing

fraud upon, or … intentional misrepresentations to, the court [that] deprive the litigation of its legitimacy." *Kottle*, 146 F.3d at 1060. Though ENTtech alleges that the second action for copyright infringement—which was dismissed on procedural grounds, not on the merits—had a "sham" purpose (SAC ¶ 53), ENTtech does not allege any facts that bring Defendants' conduct into this exception.[7] *See Mercer*, 2012 WL 12863934, at *4.

Accordingly, because the sham exception has not been adequately pleaded, Defendants' conduct is immune from RICO liability under the *Noerr-Pennington* doctrine.

**B.     The RICO claim has not been pleaded with Rule 9 specificity.**

The RICO claim also fails because it is based on averments of fraud the circumstances of which plaintiff has not pleaded with particularity.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Because of the serious nature of the allegations, even claims without fraud as an element must meet this standard when the averments on which they are based sound in fraud.

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege … that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim must satisfy the particularity requirement of Rule 9(b).

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). This

---

[7] All of Defendants' conduct related to the second litigation, and all statements made in it and in connection with it—including filing the action itself, and making settlement offers and demands—is protected by the litigation privilege unless a sham or bad faith is pleaded. *See Malin v. Singer*, 217 Cal. App. 4th 1283, 1300-01 (2013) (litigation privilege protects statements made to achieve objects of litigation so long as related to litigation contemplated in good faith; plaintiff cannot prevail on extortion claim if litigation privilege precludes liability on that claim). ENTtech has not pleaded bad faith or sham conduct. The litigation privilege applies to pre-litigation statements, such as Okularity's communications of settlement demands, as well. *See id.*

standard applies to RICO claims that are based on fraud (as here): "[I]n RICO cases,

Rule 9(b) requires that fraud be pled with particularity to state a claim for relief."

*Blue Oak Med. Group v. State Comp. Ins. Fund*, No. 2:18-cv-03867-RGK-sk, 2018

WL 6219892, at *3 (C.D. Cal. Nov. 7, 2018). Rule 9(b) is an exacting standard:

> To allege fraud with particularity, a plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. A plaintiff might do less and still identify the statement complained of; indeed, the plaintiff might do less and still set forth some of the circumstances of the fraud. But the plaintiff cannot do anything less and still comply with Rule 9(b)'s mandate to set forth with particularity those circumstances which *constitute* the fraud.

*GlenFed*, 42 F.3d at 1548 (emphases in original); *see also Blake v. Dierdorff*, 856

F.2d 1365, 1369 (9th Cir. 1988) (plaintiffs must allege statements and "the reasons

for their falsity").

ENTtech pleads predicate acts of "using the mails or wires in furtherance of a

scheme to defraud." (SAC ¶ 47.) Fraud is a necessary element of these claims too.

*See Schreiber Distr. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th

Cir. 1986) (if fraudulent acts are the basis of the alleged pattern of racketeering

activity, Rule 9(b) requires plaintiff to allege with particularity). Yet one searches in

vain for *any* factual allegations in the SAC that meet this requirement.

In fact, ENTtech's allegations in this regard are so bereft that all of them can

be easily listed:

- "Defendants … are engaged in a scheme to deprive Plaintiff of its digital assets through a pattern of fraudulent statements made in DMCA Notices and directly to Plaintiff" (SAC ¶ 18.)

- Defendants "are using unfair, fraudulent and illegal methods to carry out their scheme" (SAC ¶ 19.)

These allegations are devoid of facts necessary to satisfy Rule 9(b). While ENTtech

identifies the allegedly false statement—DMCA notices—it makes no attempt to "set

11

1    forth an explanation as to why the statement … was false or misleading." *GlenFed*,

2    42 F.3d at 1548. As in *GlenFed*, this failure renders the SAC insufficient.

3         Despite three tries to plead it, the RICO claim relies on conclusory or non-

4    existent allegations of fraudulent conduct. It should be dismissed under Rule 9(b).

