Peter E. Perkowski (SBN 199491)
peter@perkowskilegal.com
Matthew P. Kelly (SBN 224297)
matt@perkowskilegal.com
PERKOWSKI LEGAL, PC
445 S. Figueroa Street, Suite 3100
Los Angeles, California 90071
Telephone: (213) 426-2137

Attorneys for Defendants OKULARITY, INC. and JON NICOLINI

David Quinto (Bar No. 106232)
Joanna Ardalan (Bar No. 285384)
jardalan@onellp.com
ONE LLP
9301 Wilshire Boulevard, Penthouse Suite
Beverly Hills, CA 90210
Telephone: (310) 866-5157

Peter R. Afrasiabi (Bar No. 193336)
pafrasiabi@onellp.com
ONE LLP
4000 MacArthur Boulevard, East Tower Suite 500
Newport Beach, CA 92660
Telephone: (949) 502-2870

Attorneys for Defendants BACKGRID USA, INC., SPLASH NEWS AND PICTURE AGENCY, LLC, and XPOSURE PHOTO AGENCY, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| ENTTECH MEDIA GROUP LLC, | Case No. 2:20-cv-06298 JWH (Ex) |
|---|---|
| *Plaintiff*, | *Hon. John W. Holcomb* |
| v. | **DEFENDANTS' JOINT MEMORANDUM OF POINTS & AUTHORITIES RE ORDER TO SHOW CAUSE FOR IMPOSITION OF SANCTIONS** |
| OKULARITY, INC. et al., | |
| *Defendants*. | Date: December 11, 2020<br>Time: 9:00 a.m.<br>Place: By videoconference |
| | Compl. filed: July 15, 2020 |
| | *No Trial Date Set* |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 3

    A. Tauler has not cured the Rule 11 problems with the TAC. ........................ 3

        1. The TAC still alleges that Okularity failed to analyze fair use. .......... 3

        2. The TAC still alleges that Defendants issued fraudulent DMCA notices. ............................................................................................... 6

        3. The TAC still alleges that Defendants sent 48 DMCA notices. .......... 7

        4. The TAC still alleges that the Photo Agencies filed a separate lawsuit for improper purposes. ......................................................................... 8

    B. The TAC contains new baseless allegations that are sanctionable. ............ 8

    C. Through the TAC, Tauler tacitly admits that the prior pleadings are sanctionable. ............................................................................................. 12

    D. The conduct calls for the imposition of sanctions as it is unfair for Defendants to incur the costs associated with four baseless complaints. ..... 14

III. CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altmann v. Homestead Mortg. Income Fund*,
  887 F. Supp. 2d 939 (E.D. Cal. 2012) .................................................................. 14

*Cooter & Gell v. Hartmarx*,
  496 U.S. 384, 393 (1990) ..................................................................................... 14

*Foad Consulting Group, Inc. v. Azzalino*,
  270 F.3d 821 (9th Cir. 2001) ................................................................................. 9

*Sinclair v. Ziff Davis, LLC*, No. 18-cv-790 (KMW),
  2020 WL 3450136 (S.D.N.Y. June 24, 2020) ...................................................... 9

*Townsend v. Holman Consulting Corp.*,
  929 F.2d 1358 (9th Cir. 1990) ............................................................................. 14

*Truesdell v. S. Cal. Permanente Med. Grp.*,
  209 F.R.D. 169 (C.D. Cal. 2002) ......................................................................... 14

**Statutes**

17 U.S.C. § 204(a) ...................................................................................................3, 10

**Rules**

Cal. R. Prof. Conduct 3.3(a)(1) ..................................................................................... 2

Fed R. Civ. P. 11(c)(2) ............................................................................................... 14

Fed. R Civ. P. 11(c)(1) ............................................................................................... 15

Fed. R. Civ. P. 11(c)(4) .............................................................................................. 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Troubled by the failure of plaintiff ENTtech Media Group LLC and its counsel Robert Tauler and Tauler Smith LLP ("Tauler") to respond to serious arguments raised in Defendants'[1] Motion for Sanctions and explain the factual basis for its allegations, this Court ordered ENTtech to either (1) withdraw and dismiss the Second Amended Complaint ("SAC"), (2) file a Third Amended Complaint ("TAC") that cures the offending allegations raised in the Motion, or (3) file a brief and declarations explaining why the Court should not issue sanctions. (ECF 54.) The Court provided those options so that ENTtech could have "one more chance to cure (or otherwise to address in a more robust manner) the apparent infirmities" raised by Defendants. (ECF 54.) ENTtech filed a TAC (ECF 57), along with a declaration (ECF 60), but the documents do not cure all the deficiencies raised in the Motion, nor do they demonstrate that Tauler had a factual basis for the allegations made in the SAC or in any other pleading.