5         **C.    The RICO claims fail even if reviewed under Rule 8.**

6         Even if the RICO claim satisfies Rule 9(b), it is still legally and factually

7    insufficient for other reasons. Like many plaintiffs, ENTtech misuses a RICO

8    claim—the "thermonuclear device" of civil litigation, *Goldfine v. Sichenzia*, 118 F.

9    Supp. 2d 392, 394 (S.D.N.Y. 2000)—to try to create an offense with a threat of treble

10   damages. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) ("civil

11   RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing

12   garden-variety business disputes into civil RICO actions"). The widespread abuse of

13   RICO stems from a generous compensation scheme coupled with the fact that

14   modern business uses mail and wires, thus providing a jurisdictional hook. *See id.*;

15   *Suris Gen. Contr. Corp. v. New Metro. Fed. Sav. & Loan Ass'n*, 873 F.2d 1401, 1404

16   (11th Cir. 1989) (RICO was not intended to give plaintiffs the opportunity to "boot-

17   strap" garden-variety business claims "into a 'federal case'" by couching allegations

18   in RICO language).

19        Moreover, just as courts impose heightened pleading requirements to protect

20   against the irreparable damage to reputation and goodwill that results from charges of

21   fraud, so too must courts safeguard against lightly made claims labeling one a

22   "racketeer." *Plount v. Am. Home Assur. Co.*, 668 F. Supp. 204, 206 (S.D.N.Y. 1987).

23   This "solicitude for defendants' good names" has led courts to require that RICO

24   elements be pleaded with specificity: "It would make little sense to require that the

25   elements of fraudulent predicate acts be pled with particularity" to protect reputation,

26   "while allowing the overarching civil RICO claim—with its far greater capacity for

27   reputational damage—to be alleged generally." *Id.* at 207.

28

1     Here, ENTtech's RICO claim suffers from its attempt to fit the square peg in a
2  round hole. To plead a RICO claim, ENTtech must allege: (1) conduct (2) of an
3  enterprise (3) through a pattern (4) of racketeering activity (5) that injured its
4  business or property. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).
5  On top of the deficiencies described above, and even without regard to heightened
6  pleading standards, ENTtech has not satisfied the requirements necessary to plead the
7  elements of racketeering activity, pattern, and enterprise.

8         **1.     Predicate acts are factually and legally insufficient.**

9     ENTtech's predicate acts of racketeering activity fall into three categories:
10  (1) mail fraud, (2) wire fraud, and (3) extortion, all based on the sending of DMCA
11  take-down notices, pre- and post-litigation demands and settlement offers, and the
12  filing of a complaint by the Photo Agencies. These predicate acts cannot support the
13  RICO claim here.

14     *Mail fraud*: "The mail fraud statute is implicated only where mail is 'sent or
15  delivered by the Postal Service [or] ... any private or commercial interstate carrier.'"
16  *Humphreys v. City of Coolidge*, No. CV-17-04045-PHX-DWL, 2019 WL 316240, at
17  *5 (D. Ariz. Jan. 24, 2019) (quoting 18 U.S.C. § 1341). ENTtech has not pleaded use
18  of the mail, only the use of automated systems and email. This is not enough. *See id.*

19     *Wire fraud*: To state a claim for wire fraud, the plaintiff must show: (1) the
20  formation of a scheme to defraud; (2) the use of the wires in furtherance of that
21  scheme; and (3) the specific intent to defraud. *See Eclectic Props. E. v. Marcus &*
22  *Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). But significantly, as the Court
23  decided in *Blue Oak Medical Group*, to plead that a scheme exists to defraud "parties
24  must plead facts which tend to exclude 'plausible or innocuous alternative
25  explanation[s]' for any fraudulent intent." 2018 WL 6219892 at *4. The much more
26  plausible explanation that has not been excluded here is that ENTtech is a repeat
27  infringer of photographs belonging to the Photo Agencies, those Agencies sent
28  DMCA notices to vindicate their important intellectual property rights, and Instagram

13

1   terminated ENTtech's account under Instagram's repeat-infringer policy. ENTtech

2   has made no effort to plead facts to exclude this "plausible or innocuous alternative

3   explanation." ENTtech also made no effort to plead that Defendants had a specific

4   intent to defraud. As such, the wire fraud predicate act has not been properly alleged.