The TAC does not cure, but rather doubles down on, the most damaging of Tauler's baseless allegations, and the one on which ENTtech's entire complaint rises and falls: that Okularity submitted DMCA takedown notices without any analysis at all—and specifically without analysis of fair use. Tauler's purported "cure" to this infirmity is two-fold: one, Tauler claims that during a July 14, 2020, phone call, Nicolini did not affirmatively state he did any analysis before sending the DMCA takedown notices, and two, "on information and belief," that Nicolini's declaration to the contrary—submitted under penalty of perjury—is "untruthful." (TAC ¶ 15.) These additions do not demonstrate that Tauler has complied with Rule 11. In fact, they are a tacit admission of the opposite, showing that there is no factual basis for

---

[1] Okularity and Jon Nicolini (together "Okularity") are the agents of Backgrid USA, Inc., Splash News and Picture Agency LLC, and Xposure Photo Agency Inc. (together the "Photo Agencies"). Though separately represented, Okularity and the Photo Agencies submit this brief jointly.

the allegation that fair use was not considered. At best, the TAC alleges only that fair use wasn't discussed on a phone call and that Tauler doesn't believe Nicolini's statements under oath. That's not a cure. If it were sufficient, Rule 11 would be a dead letter.

While the TAC contains no facts supporting this allegation, Tauler was repeatedly given *evidence* that his allegations were baseless. An August letter from Defendants' counsel—who are prohibited by ethics rules from misrepresenting facts[2]—informed Tauler that Okularity considered fair use before sending the DMCA takedown notices. (ECF 39-13.) A follow-up Local Rule 7-3 conference of counsel, before the Motion for Sanctions was filed, did the same. A declaration under oath informed them again. (ECF 39-7.) Yet Tauler still cannot provide an explanation, much less factual support, for its purported belief for the key allegation that Okularity did not consider fair use.[3]

At the same time, the TAC admits that Okularity's DMCA takedown notices contained fair-use analysis. (TAC ¶ 15.) Tauler attempts to explain this away by arguing for an unreasonable inference, alleging that since the DMCA takedowns contained "identical verbatim discussion" of infringement and fair use, then "no actual analysis was truly performed." (TAC ¶ 15.) But this is not sufficient to satisfy Rule 11 either, especially in the face of an under-oath declaration to the contrary.

The TAC also adds unsubstantiated (and legally incorrect) allegations in an attempt to bolster the claim that the DMCA takedown notices contained misrepresentations. Tauler now alleges that the DMCA takedown notices falsely certified that the Photo Agencies "possess exclusive rights, when they purposely do not know (because, they have not inquired) whether any such rights exist." (TAC ¶ 40.) Yet ENTtech and Tauler have the copyright registrations—which are prima

---

[2] Cal. R. Prof. Conduct 3.3(a)(1).

[3] Tauler would have had another opportunity to hear why the SAC was frivolous but hung up on counsel during the meet and confer call after using the time to harass Defendants' counsel. (Supp. Perkowski Decl., Ex. 1 [Oct. 27, 2020 letter].)

2

MEMO RE RULE 11 SANCTIONS

facie evidence of ownership—and their allegations that some of the Images were posted on Instagram and "widely" across the Internet (TAC ¶ 50) does not at all undermine the Photo Agencies' rights to enforce. There is no meritorious legal theory that would support the idea that posting images on the Internet transfers exclusive rights or ownership, as such a transfer must be in writing and signed by the copyright holder to be enforceable. *See* 17 U.S.C. § 204(a). Tauler added this preposterous theory in the SAC, so it was not at issue in the Motion for Sanctions. But Defendants called out the frivolous theory in a motion to dismiss the SAC (ECF 55), so its lack of merit was no secret when Tauler filed the TAC. Nevertheless, Tauler re-stated it in the TAC anyway.