5       *Extortion*: The Hobbs Act prohibits attempts "in any way or degree [to]

6   obstruct[], delay[], or affect[] commerce ... by ... extortion ...." 18 U.S.C. § 1951(a).

7   "The term 'extortion' means the obtaining of property from another, with his consent,

8   induced by wrongful use of actual or threatened ... fear ...." 18 U.S.C. § 1951(b)(2).

9   "Fear," in this context, "can include fear of economic loss." *United Bhd. of*

10   *Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't*, 770 F.3d 834, 838 (9th

11   Cir. 2014) ("*UBC*"). But the Hobbs Act does *not* impose "liability for threats of [even

12   baseless] litigation where the asserted claims do not rise to the level of a sham." *Sosa*

13   *v. DirecTV, Inc.*, 437 F.3d 923, 939-40 (9th Cir. 2006). California law on extortion is

14   to the same effect. *See* Cal. Penal C. § 519; *People v. Hesslink*, 167 Cal. App. 3d 781,

15   789 (1985) (reciting elements); *Baker v. FirstCom Music*, LACV 16-8931 VAP

16   (JPRx), 2017 WL 9510144, at *6 (C.D. Cal. July 27, 2017) (reviewing California law

17   difference between legitimate pre-litigation settlement negotiations and extortion,

18   which involves threats of criminal prosecution or going public with victim's alleged

19   wrongdoing). "Under California law, … it is well-settled that the threat to take legal

20   action cannot constitute extortion unless the threat was made with knowledge that the

21   threatened claim was false and without merit." *Asia Econ. Inst. v. Xcentric Ventures,*

22   *LLC*, No. CV 10-1360 SVW PJWX, 2010 WL 4977054, at *16 (C.D. Cal. July 19,

23   2010).

24       "[T]he fear of economic loss is a driving force of our economy that plays an

25   important role in many legitimate business transactions." *Brokerage Concepts, Inc. v.*

26   *U.S. Healthcare, Inc.*, 140 F.3d 494, 523 (3d Cir. 1998). But while there is a

27   difference "between legitimate use of economic fear—hard bargaining—and

28   wrongful use of such fear—extortion," *UBC*, 770 F.3d at 838, the Supreme Court has

14

held that economic fear becomes extortion only "where the obtaining of the property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property." *United States v. Enmons*, 410 U.S. 396, 400 (1973).

That is not the case here, where the Photo Agencies have legitimate legal claims under the Copyright Act based on the unauthorized use of their images, and, as set forth above, ENTtech cannot make out a legitimate case for sham litigation. Accordingly, any use of economic pressure by Defendants was not "wrongful," and therefore there is no extortion—whether under federal or state law—to support a RICO claim. *See UBC*, 770 F.3d at 841 (dismissing RICO claim based on economic pressure from legitimate legal claims). Holding otherwise would seriously implicate First Amendment principles: if seeking redress for legal wrongs could be a RICO predicate act, RICO itself would probably be unconstitutional.

Not surprisingly, the weight of authority therefore holds that the filing of a legal claim does not implicate the "fear" provision of an extortion cause of action. *See*, *e.g.*, *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984) (rejecting argument that the threat of legal action, for the purpose of frightening the plaintiff into making payments, amount to the infliction of "fear" within the meaning of the Hobbs Act). The result holds even if the legal claims asserted had no basis:

> We can not agree that the threat alleged here constituted the infliction of "fear" for purposes of the extortion statute. We assume for purposes of argument ... that the threat to sue was groundless and made in bad faith. Such conduct may be tortious under state law, but we decline to expand the federal extortion statute to make it a crime.