Tauler and ENTtech have been given numerous opportunities to address the deficiencies in the successive complaints, yet they have failed to do so. The consequence of this intransigence is that Defendants have incurred tens of thousands of dollars and continue to incur fees in addressing these baseless claims. Sanctions should issue. The Court should strike the TAC, dismiss the claims with prejudice, and require Tauler and ENTtech to reimburse Defendants their costs and fees in defending this matter.

## II.     ARGUMENT

### A.     Tauler has not cured the Rule 11 problems with the TAC.

Tauler and ENTtech did not have to file a TAC. Under the Court's order, though, if they did so the TAC needed to "cure[] *each* of the allegedly offending allegations in the FAC that Defendants challenge in their Motion for Sanctions." (ECF 54, at 5 (emphasis added).) They did not: the TAC continues to maintain baseless allegations.

#### 1.     The TAC still alleges that Okularity failed to analyze fair use.

Tauler has now been informed no fewer than three times that Okularity considered fair use before sending DMCA takedown notices. Yet the TAC continues to allege the contrary, without evidentiary support and without inquiry.

3

Tauler was first informed that Okularity considered fair use when Nicolini stated as much in pre-filing telephonic conversations with Tauler. The TAC alleges that Nicolini did not discuss fair use on a July 14, 2020 telephone call. (TAC ¶ 15.) But even if true, that does not support an allegation that fair use was not considered before DMCA notices were sent. It also does not eliminate the possibility of other phone calls where fair use *was* discussed—which is in fact what happened. (Supp. Nicolini Decl. ¶ 3 [attached].) Tauler was next informed that Okularity considered fair use in counsel's August 5, 2020 letter (ECF 39-13), and again in Nicolini's declaration in support of the Motion for Sanctions (ECF 39-7).

Nevertheless, the TAC continues to allege—without support—that Okularity did no analysis before sending the DMCA takedown notices. (TAC ¶¶ 15, 41, 53.) Tauler's attempt to "cure" falls short: The TAC first alleges that fair use was not discussed on one specific phone call with Nicolini. That is both inadequate (as stated above)—since it doesn't address Okularity's actions before submitting DMCA takedown notices—and it's insufficient to, in the Court's words, "explain how [the] challenged allegation is supported by reasonable inquiry, *particularly in view of the representations that Nicolini made to ENTtech*." (ECF 54, at 4 (emphasis added).) That is: Nicolini declared that he informed Tauler that he considered fair use in "discussions"—plural—with Tauler. (ECF 39-7.) The TAC merely alleges that fair use wasn't discussed on one call.

In addition, new allegations in the TAC undermine Tauler's contention. The TAC alleges that the DMCA takedown notices contain analysis of fair use. (TAC ¶ 15.) The TAC further states that the analysis is "identical verbatim" language on each notice, asserting that this somehow shows that "no actual analysis was truly performed." (TAC ¶ 15.) But that is only speculation without any factual support. It does not "cure" the deficiency.

In short, Tauler has no factual basis to allege that Nicolini did not personally review each infringement before issuing DMCA takedown notices, including by

4

considering fair use.[4] Despite lacking any good faith basis, Tauler still alleges the following in the TAC:

- "Okularity submits these notices without any of the analysis required by the DMCA, let alone any demand letter or even a warning to the alleged infringer." (TAC ¶ 15.) *Compare* FAC ¶ 15 ("Okularity does this [sends DMCA takedown notices] without any of the investigation, warning, or legal analysis required by the DMCA …").

- "Okularity's new business model pre-empts such lawsuits by using DMCA Notices instead of demand letters. However, as alleged in Paragraphs 15 and 40 herein, Okularity does not engage in any analysis prior to filing DMCA take-down notices as it should." (TAC ¶ 27.) *Compare* FAC ¶ 27 ("However, since the DMCA Notices are automatically generated and submitted without any attorney supervision, Okularity does not engage in any analysis prior to generating and filing DMCA takedown notices as it should.").