*Id.* (concluding that threats to sue did "not qualify as acts of racketeering bringing RICO into play"). Concluding that threats to file a civil action constitute a "pattern of racketeering activity" would cause citizens to "feel that their right of access to the courts of this country had been severely chilled." *Id.* RICO cannot extend that far.

Moreover "allegations of improper legal filings … are best addressed through state law tort remedies rather than resort to criminal statutes and RICO claims."

*Grauberger v. St. Francis Hosp.*, 169 F. Supp. 2d 1172, 1178 (N.D. Cal. 2001); *see also Peterson v. Phil. Stock Exch.*, 717 F. Supp. 332, 336 (E.D. Pa. 1989) ("The ordinary resort to legal process does not rise to the level of a 'wrongful use' of force or fear.") (citation omitted); *Harris Custom Builders, Inc. v. Hoffmeyer*, 1994 WL 329962, at *4 (N.D. Ill. 1994) (alleged scheme of filing lawsuits to enforce an allegedly illegally obtained copyright does not constitute a predicate act of racketeering for purposes of RICO) (citing cases). Where the alleged "threat" concerns the use of DMCA notices and Instagram rules to leverage payment for legitimate legal claims, even if those notices are allegedly improper (and they are not), then they cannot support a claim for extortion.

ENTtech has no legally viable RICO claim based on these allegations. The claim should be dismissed.

### 2.     ENTtech does not and cannot plead a "pattern."

ENTtech fails to adequately plead a pattern of racketeering activity. To plead a "pattern," ENTtech must show either "a series of related predicates extending over a substantial period of time" or "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* at 242.

The allegations of a pattern of racketeering activity fall woefully short of these requirements. Assuming that sending "fraudulent" DMCA take-down notices can be a predicate act of an alleged RICO claim, ENTtech does not plead "long-term" conduct. Rather, ENTtech alleges that "Okularity sent fraudulent DMCA notices to Instagram … numerous times in June 2020." (SAC ¶¶ 50.) A period of (at most) a month is not "extending over a substantial period of time." Even crediting ENTtech's allegation that there were 48 DMCA take-down notices "in 2019 and 2020" (SAC

1   ¶ 37), there is still no closed-ended continuity under RICO.[8] *See Turner v. Cook*, 362

2   F.3d 1219, 1230-31 (9th Cir. 2004) (no closed-ended continuity when 94 fraudulent

3   communications happened in a two-month span, and an additional three occurred

4   sporadically in the preceding year); *Religious Tech. Center v. Wollersheim*, 971 F.2d

5   364, 366-67 (9th Cir. 1992) ("[w]e have found no case in which a court has held the

6   requirement to be satisfied by a pattern of activity lasting less than a year").[9]

7          The allegations are insufficient to make out a "pattern" of racketeering and the

8   RICO claim should be dismissed.

9                    **3.    RICO enterprise has not been sufficiently pleaded.**

10         ENTtech's construction of a RICO enterprise is cursory and conclusory. If a

11  plaintiff alleges an association-in-fact enterprise, as attempted here, it must state:

12              facts indicating the existence of an ongoing organization,
                formal or informal, that functions as a continuing unit over time
13              through a hierarchical or consensual decision-making structure.
                To satisfy the "continuing unit" requirement, the plaintiff must
14              plead specific facts establishing that the association exists for
                purposes other than simply to commit the predicate acts.
15

16  *Cadle Co. v. Schultz*, 779 F. Supp. 392, 397 (N.D. Tex. 1991) (internal quotation

17  marks and footnotes omitted); *see also Lujan v. Mansmann*, 956 F. Supp. 1218, 1231

18  (E.D. Pa. 1997) (properly pleaded enterprise requires (1) names of people or entities