- "Defendants [sic] misconduct includes its failure to take into consideration 'fair use' as a defense to their alleged claims." (TAC ¶ 40.) *Compare* FAC ¶ 40 ("Defendants [sic] misconduct includes its failure to take into consideration 'fair use' as a defense to their alleged claims.").

- "Not only did Defendants fail to consider ENTech's fair use …" (TAC ¶ 41.) *Compare* FAC ¶ 41 ("Not only did Defendants fail to consider fair use …").

- "When Okularity … submitted the DMCA notices to Instagram … Nicolini knew (and thus, Okularity and all of its principals also knew)

---

[4] Fair use is not even a plausible argument for any of the unauthorized uses at issue here. The infringing images were posted on Instagram, in their entirety, with minimal commentary, lacking any sort of transformation, and directly competing with the licensees of the Photo Agencies. ENTtech has no non-frivolous basis to contend that fair use applies, which is why it has not alleged as much in any pleading.

5

      that no 'good faith' basis existed for believing that Plaintiff's uses of the images were unauthorized." (TAC ¶ 51.) *Compare* FAC ¶ 51 ("When Okularity … submitted the DMCA notices to Instagram … Nicolini knew (and thus, Okularity and all of its principals also knew) that no 'good faith' basis existed for believing that Plaintiff's uses of the images were unauthorized.").

- "Rather, the Defendants all knew that the notices were based solely on the results of a software application created to scan the internet for copies of images in which copyrights had been claimed – without any inquiry (much less, a good faith inquiry) into whether the uses of those images were "authorized by the copyright owner, its agent, or the law." (TAC ¶ 51.) *Compare* ¶ 51 ("Rather, the Defendants all knew that the notices were based solely on the results of a software application created to scan the internet for copies of images in which copyrights had been claimed – without any inquiry (much less, a good faith inquiry) into whether the uses of those images were "authorized by the copyright owner, its agent, or the law.").

The Court should sanction Tauler for asserting these baseless allegations in the FAC and maintaining them in the TAC.

### 2. The TAC still alleges that Defendants issued fraudulent DMCA notices.

Piggybacking off the unsupported allegations that Okularity did not consider fair use before sending DMCA takedown notices, the TAC continues to allege that the notices were "fraudulent" and were part of Defendants' "scheme" to defraud. Since the allegations that fair use was not considered lack evidentiary support, there is no evidentiary support for allegations that the DMCA notices were fraudulent or that Defendants engaged in a scheme. Yet Tauler still alleges as follows:

- "Defendants (1) are engaged in a scheme to deprive Plaintiff of its digital assets through a pattern of fraudulent statements made in DMCA Notices …" (TAC ¶ 18.) *Compare* FAC ¶ 18 ("Defendants (1) are engaged in a scheme to deprive Plaintiff of its digital assets through a pattern of fraudulent statements made in DMCA Notices …").
- "Okularity sent fraudulent notices to Instagram …" (TAC ¶ 50.) *Compare* FAC ¶ 50 ("Okularity sent fraudulent notices to Instagram …").

The Court should sanction Tauler for asserting these baseless allegations in the FAC and maintaining them in the TAC.

### 3. The TAC still alleges that Defendants sent 48 DMCA notices.

There is no evidentiary support for the allegations that Okularity sent 48 DMCA takedown notices. Nicolini's declaration states that there were only 35; Tauler knows the true number, as he filed precisely the same number of counter-notifications to Instagram. Nevertheless, Tauler maintains the allegations concerning 48 DMCA takedown notices—"or more," as the TAC now alleges—with some window dressing that doesn't cure the deficiency:

- "It was only after Okularity filed at least thirty-four (34) or thirty-five (35) DMCA take-down notices against Paper (and possibly as many as forty-eight (48) such notices, or more) that Instagram disabled Paper's account." (TAC ¶ xx.) *Compare* FAC ¶ 29 ("It was only after Okularity filed forty-eight (48) DMCA take-down notices against Paper that Instagram disabled Paper's account.").
- "On at least 34 or 35 instances in 2019 and 2020 (and possibly as many as forty-eight (48) instances, or more) Defendants willfully, knowingly and materially made third-party §512(f) misrepresentations to Instagram stating that Plaintiff's images, some over three years old, were infringing intellectual property rights owned by one of the Clearinghouse

Defendants." (TAC ¶ 37.) *Compare* FAC ¶ 37 ("On at least 48 instances in 2019 and 2020 Defendants willfully, knowingly and materially made third-party §512(f) misrepresentations to Instagram stating that Plaintiff's images, some over three years old, were infringing intellectual property rights owned by one of the Clearinghouse Defendants.").