19  comprising it; (2) its structure, purpose, function, course of conduct; (3) information

20  on whether defendants are employed by it; (4) statement on whether defendants are

21  associated with it; and (5) statement on whether defendants are separate from,

22  members of, or are the enterprise). Courts have not hesitated to dismiss RICO claims

23  for failure to clearly identify the RICO enterprise. *E.g.*, *Richmond v. Nationwide*

24  *Cassel L.P.*, 52 F.3d 640, 645-46 (7th Cir. 1995); *First Nationwide Bank v. Gelt*

---

25  [8] ENTtech also alleges, "on information and belief," that the scheme has been
26  "continuous since 2018." (SAC ¶ 56.) This is inconsistent with its other allegations
    and also is the type of rote recitation of elements, without factual support, that the
27  Court is not required to credit on a motion to dismiss.
    [9] ENTtech cannot allege open-ended continuity either. Its Instagram account is
28  suspended, so there is no ongoing threat of repetition.

*Funding Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993) (dismissing RICO claim when plaintiff did not plead "any facts regarding the continuity of structure or personnel" of the enterprise).

In *Blue Oak Medical Group*, the Court decided that the plaintiff had not adequately alleged enterprise with sufficient factual detail (especially in light of the Rule 9 pleading standard). *See* 2018 WL 6219892, at *3-4. There, the Court stated that "it [was] unclear from the Complaint how the Defendants work together to achieve their common purpose of putting Blue Oak out of business," and that Blue Oak has not pleaded with particularity a "scheme to defraud," even though plaintiff had alleged:

> [T]he common purpose of the enterprise is to (1) financially harm and ultimately put out of business patient oriented medical providers; (2) induce Plaintiff to dispense medicine to injured workers covered by [State Fund], at Plaintiff's expense; (3) avoid paying Plaintiff for medicine dispensed by Blue Oak; and (4) retain money owed to Blue Oak. The enterprise carries out this common purpose by authorizing RFA's [sic] for the provision of medications and promising to pay for them, by inducing Blue Oak to dispense the medications to patients, and then consistently delaying payment and ultimately never paying at all [and that e]ach Defendant coordinated with one another to implement and conceal the enterprise.

*Blue Oak Med. Group*, 2018 WL 6219892, at *4 (internal quotation marks and citations omitted) (second and third alteration in original).

These allegations in *Blue Oak* provide more detail that what is alleged here, as the SAC makes no effort to explain how the Defendants engaged in an enterprise with respect the relationships among one another. Indeed, the allegations do not even break down the actions or omission of each Defendant, but instead lumps them together (the "Clearinghouse Defendants" and "Okularity"). These allegations are insufficient.

**D.    ENTtech should not be granted leave to amend again.**

ENTtech should not be granted leave to file a fourth complaint to assert this baseless claim.

"In determining whether dismissal without leave to amend is appropriate, courts consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed*, undue prejudice …, and futility of the amendment." *CyWee Group Ltd. v. HTC Corp.*, 312 F. Supp. 3d 974, 981 (W.D. Wa. 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (emphasis added). The discretion to deny leave to amend "is particularly broad where the plaintiff has previously amended the complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (internal quotation marks omitted). And futility is determined by a situation where, even with new facts and allegations, there is not a legal theory that would give relief to plaintiff. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (denying leave to amend appropriate when "pleading could not possibly be cured by the allegation of other facts") (internal quotation marks omitted).

ENTtech has already amended its complaint twice and did so with full knowledge of its deficiencies. Having chosen not to cure the deficiencies, ENTtech should not be granted leave to try again.

## V.   CONCLUSION

The Court should dismiss without leave to amend.

Dated: October 30, 2020         Respectfully submitted,

**PERKOWSKI LEGAL, PC**

By:   __/s/ Peter Perkowski_____
      Peter E. Perkowski

Attorneys for Defendants
Okularity, Inc. and Jon Nicolini