Tauler's stubborn refusal to eliminate these baseless allegations, in the face of contrary evidence and without evidentiary support for them, is deserving of sanctions.

### 4. The TAC still alleges that the Photo Agencies filed a separate lawsuit for improper purposes.

Tauler alleged that when the Agency Defendants filed their lawsuit against ENTtech that they did so "purposely without regard to the truth or falsity of the allegation that any of Plaintiff's uses of the photographs was prohibited by law." (TAC ¶ 53; FAC ¶ 53.) There is no factual support for these allegations. As discussed above, the infringements were not fair use and there was no other justification for ENTtech using the Agency's photographs without authorization (and the TAC alleges no such reason). These allegations continue to be sanctionable.

Tauler attempts to support these allegations by making legally baseless assertions about the Photo Agencies' right to enforce its copyrights in the Images. Those assertions fail, and are independently sanctionable, as discussed below.

### B. The TAC contains new baseless allegations that are sanctionable.

Remarkably, the TAC includes newly sanctionable allegations and legal argument. The Court should sanction these new allegations under its inherent power, especially because ENTtech was on notice that its legal theory is both frivolous and factually deficient. (*See* Motion to Dismiss SAC, ECF 55.)

The new allegations concern the Photo Agencies' right to enforce their copyrights in the Images, and relatedly the objective baselessness of the Photo Agencies' claims of copyright infringement. Specifically, ENTtech alleges that

8

MEMO RE RULE 11 SANCTIONS

Defendants do not have exclusive rights in the Images because some (though not all) of the Images were posted on Instagram and "widely" across the Internet. (TAC ¶ 50; *see also* TAC ¶ 15, ¶ 40 (Defendants' "misconduct also includes falsely certifying in DMCA notices that the [Photo Agencies] possess exclusive rights, when they purposely do not know (because, they have not inquired) whether any such rights exist."); ¶ 51 (DMCA notices were fraudulent "because nobody made any inquiry to determine whether [the Photo Agencies] owned any 'exclusive rights[s]'").) But these allegations are both factually and legally unsupported: there are no facts alleged that would, if accepted as true, cast doubt on the Photo Agencies' copyright ownership; and even if Images were posted on Instagram and "widely" across the Internet, that alone does not undermine the Photo Agencies' copyright infringement claims against ENTtech.

This new theory—that somehow the Photo Agencies' right to enforce their copyrights is in question—has no factual support.[5] At most, ENTtech alleges that some (not all) of the images were posted on Instagram and "widely" across the Internet. (TAC ¶ 50.) But even accepting such allegations as true, the result does not follow: neither posting to Instagram nor to the Internet gives ENTtech, or anyone, the right to reproduce or distribute copyrighted images without license or authorization. The suggestion is preposterous, baseless, and sanctionable.[6] ENTtech's ultimate allegation—that the Photo Agencies lacked exclusive rights (TAC ¶ 50)—is not just a bare conclusion without underlying factual support, but it is contrary to law: any transfer of copyright ownership or exclusive rights must be in writing. *See Foad*

---

[5] ENTtech also claims that AKM-GSI is an owner of certain photographs, but as alleged in the Photo Agencies' counterclaim certain photographs were transferred to Backgrid USA, Inc., who is the owner. (ECF 53.)

[6] It is true that a post on Instagram gives *Instagram* a license (though ENTtech cites no policy or term of use). But Instagram's license is not an exclusive license, nor is it accompanied by a right for third parties—other than Instagram—to use an image in a post. *See Sinclair v. Ziff Davis, LLC*, No. 18-cv-790 (KMW), 2020 WL 3450136, at *1-2 (S.D.N.Y. June 24, 2020) (Instagram's policies "are insufficiently clear" to conclude that its users are automatically granted a sublicense to use content).

9

MEMO RE RULE 11 SANCTIONS

*Consulting Group, Inc. v. Azzalino*, 270 F.3d 821, 825 (9th Cir. 2001) (transfer of any of the exclusive rights of copyrights must be in writing); 17 U.S.C. § 204(a) ("A transfer of copyright ownership" is not valid unless in writing signed by owner of the rights conveyed.). The TAC pleads no such writing. Moreover, ENTtech and Tauler have seen the copyright registrations covering each of the photographs ENTtech is alleged to have infringed, and ENTtech had them before filing both the SAC and the TAC. *See BackGrid USA, Inc. v. ENTtech*, No. 2:20-cv-6803 RSWL (attachments to Complaint (ECF 1) and First Am. Complaint (ECF 22)); *see also* ECF 53 (Photo Agencies' counterclaims in this action). These registrations are prima facie evidence of the Photo Agencies' ownership of the photographs at issue. Accordingly, these new allegations are entirely meritless.

Tauler also alleges that the Photo Agencies have denied the allegation that Okularity was their agent. Tauler points to Docket No. 46, ¶ 51 and compares it with Docket 53, ¶ 51. But Tauler is simply wrong. Docket No. 46, states as follows:

> Those DMCA notices were fraudulent because they each contained "[a] statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." Plaintiff does not actually know with certainty whether all of the notices contained this statement – because, Defendants have disregarded its requests to see copies of the notices – but such a statement is required by § 512(c)(3)(A)(v) of the DMCA, which makes it highly likely that each of the notices did contain exactly this statement. Defendants knew that this statement was false (which is, in fact, the reason why they are concealing their DMCA notices from Plaintiff). When Okularity (acting through Nicolini), submitted the DMCA notices to Instagram (on behalf of their principals, the Clearinghouse Defendants Backgrid, Splash, and Xposure), Nicolini knew (and thus, Okularity and all of its principals also knew) that no "good faith" basis existed for believing that Plaintiff's uses of the images were unauthorized. Rather, the Defendants all knew that the notices were based solely on the results of a software application created to scan the internet for copies of images in which copyrights had been claimed – without any inquiry (much less, a good faith inquiry) into whether the uses of those images were "authorized by the copyright owner, its agent, or the law." See generally Lenz v. Universal Music Corp., 815 F.3d 1145, 1151-56 (9th Cir. 2016).

Defendants denied those allegations. That denial does not support the allegation that "Splash and Xposure have recently denied the allegation that Okularity was acting on their behalf," as ENTtech claims it does. (TAC ¶ 41.) In fact, the Photo Agencies' answer clearly admits that Okularity acted as Defendants' copyright agent. (ECF 53, ¶ 49 ("The Photo Agencies admit that Okularity was designated as a 'copyright agent,' but denies the remaining allegations in this Paragraph 49.").)

Tauler also includes settlement conversations protected under Rule 408 of the Federal Rules of Evidence, and under the litigation privilege, in the allegations supporting liability for ENTtech's RICO claim. These settlement conversations occurred after this lawsuit was filed. The executive at BackGrid who made a settlement offer did so after having friendly and seemingly productive calls with ENTtech's CEO. (Ginsburg Decl. ¶ 3.) Defendants wanted to have a businessperson-to-businessperson settlement dialog because of their concerns that Tauler was not communicating settlement discussions with this client earlier in this litigation and was driving this litigation to be more expensive for both parties, and therefore, less likely to settle.[7] (Ginsburg Decl. ¶¶ 2-3.) During those calls ENTtech's CEO told BackGrid's executive that he wished they had this conversation sooner, implying that this litigation could have been avoided had they just picked up the phone before it was filed. (*Id.*) He also asked BackGrid for a settlement "number." BackGrid's executive communicated a demand to ENTtech's CEO on behalf of all Photo Agencies. (Ginsburg Decl. ¶ 5.) Tauler understood that this discussion was for the purposes of settlement as he sent email message to counsel regarding the same.

---

[7] Earlier in the litigation, Defendants explained by phone to Tauler that the 512(f) and RICO claims were sanctionable. Defendants explained that a "graceful" way to avoid motion practice on these claims would be for ENTtech to drop its claims, stipulate to copyright liability, and go to arbitration for a monetary award, which would save everyone costs and fees and—as seemed very important to ENTtech at the time—allow ENTtech to get its Instagram account back up without delay. Tauler rejected this proposal immediately after it was proposed during the phone call. In other words, there was no opportunity for Tauler to have conferred with his client. (Supp. Ardalan Decl. ¶ 2.)

11

(Afrasiabi Decl. Ex. A, Quinto Decl., Ex. A.) Now that settlement discussion is being improperly used to support a RICO claim.[8]

By attempting to bolster their allegations of fraud and misrepresentation with these new theories and misrepresentations, ENTtech and Tauler have added fuel to the fire even apart from the Rule 11 arguments Defendants have already advanced. These new allegations are both factually groundless and legally meritless.

### C. Through the TAC, Tauler tacitly admits that the prior pleadings are sanctionable.

In the TAC, Tauler reverses itself by eliminating allegations, contained in three prior iterations of the complaint, that Okularity automatically submits DMCA takedown notices. There is no evidentiary support for those prior allegations, which merit sanctions.

The SAC alleged that "Okularity automatically generates and submits DMCA Notices to any social media platform, including Instagram, containing an image in Okularity's database. (ECF 60-1 [SAC-TAC redline] ¶ 15.) The TAC removes the language "and submits." (*Id.*) Though this amendment cures this allegation, it does not relieve Tauler of its prior sanctionable conduct in making these allegations to begin with. Specifically, Tauler made the baseless "automatically generates and submits" allegations *three times* without having evidentiary support for it.

The "automatically generates and submits" allegation appears in the initial Complaint (ECF 1 ¶ 15), but the TAC shows that Tauler had no basis for making the statement at that time. Namely, the TAC alleges that during a July 2020 phone call Nicolini stated "that Okularity uses automated software *to generate* DMCA notices." (TAC ¶ 15.) Even accepting as true that Nicolini made such a statement, it does not support an allegation that Okularity uses automated software *to submit* DMCA

---

[8] Defendants also had to endure a meet and confer because Tauler wanted to move to amend the complaint to add Peter Perkowski and Steve Ginsburg, BackGrid's executive, to the RICO claim. (Supp. Perkowski Decl. ¶ 3; Supp. Ardalan Decl. ¶ 3.)

notices. The "automatically generates and submits" allegation in the initial Complaint lacked evidentiary support.

The "automatically generates and submits" allegation also appears in the FAC, but by then Tauler was on notice that it was false. That's because on August 5, after the initial Complaint was filed, Defendants' counsel sent correspondence informing Tauler that "Mr. Nicolini personally reviewed each DMCA notice before it was sent, and that Mr. Nicolini considered fair use before sending the DMCA notices." (ECF 39-13.) The letter specifically called out the "allegation that 'Okularity [automatically generates and submits DMCA notices] without any of the investigation, warning, or legal analysis required by the DMCA' (Compl. ¶ 15)' [as] a particularly egregious example of such a misrepresentation." (*Id.* n.3.) Despite these factual statements from counsel—which were ethically bound not to contain misrepresentations—Tauler filed that FAC with the same "automatically generates and submits" allegation. (ECF 23 ¶ 15.) At the time of this filing, that allegation lacked evidentiary support *and* Tauler was aware of it.

The "automatically generates and submits" allegation also appears in the SAC, but by then Tauler had Nicolini's declaration, which was signed under penalty of perjury. In the declaration, Nicolini stated: "I personally caused the sending of 35 DMCA notices to Instagram …," "I personally reviewed each infringement prior to issuing the corresponding takedown notices to Instagram," and "[n]one of the 35 DMCA takedown notices at issue here were sent to Instagram by a fully automated system." (ECF 39-7 ¶¶ 5, 6.) Nicolini also declared that he spoke to Tauler and told him "that I personally reviewed each infringement for fair use prior to issuing a DMCA takedown notice and further that the takedown notices were not issued by an automated process." (ECF 39-7 ¶ 7.) Despite these statements in the declaration under oath, Tauler filed that SAC with the same "automatically generates and submits" allegation. (ECF 46 ¶ 15.) At the time, that allegation lacked evidentiary support *and* Tauler knew it.

13

MEMO RE RULE 11 SANCTIONS

The TAC may have cured part of one of the offending allegations raised in the Motion for Sanctions (namely, that Okularity automatically submitted DMCA takedown notices). But it serves only to conclusively show that Tauler should be sanctioned for the three times it made that allegation without evidentiary support.

### D. The conduct calls for the imposition of sanctions as it is unfair for Defendants to incur the costs associated with four baseless complaints.

There is no doubt that numerous "factual contentions" in the FAC (as well as the initial Complaint, the SAC, and the TAC) do not "have evidentiary support or … [would] likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Given the dearth of evidentiary support, the repeated warnings, notice and information provided to Tauler, and the willful ignorance of those warnings, notices and information, the pleadings are wholly frivolous, and the conclusion must be that they were designed for an improper purpose. "The central purpose of Rule 11 is to deter baseless filings." *Cooter & Gell v. Hartmarx*, 496 U.S. 384, 393 (1990). Sanctions are appropriate—indeed, "must be imposed"—when the paper is either frivolous or filed for an improper purpose. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). "Frivolous" means "a filing that is both baseless and made without a reasonable and competent inquiry," whether partially or in the entirety. *Id.* at 1358, 1364-65. The standard is one of objective reasonableness. *See Altmann v. Homestead Mortg. Income Fund*, 887 F. Supp. 2d 939, 955 (E.D. Cal. 2012). Tauler has had four opportunities to file a pleading supported by evidence and reasonable inquiry. Tauler and ENTech have not and cannot meet this basic standard.

The Court may impose both monetary and non-monetary sanctions for the violations of Rule 11. *See* Fed R. Civ. P. 11(c)(2); *Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 175 (C.D. Cal. 2002). The Court should impose sanctions sufficient "to deter repetition of such conduct or comparable conduct by others

similarly situated." Fed. R. Civ. P. 11(c)(4). Rule 11 requires that counsel have in hand sufficient credible information (as opposed to speculation) to enable an objectively reasonable attorney to form the belief that the allegations to which he put his name are supported by evidence. Tauler here did not, and he has not since the beginning. Because Tauler continues to file complaints with factual contentions for which there is no evidentiary support and for which he has not performed reasonable inquiry, the Court should sanction both Robert Tauler and Tauler Smith LLP. *See* Fed. R Civ. P. 11(c)(1) (providing court may impose sanctions "on any attorney, law firm, or party that violated the rule or is responsible for the violation" and that "[a]bsent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee"). The sanctions should include striking the TAC and dismissing ENTtech's claims in their entirety, with prejudice. In addition, because the sanctionable conduct has been long-standing and repeated, despite notice, monetary sanctions should be imposed to reimburse Defendants for their costs and attorney fees in defending against the baseless allegations.

## III.   CONCLUSION

From inception, ENTtech's claims have been grounded in the assertion that Defendants' DMCA takedown notices contained misrepresentations. Misrepresentations as to a good faith belief regarding infringement were based on the alleged failure to consider fair use—*first*, because the takedown notices were submitted using automated systems, without review, and *then* because the takedown notices were submitted without any analysis of fair use. New allegations contend that the DMCA takedown notices contain misrepresentations concerning the "exclusive rights" of Defendants to enforce copyrights in the Images. None of these assertions have a basis in fact. The Court invited ENTtech and Tauler to cure the deficiencies, but the cure was nothing more than allegations attempting, but failing, to justify the

15

MEMO RE RULE 11 SANCTIONS

sanctionable conduct. It didn't work. The Court should grant the motion and impose sanctions as requested.

Dated: November 20, 2020     Respectfully submitted,

**PERKOWSKI LEGAL, PC**

By: /s/ Peter Perkowski
Peter E. Perkowski

Attorneys for Defendants
Okularity, Inc. and Jon Nicolini

Dated: November 20, 2020     **ONE LLP**

By: /s/ Joanna Ardalan
David Quinto
Peter Afrasiabi
Joanna Ardalan

Attorneys for Defendants BackGrid USA, Inc., Splash News and Picture Agency, LLC, and Xposure Photo Agency, Inc.