Peter E. Perkowski (SBN 199491)
peter@perkowskilegal.com
Matthew P. Kelly (SBN 224297)
matt@perkowskilegal.com
PERKOWSKI LEGAL, PC
445 S. Figueroa Street, Suite 3100
Los Angeles, CA 90071
Telephone: (213) 426-2137

Attorneys for Defendants OKULARITY, INC. and JON NICOLINI

David Quinto (Bar No. 106232)
Joanna Ardalan (Bar No. 285384)
jardalan@onellp.com
ONE LLP
9301 Wilshire Boulevard, Penthouse Suite
Beverly Hills, CA 90210
Telephone: (310) 866-5157

Peter R. Afrasiabi (Bar No. 193336)
pafrasiabi@onellp.com
ONE LLP
4000 MacArthur Boulevard, East Tower Suite 500
Newport Beach, CA 92660
Telephone: (949) 502-2870

Attorneys for Defendants BACKGRID USA, INC., SPLASH
NEWS AND PICTURE AGENCY, LLC, and XPOSURE PHOTO
AGENCY, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTTECH MEDIA GROUP LLC, | Case No. 2:20-cv-06298 JWH (Ex) |
| *Plaintiff*, | *Hon. John W. Holcomb* |
| v. | **DEFENDANTS' JOINT MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE THIRD AMENDED COMPLAINT** |
| OKULARITY, INC. et al., | |
| *Defendants*. | |
| | Date: Jan. 8, 2021 |
| | Time: 9:00 a.m. |
| | Place: By video conference per Court notice |
| | Compl. filed: July 15, 2020 |
| | *No Trial Date Set* |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................1

II.   RELEVANT FACTS ............................................................................3

    A.    DMCA framework ....................................................................3

    B.    Summary of allegations ............................................................4

    C.    Procedural history .....................................................................5

III.  LEGAL STANDARD ..........................................................................7

IV.   ARGUMENT .......................................................................................8

    A.    The TAC fails to plead a sham exception to *Noerr-Pennington* immunity...8

    B.    The RICO claim has not been pleaded with Rule 9 specificity. ...................11

    C.    The RICO claims fail even if reviewed under Rule 8.................................13

        1.    Predicate acts are factually and legally insufficient. .............14

        2.    ENTtech does not and cannot plead a "pattern."....................17

        3.    RICO enterprise has not been sufficiently pleaded. ..............18

    D.    The DMCA claim cannot survive factual admissions in the TAC. .............20

    E.    ENTtech should not be granted leave to amend again.................................22

V.    CONCLUSION ..................................................................................23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

### Cases

3

*Am. Title Ins. Co. v. Lacelaw Corp.*,
4     861 F.2d 224 (9th Cir. 1988)......................................................................21

5

*Ashcroft v. Iqbal*,
6     556 U.S. 662 (2009) ................................................................................7, 8, 22

7

*Asia Econ. Inst. v. Xcentric Ventures, LLC*, No. CV 10-1360 SVW PJWX,
    2010 WL 4977054 (C.D. Cal. July 19, 2010) ......................................... 16
8

*Baker v. FirstCom Music*, LACV 16-8931 VAP (JPRx),
9     2017 WL 9510144 (C.D. Cal. July 27, 2017) ......................................... 15

10

*Bell Atl. Corp. v. Twombly*,
11     550 U.S. 554 (2007) ...................................................................................7

12

*Blake v. Dierdorff*,
13     856 F.2d 1365 (9th Cir. 1988)..................................................................12

14

*Blue Oak Med. Group v. State Comp. Ins. Fund*, No. 2:18-cv-03867-RGK-sk,
    2018 WL 6219892 (C.D. Cal. Nov. 7, 2018).........................................12, 15, 19
15

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
16     140 F.3d 494 (3d Cir. 1998)......................................................................16

17

*Cadle Co. v. Schultz*,
18     779 F. Supp. 392 (N.D. Tex. 1991)...........................................................18

19

*Cahill v. Liberty Mut. Ins. Co.*,
20     80 F.3d 336 (9th Cir. 1996).........................................................................7

21

*CyWee Group Ltd. v. HTC Corp.*,
    312 F. Supp. 3d 974 (W.D. Wa. 2018) ...................................................23
22

*Design Furnishings, Inc. v. Zen Path, LLC*, No. Civ. 2:10-2765 WBS GGH,
23     2010 WL 5418893 (E.D. Cal. Dec. 23, 2010) ......................................20

24

*Eclectic Props. E. v. Marcus & Millichap Co.*,
25     751 F.3d 990 (9th Cir. 2014)....................................................................15

26

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*,
    713 F.3d 502 (9th Cir. 2013).....................................................................23
27

*First Nationwide Bank v. Gelt Funding Corp.*,
28     820 F. Supp. 89 (S.D.N.Y. 1993)..............................................................19

ii

*Foad Consulting Group, Inc. v. Azzalino*,
　　270 F.3d 821 (9th Cir. 2001) ................................................................... 9

*Goldfine v. Sichenzia*,
　　118 F. Supp. 2d 392 (S.D.N.Y. 2000) ..................................................... 13

*H.J. Inc. v. Nw. Bell Tel. Co.*,
　　492 U.S. 229 (1989) ................................................................................. 17

*Harris Custom Builders, Inc. v. Hoffmeyer*,
　　1994 WL 329962 (N.D. Ill. 1994) ........................................................... 17

*Hirsch v. ENTtech Media Group LLC*,
　　S.D.N.Y. Case No. 1:19-cv-7031-AT (filed July 27, 2019) ...................... 4

*Humphreys v. City of Coolidge*, No. CV-17-04045-PHX-DWL,
　　2019 WL 316240 (D. Ariz. Jan. 24, 2019) .............................................. 14

*I.S. Joseph Co., Inc. v. J. Lauritzen A/S*,
　　751 F.2d 265 (8th Cir. 1984) ............................................................ 16, 17

*In re GlenFed, Inc. Sec. Litig.*,
　　42 F.3d 1541 (9th Cir. 1994) .............................................................. 8, 12

*Kottle v. Nw. Kidney Centers*,
　　146 F.3d 1056 (9th Cir. 1998) ........................................................ 8, 9, 11

*Lopez v. Smith*,
　　203 F.3d 1122 (9th Cir. 2000) ................................................................ 23

*Lujan v. Mansmann*,
　　956 F. Supp. 1218 (E.D. Pa. 1997) ......................................................... 18

*Malin v. Singer*,
　　217 Cal. App. 4th 1283 (2013) ............................................................... 11

*Mercer Pub'lg, Inc. v. Smart Cookie Ink, LLC*, No. C12-0188 JLR,
　　2012 WL 12863934 (W.D. Wash. July 25, 2012) ................................. 9, 10

*Midwest Grinding Co. v. Spitz*,
　　976 F.2d 1016 (7th Cir. 1992) ................................................................ 13

*Miranda v. Clark County, Nev.*,
　　279 F.3d 1102 (9th Cir. 2002) .......................................................... 13, 22

*Neubronner v. Milken*,
　　6 F.3d 666 (9th Cir. 1993) ....................................................................... 8

*Online Policy Group v. Diebold, Inc.*,
   337 F. Supp. 2d 1195 (N.D. Cal. 2004) ............................................................20

*People v. Hesslink*,
   167 Cal. App. 3d 781 (1985)...............................................................................15

*Peterson v. Phil. Stock Exch.*,
   717 F. Supp. 332 (E.D. Pa. 1989) ......................................................................17

*Plount v. Am. Home Assur. Co.*,
   668 F. Supp. 204 (S.D.N.Y. 1987)......................................................................14

*Polaris Images Corp. v. ENTtech Media Group LLC*,
   S.D.N.Y. Case No. 1:19-cv-8208-KPF (filed Sept. 3, 2019)..............................4

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ..........................................................................................9, 10

*Religious Tech. Center v. Wollersheim*,
   971 F.2d 364 (9th Cir. 1992)...............................................................................18

*Richmond v. Nationwide Cassel L.P.*,
   52 F.3d 640 (7th Cir. 1995).................................................................................19

*Schreiber Distr. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393, 1400-01 (9th Cir. 1986) .............................................................12

*Schwartzwald v. ENTtech Media Group LLC*,
   S.D.N.Y. Case No. 1:19-cv-5505-JPO (filed June 12, 2019) ..............................4

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) ............................................................................................14

*Shropshire v. Canning*, No. 10-cv-1941-LHK,
   2011 WL 90136 (N.D. Cal. Jan. 11, 2011) ..........................................................3

*Somers v. Apple*,
   729 F.3d 953 (9th Cir. 2013).................................................................................7

*Sosa v. DirecTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006)...............................................................................15

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001)....................................................................8, 13, 22

*Suris Gen. Contr. Corp. v. New Metro. Fed. Sav. & Loan Ass'n*,
   873 F.2d 1401 (11th Cir. 1989)...........................................................................13

*Turner v. Cook,*
    362 F.3d 1219 (9th Cir. 2004) ................................................................ 18

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't,*
    770 F.3d 834 (9th Cir. 2014) ........................................................... 15, 16

*United States v. Enmons,*
    410 U.S. 396, 400 (1973) ....................................................................... 16

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ............................................................... 11

*Walter v. Drayson,*
    496 F. Supp. 2d 1162 (D. Haw. 2007) .................................................. 22

**Statutes**

17 U.S.C. § 204(a) ............................................................................................. 2, 9

17 U.S.C. § 512 ...................................................................................................... 3

17 U.S.C. § 512(c)(1) ............................................................................................ 3

17 U.S.C. § 512(c)(1)(C) ...................................................................................... 3

17 U.S.C. § 512(c)(3) ............................................................................................ 3

17 U.S.C. § 512(c)(3)(A) ...................................................................................... 3

17 U.S.C. § 512(f) .......................................................................................... 2, 4, 20

17 U.S.C. § 512(g)(1) ............................................................................................ 4

17 U.S.C. § 512(g)(2)(A) ...................................................................................... 4

17 U.S.C. § 512(i)(1)(A) ....................................................................................... 3

18 U.S.C. § 1341 ................................................................................................. 14

18 U.S.C. § 1951(a) ............................................................................................ 15

18 U.S.C. § 1951(b)(2) ....................................................................................... 15

Cal. Penal C. § 519 ............................................................................................. 15

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 7

Fed. R. Civ. P. 9(b) ......................................................................................... 8, 11

MEMO OF Ps & As IN SUPPORT OF MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

After committing numerous acts of copyright infringement, Instagram deemed plaintiff ENTtech Media Group LLC a "repeat infringer" and suspended its account. Incensed that the statutory framework set out in the Digital Millennium Copyright Act ("DCMA") operated as intended, but desperately wanting its account restored, ENTtech turned its anger to the owners of the copyrights in the images it infringed— defendants BackGrid USA, Inc., Splash News and Picture Agency, LLC, and Xposure Photo Agency, Inc. (the "Photo Agencies")—and their agent, Okularity, Inc. and its CEO Jon Nicolini (together "Okularity"). To gain leverage, ENTtech manufactured claims out of whole cloth, casting itself as the victim and accusing Defendants of running a "fraudulent scheme" to "extort" settlement payments. The results of ENTtech's fantasy are baseless claims under the DMCA and the Racketeer Influenced and Corrupt Organizations Act ("RICO").

But there is no fraud, no scheme, and no extortion. There is only the straight-forward application of a program created by Congress—the DMCA—working as designed to protect the rights of copyright owners and protect platforms like Instagram from liability for infringements like ENTtech's. Viewed in that context, this case presents serial wrongdoer ENTtech—which, despite filing four versions of a complaint, still has not denied that it infringed the Photo Agencies' copyrights— claiming that it is a victim of a racketeering enterprise comprising the owners of the very copyrights it used without authorization (and their agent), which enterprise availed itself of statutory process set up to protect those copyrights, thereby "injuring" ENTtech. It is judicial gaslighting and abuse of process.

The Court, with Judge Klausner presiding, already concluded that the RICO claim was deficient under the *Noerr-Pennington* doctrine—Defendants activities were protected, and the RICO claim burdened those protected activities—but granted leave to amend so that ENTtech could try to plead a sham exception. (ECF 40.) The

Court noted that while the "FAC does not allege facts to support its sham exception," ENTtech had "argued [in briefing] that 'Defendants lack exclusive licensing rights to the copyright material.'" (ECF 40, at 3-4.) But the TAC contains only irrelevant and frivolous allegations to support a sham: statements that the photographs were posted to Instagram and the Internet, but not one fact about a signed writing, required to convey ownership or exclusive rights. *See* 17 U.S.C. § 204(a). That is, according to ENTtech, alleged non-exclusive licenses (to Instagram, and unspecified third parties) caused the Photo Agencies to lose their rights. Of course, that is a legal fantasy. Far from successfully pleading a sham, ENTtech's additional allegations are profoundly immaterial or describe conduct that is expressly permitted by law and subject to the litigation privilege. With no allegations to support a sham exception, *Noerr-Pennington* bars the claim.

The RICO claim also fails because it is not properly pleaded. Judge Klausner did not reach the issue of whether ENTtech had pleaded a plausible RICO claim. (ECF 40, at 3 (declining to address "Defendants' second argument" challenging RICO).) The TAC does nothing to cure the deficiencies previously argued—twice (ECF 27, ECF 55)—but not decided. The RICO claim is fatally flawed and should be dismissed with prejudice.

Finally, the DMCA claim fails as a matter of law because allegations in the TAC demonstrate that ENTtech cannot prove the elements of the claim. ENTtech must plead facts tending to show that defendants knowingly and materially misrepresented in DMCA takedown notices "that material or activity is infringing." 17 U.S.C. § 512(f). Here, ENTtech asserts that the DMCA takedown notices contained misrepresentations as to infringement because Okularity did no analysis—and specifically did not consider fair use—before submitting them. (TAC ¶¶ 15, 27, 40.) But the TAC shows this not to be true: ENTtech alleges that "the DMCA notices contained identical verbatim discussion of infringement and fair use." (TAC ¶ 15.) Accepted as true, this allegation shows that "infringement and fair use" was

2

considered, so ENTtech's DMCA claim must fail. Allegations to the contrary are conclusory, unsupported, counterfactual, and replete with unreasonable inferences, so need not be accepted. The DMCA claim should be dismissed as well.

## II.    RELEVANT FACTS

### A.    DMCA framework

Congress adopted the DMCA, 17 U.S.C. § 512, in 1998 in part to address copyright issues with user-generated content, such as videos and pictures posted to internet service providers and other website owners ("ISPs"). *E.g.*, *Shropshire v. Canning*, No. 10-cv-1941-LHK, 2011 WL 90136, at *4 (N.D. Cal. Jan. 11, 2011). Under the DMCA, copyright owners give ISPs a "notification of claimed infringement"—that is, notice that copyrighted material has been placed on the site "at the direction of a user." 17 U.S.C. §§ 512(c)(1), (c)(3). Commonly called a "takedown notice," among other things the notification must identify the infringing and infringed work, contain a "statement that the complaining party has a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law," and be sworn under penalty of perjury. 17 U.S.C. § 512(c)(3)(A). The ISP is immunized from liability if it responds to the takedown notice by acting "expeditiously to remove, or disable access to, the material." 17 U.S.C. § 512(c)(1)(C). This is referred to as the "safe harbor."

But while acting expeditiously is necessary for an ISP or website to avail itself of the safe harbor, it's not sufficient. An ISP must also have "adopted and reasonably implemented, and informs [users of its] system or network of, a policy that provides for the termination in appropriate circumstances of [users] who are repeat infringers." 17 U.S.C. § 512(i)(1)(A). Instagram, a social media network where users post photo and video content, has adopted such a repeat infringer policy.[1] Instagram does not publish details of the policy, such as how it defines "repeat infringer."

---

[1] *See* https://help.instagram.com/1586774981367195?helpref=page_content. This policy is referenced in the SAC. (TAC ¶¶ 14, 39.)

1        In addition, to avail itself of the safe harbor for the "good faith disabling of

2  access to, or removal of," infringing content, the ISP or website must "take[]

3  reasonable steps promptly to notify the subscriber that it has removed or disabled

4  access to the material." 17 U.S.C. §§ 512(g)(1), (g)(2)(A).

5        Among the protections provided for the users of the ISP or website, the DMCA

6  provides for a legal claim when content is removed as a result of takedown notices

7  that contain misrepresentations. Specifically, "[a]ny person who knowingly

8  materially misrepresents … *that material or activity is infringing*" is liable for

9  damages that result from the ISP or website "removing or disabling access to the

10  material or activity claimed to be infringing." 17 U.S.C. § 512(f) (emphasis added).

11      **B.**    **Summary of allegations[2]**

12        ENTtech is a serial infringer.[3] This case alone involves the infringement of

13  numerous copyrighted photographs owned by the Photo Agencies. (TAC ¶¶ 29, 37.)

14  ENTtech does not deny that it infringed the photos. Rather, this case is about the

15  consequences flowing from those infringements, and whether Defendants—by

16  engaging in lawful actions contemplated by the DMCA—have engaged in conduct

17  that violates the DMCA and RICO.

18        The Photo Agencies are photo agencies that license copyrighted images to

19  some of the biggest media outlets in the world. (*See* TAC ¶¶ 25-26.) Okularity is their

20  agent. (TAC ¶¶ 24, 41.) Using software, Okularity searches the Internet for

21  unauthorized uses of the Photo Agencies' copyrighted images. (TAC ¶ 15.)

22  According to ENTtech, through this software Okularity generates DMCA notices to

23  social media platforms, including Instagram, for unauthorized images it finds, and

24

25  [2] As they must, Defendants accept the TAC's allegations as true, even though those allegations are without evidentiary support to the same extent as when made in the FAC, as the Court recognized in issuing the OSC re: Sanctions. (ECF 54.)

26  [3] ENTtech has been sued for copyright infringement other times as well. *See*

27  *Schwartzwald v. ENTtech Media Group LLC*, S.D.N.Y. Case No. 1:19-cv-5505-JPO (filed June 12, 2019); *Hirsch v. ENTtech Media Group LLC*, S.D.N.Y. Case

28  No. 1:19-cv-7031-AT (filed July 27, 2019); *Polaris Images Corp. v. ENTtech Media Group LLC*, S.D.N.Y. Case No. 1:19-cv-8208-KPF (filed Sept. 3, 2019).

then submits them "without any of the investigation, warning or legal analysis required by the DMCA," specifically without any consideration of fair use. (TAC ¶ 15; *see* TAC ¶¶ 27, 40.) ENTtech alleges that because the DMCA takedown notices are purportedly sent without analyzing fair use, they contain misrepresentations as to Okularity's "good faith belief" that the material is infringing. (TAC ¶ 51.)

Okularity allegedly continues to file DMCA takedown notices until Instagram disables the account; only then does Okularity allegedly begin negotiating to settle claims of infringement. (TAC ¶¶ 15-16.) ENTtech claims that the account suspension provides leverage for maximizing settlement recoveries on behalf of the Photo Agencies, amounting to extortion. (TAC ¶ 16.) According to ENTtech, this process—from the sending of DMCA notices to the negotiating of settlements—constitutes a fraudulent scheme. (TAC ¶¶ 12-18.)

### C.     Procedural history

ENTtech filed its Complaint on July 15, 2020. (ECF 1.) After Defendants identified numerous deficiencies in the Complaint, including that the DMCA claim and the RICO claim were legally and factually baseless, ENTtech filed a First Amended Complaint ("FAC") that dropped two state-law claims that were preempted (and subject to a potential anti-SLAPP motion), but kept claims under the DMCA and RICO. Defendants moved to dismiss both claims of the FAC. (ECF 26, 27, 28.)

The Court, Judge Klausner presiding, denied the motion as to the DMCA claim but granted the motion with leave to amend as to the RICO claim. (ECF 40, at 1.) The Court concluded that the *Noerr-Pennington* doctrine barred the RICO claim and that ENTtech had not alleged facts to support a sham exception to the doctrine. (ECF 40, at 3-6.) In dismissing the RICO claim, the Court granted ENTtech leave to amend to plead facts sufficient to plead the sham exception. (ECF 40, at 6.) The Court did not reach Defendants' other challenges to the RICO claim, instead granting leave to amend on the shame exception.

Nevertheless, the SAC was virtually unchanged from the FAC, except as follows. ENTtech alleges that:

- Okularity's DMCA takedown notices urged Instagram to disable ENTtech's account as a repeat offender (SAC ¶ 50);

- Okularity's DMCA takedown notices were "objectively unreasonable, and … subjectively a sham" because it "had not undertaken a good faith assessment of whether Plaintiff's use of any images was not authorized by the law" (SAC ¶ 50);

- The Photo Agencies had no right to issue DMCA takedown notices because they did not possess exclusive rights in the photos due to: (a) the authors had previously posted the images to Instagram, "thereby affording Instagram an express license (under the Instagram terms of use)" and (b) "[m]any (if not all) of the photos were also distributed wide across other internet sites, thereby implicitly licensing the public at large to use them" (SAC ¶ 50);

- The filing of an infringement suit by the Photo Agencies (C.D. Cal. No. 20-cv-6803), for the purpose of maintaining Instagram's suspension of ENTtech's account, was a sham because the Photo Agencies never moved for injunctive relief (SAC ¶ 53), and because it prevented ENTtech from removing the images itself (SAC ¶ 54);

- Defendants' counsel and an executive for one of the Photo Agencies made settlement offers or demands that included a discussion of settlement terms, such as communicating with Instagram about restoring ENTtech's account (SAC ¶ 54).

On October 28, 2020, this Court issued its Order to Show Cause re Sanctions. (ECF 54.) Okularity subsequently moved to dismiss the SAC, raising the same issues that are raised in this motion as to the RICO claim. (ECF 55.) The OSC gave ENTtech an opportunity to file another complaint to "cure" the deficiencies raised in

6

1  Defendants' Motion for Sanctions. (ECF 54.) ENTtech filed the TAC on November

2  13, 2020 (ECF 57), and Okularity withdraw the motion to dismiss (ECF 61).

3      As explained in Defendants Response to the OSC (ECF 63), the TAC does not

4  cure the issues raised in the Motion for Sanctions. The TAC also does not cure the

5  deficiencies in pleading the RICO claim, now raised three times, and adds allegations

6  that invalidate the DMCA claim. Namely, the TAC now alleges:

7          Okularity submits these [DMCA takedown] notices without any
           of the analysis required by the DMCA, let alone any demand
8          letter or even a warning to the alleged infringer. ENTtech is
           informed and believes that Nicolini's subsequent declaration to
9          the contrary in this action on September 25, 2020 was
           untruthful. In truth, *many or all of the DMCA notices contained*
10         *identical verbatim discussion of infringement and fair use*,
           which indicates that no actual analysis was truly performed
11         before sending the notices. (TAC ¶ 15.)

12  ENTtech further alleges that, before the initial Complaint was filed, ENTtech and

13  Nicolini did not discuss "whether the social media use of the image [sic] really did

14  infringe any copyrights, or … whether the use of the image [sic] on social media was

15  allowed by the 'fair use' doctrine." (TAC ¶ 15.)

16  **III.   LEGAL STANDARD**

17      Under the Federal Rules, claims should be dismissed at the outset of litigation

18  if a plaintiff fails to plausibly allege a cognizable legal theory or sufficient facts to

19  support its legal theory. *See Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013);

20  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Plausibility requires pleading facts, as

21  opposed to conclusory allegations or the 'formulaic recitation of the elements of a

22  case of action.'" *Somers*, 720 F.3d at 959-60 (quoting *Bell Atl. Corp. v. Twombly*,

23  550 U.S. 554, 555 (2007)). In ruling on a motion under Rule 12(b)(6), while the

24  Court must accept well-pleaded allegations as true and construe them in the light

25  most favorable to the non-moving party, *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

26  337-38 (9th Cir. 1996), the Court may disregard "[t]hreadbare recitals"—the

27  unsupported conclusions and unreasonable inferences meant merely to plead required

28

elements consistent with a defendant's liability. *Iqbal*, 556 U.S. at 678; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Allegations of fraud, however, must meet the heightened pleading requirement of Rule 9(b). *See* Fed. R. Civ. P. 9(b). Rule 9(b) requires that allegations of fraud be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (internal quotation marks omitted). This standard requires a plaintiff to state the time, place, and content of the alleged misrepresentation and, critically, explain why the statement is false or misleading. *See id.*; *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994).

## IV.   ARGUMENT

ENTtech's third attempt to plead its claims fails as a matter of law.

### A.   The TAC fails to plead a sham exception to *Noerr-Pennington* immunity.

There are no allegations—much less allegations that would meet a heightened pleading standard—that would permit a conclusion that an exception to *Noerr-Pennington* applies.

In the context of court actions, the Ninth Circuit "recognizes three circumstances in which a[] ... defendant's activities might fall into the sham exception." *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1060 (9th Cir. 1998). First, if there is just one alleged sham action (or a small number), plaintiff "must demonstrate that the lawsuit was (1) objectively baseless, and (2) a concealed attempt to interfere with [its] business relationships." *Id.* Second, if there are a series of sham actions, "the question is not whether any one of them has merit ... but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *Id.* (internal quotation marks omitted). Third, "if the alleged [conduct] involves making intentional

8

misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Id*. (internal quotation marks omitted). ENTtech has pleaded none of these.

*Objective baselessness*. As to the first sham circumstance, ENTtech has failed to show that Defendants' legal claims are objectively baseless, which is evaluated "in the sense that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993), *cited in Mercer Pub'lg, Inc. v. Smart Cookie Ink, LLC*, No. C12-0188 JLR, 2012 WL 12863934, at *4 (W.D. Wash. July 25, 2012). To do so here, ENTtech would need to allege facts showing that the copyright infringement claims, on which Defendants' conduct is based, are objectively baseless—either the Photo Agencies do not own valid copyrights or ENTtech has not infringed them. But ENTtech does not do so: there are no allegations that would, if accepted as true, cast doubt on the Photo Agencies' infringement claims.

At most, ENTtech alleges that some (not all) of the images were posted on Instagram and "widely" across the Internet. (TAC ¶ 50.) But even accepting such allegations as true, the result does not follow: neither posting to Instagram nor to the Internet gives ENTtech, or anyone, the right to reproduce or distribute copyrighted images without license or authorization. The suggestion is preposterous, baseless, and sanctionable. ENTtech's ultimate allegation—that the Photo Agencies lacked exclusive rights (TAC ¶ 50)—need not be accepted as true both because it is a bare conclusion, but also because it is contrary to law, which states that any transfer of copyright ownership or exclusive rights must be in writing. *See Foad Consulting Group, Inc. v. Azzalino*, 270 F.3d 821, 825 (9th Cir. 2001) (transfer of any of the exclusive rights of copyrights must be in writing); 17 U.S.C. § 204(a) ("A transfer of copyright ownership" is not valid unless in writing signed by owner of the rights conveyed). ENTtech has pleaded no such writing. Moreover, ENTtech has seen the

9

copyright registrations covering each of the photographs it is alleged to have

infringed, and ENTtech had them before filing the TAC. *See BackGrid USA, Inc. v.*

*ENTtech*, No. 2:20-cv-6803 RSWL (attachments to Complaint (ECF 1) and First Am.

Complaint (ECF 22)); *see also* ECF 53 (Photo Agencies' counterclaims in this

action). These registrations are prima facie evidence of the Photo Agencies'

ownership of the photographs at issue, and there are no allegations to contradict that

prima facie evidence.

ENTtech was given an opportunity to amend based on its representation that

the Photo Agencies do not have exclusive rights to the photographs. ENTtech has no

support for that assertion. But even assuming that ENTtech's allegations of

"motive"—that Defendants acted with a purpose of suspending ENTtech's Instagram

account—are true, such allegations alone are not sufficient to support the sham

exception. That approach has been roundly rejected precisely in the context of

DMCA takedown notices and pre-litigation demand letters. *See Mercer*, 2012

WL 12863934, at *4. There, the court surveyed the allegations and concluded that

while they "may constitute evidence of an alleged 'ulterior purpose[],' the Supreme

Court has made clear that 'an objectively reasonable effort to litigate cannot be sham

regardless of subjective intent.'" *Id.* (quoting *Prof'l Real Estate Investors*, 508 U.S.

at 57) (alteration in original). The same here: ENTtech's allegations do not "suggest

that the accused conduct is objectively baseless." *Id.* The sham exception therefore

does not apply.

*Injuring a market rival*: The second sham circumstance does apply for two

reasons: first, ENTtech does not allege a series of sham litigation actions against it

(or anyone else); but second, even if it did, Defendants and ENTtech are not market

rivals—and certainly are not alleged to be market rivals.

*Litigation misrepresentations*: The third sham circumstance does not apply

because ENTtech has not alleged any facts showing that Defendants made "knowing

fraud upon, or … intentional misrepresentations to, the court [that] deprive the

litigation of its legitimacy." *Kottle*, 146 F.3d at 1060. Though ENTtech alleges that the second action for copyright infringement—which was dismissed on procedural grounds, not on the merits—had a "sham" purpose (TAC ¶ 53), ENTtech does not allege any facts that bring Defendants' conduct into this exception.[4]

Accordingly, because the sham exception has not been adequately pleaded, Defendants' conduct is immune from RICO liability under the *Noerr-Pennington* doctrine, and the RICO claim should be dismissed with prejudice.

## B.   The RICO claim has not been pleaded with Rule 9 specificity.

The RICO claim also fails because it is based on averments of fraud the circumstances of which plaintiff has not pleaded with particularity.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Because of the serious nature of the allegations, even claims without fraud as an element must meet this standard when the averments on which they are based sound in fraud.

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege … that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim must satisfy the particularity requirement of Rule 9(b).

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). This standard applies to RICO claims that are based on fraud (as here): "[I]n RICO cases, Rule 9(b) requires that fraud be pled with particularity to state a claim for relief."

---

[4] All of Defendants' conduct related to the second litigation, and all statements made in it and in connection with it—including filing the action itself, and making settlement offers and demands—is protected by the litigation privilege unless a sham or bad faith is pleaded. *See Malin v. Singer*, 217 Cal. App. 4th 1283, 1300-01 (2013) (litigation privilege protects statements made to achieve objects of litigation so long as related to litigation contemplated in good faith; plaintiff cannot prevail on extortion claim if litigation privilege precludes liability on that claim). ENTtech has not pleaded bad faith or sham conduct. These therefore cannot constitute RICO predicate acts. This analysis applies to pre-litigation statements, such as Okularity's communications of settlement demands, as well. *See id.*

*Blue Oak Med. Group v. State Comp. Ins. Fund*, No. 2:18-cv-03867-RGK-sk, 2018 WL 6219892, at *3 (C.D. Cal. Nov. 7, 2018). Rule 9(b) is an exacting standard:

> To allege fraud with particularity, a plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. A plaintiff might do less and still identify the statement complained of; indeed, the plaintiff might do less and still set forth some of the circumstances of the fraud. But the plaintiff cannot do anything less and still comply with Rule 9(b)'s mandate to set forth with particularity those circumstances which *constitute* the fraud.

*GlenFed*, 42 F.3d at 1548 (emphases in original); *see also Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988) (plaintiffs must allege statements and "the reasons for their falsity").

ENTtech pleads predicate acts of "using the mails or wires in furtherance of a scheme to defraud." (SAC ¶ 47.) Fraud is a necessary element of these claims too. *See Schreiber Distr. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986) (if fraudulent acts are the basis of the alleged pattern of racketeering activity, Rule 9(b) requires plaintiff to allege with particularity). Yet one searches in vain for *any* factual allegations in the TAC that meet this requirement. Instead, one finds this: ENTtech claims that the DMCA takedowns were fraudulent because Okularity sent them "without any of the analysis required by the DMCA." (TAC ¶ 15.) But the very same allegation states that the DMCA notices contained a "discussion of infringement and fair use." (TAC ¶ 15.) ENTtech's allegations of fraud are not just bereft of detail, the facts that are alleged disprove fraud.

ENTtech's attempts to plead around this result are clumsy and ineffectual. ENTtech alleges: (1) "on information and belief," it does not believe Okularity's (under oath) statements; (2) use of verbatim language in communicating Okularity's conclusions to Instagram "indicates that no actual analysis was truly performed"; and (3) Okularity allegedly did not discuss these issues on a telephone call. (TAC ¶ 15.) First, ENTtech's statement of belief, which is itself based on "information and

12

belief," is not an allegation that the Court must accept on a motion to dismiss—especially where, as here, the basis for the "information and belief" is not itself alleged. Second, the Court also need not credit ENTtech's allegation that verbatim language "indicates" that Okularity did no analysis; such allegation is conclusory, counterfactual, and unsupported; it is not a fact that must be accepted as true. *E.g.*, *Miranda v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002) ("[C]onclusory allegations of law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim"); *Sprewell*, 266 F.3d 979, 988 ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). Finally, accepting as true an allegation that Okularity did not discuss infringement analysis on a phone call does not support an allegation that Okularity conducted no such analysis.

Despite four tries to plead it, the RICO claim relies on conclusory or non-existent allegations of fraudulent conduct. It should be dismissed under Rule 9(b).

### C.    The RICO claims fail even if reviewed under Rule 8.

Even if the RICO claim satisfies Rule 9(b), it is still legally and factually insufficient for other reasons. Like many plaintiffs, ENTtech misuses a RICO claim—the "thermonuclear device" of civil litigation, *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394 (S.D.N.Y. 2000)—to try to create an offense with a threat of treble damages. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) ("civil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions"). The widespread abuse of RICO stems from a generous compensation scheme coupled with the fact that modern business uses mail and wires, thus providing a jurisdictional hook. *See id.*; *Suris Gen. Contr. Corp. v. New Metro. Fed. Sav. & Loan Ass'n*, 873 F.2d 1401, 1404 (11th Cir. 1989) (RICO was not intended to give plaintiffs the opportunity to "boot-strap" garden-variety business claims "into a 'federal case'" by couching allegations in RICO language).

Moreover, just as courts impose heightened pleading requirements to protect against the irreparable damage to reputation and goodwill that results from charges of fraud, so too must courts safeguard against lightly made claims labeling one a "racketeer." *Plount v. Am. Home Assur. Co.*, 668 F. Supp. 204, 206 (S.D.N.Y. 1987). This "solicitude for defendants' good names" has led courts to require that RICO elements be pleaded with specificity: "It would make little sense to require that the elements of fraudulent predicate acts be pled with particularity" to protect reputation, "while allowing the overarching civil RICO claim—with its far greater capacity for reputational damage—to be alleged generally." *Id.* at 207.

Here, ENTtech's RICO claim suffers from its attempt to fit the square peg in a round hole. To plead a RICO claim, ENTtech must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) that injured its business or property. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). On top of the deficiencies described above, and even without regard to heightened pleading standards, ENTtech has not satisfied the requirements necessary to plead the elements of racketeering activity, pattern, and enterprise.

### 1.    Predicate acts are factually and legally insufficient.

ENTtech's predicate acts of racketeering activity fall into three categories: (1) mail fraud, (2) wire fraud, and (3) extortion, all based on the sending of DMCA takedown notices, pre- and post-litigation demands and settlement offers, and the filing of a complaint by the Photo Agencies. These predicate acts cannot support the RICO claim here.

*Mail fraud*: "The mail fraud statute is implicated only where mail is 'sent or delivered by the Postal Service [or] ... any private or commercial interstate carrier.'" *Humphreys v. City of Coolidge*, No. CV-17-04045-PHX-DWL, 2019 WL 316240, at *5 (D. Ariz. Jan. 24, 2019) (quoting 18 U.S.C. § 1341). ENTtech has not pleaded use of the mail, only the use of automated systems and email. This is not enough. *See id.*

*Wire fraud*: To state a claim for wire fraud, the plaintiff must show: (1) the formation of a scheme to defraud; (2) the use of the wires in furtherance of that scheme; and (3) the specific intent to defraud. *See Eclectic Props. E. v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). But significantly, as the Court decided in *Blue Oak Medical Group*, to plead that a scheme exists to defraud "parties must plead facts which tend to exclude 'plausible or innocuous alternative explanation[s]' for any fraudulent intent." 2018 WL 6219892 at *4. The much more plausible explanation that has not been excluded here is that ENTtech is a repeat infringer of photographs belonging to the Photo Agencies, those Agencies sent DMCA notices to vindicate their important intellectual property rights, and Instagram terminated ENTtech's account under Instagram's repeat-infringer policy. ENTtech has made no effort to plead facts to exclude this "plausible or innocuous alternative explanation." ENTtech also made no effort to plead that Defendants had a specific intent to defraud. As such, the wire fraud predicate act has not been properly alleged.

*Extortion*: The Hobbs Act prohibits attempts "in any way or degree [to] obstruct[], delay[], or affect[] commerce ... by ... extortion ...." 18 U.S.C. § 1951(a). "The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened ... fear ...." 18 U.S.C. § 1951(b)(2). "Fear," in this context, "can include fear of economic loss." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't*, 770 F.3d 834, 838 (9th Cir. 2014) ("*UBC*"). But the Hobbs Act does *not* impose "liability for threats of [even baseless] litigation where the asserted claims do not rise to the level of a sham." *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 939-40 (9th Cir. 2006). California law is to the same effect. *See* Cal. Penal C. § 519; *People v. Hesslink*, 167 Cal. App. 3d 781, 789 (1985) (reciting elements); *Baker v. FirstCom Music*, LACV 16-8931 VAP (JPRx), 2017 WL 9510144, at *6 (C.D. Cal. July 27, 2017) (reviewing California law difference between legitimate pre-litigation settlement negotiations and extortion, which involves threats of criminal prosecution or going public with victim's wrongdoing).

"Under California law, … it is well-settled that the threat to take legal action cannot constitute extortion unless the threat was made with knowledge that the threatened claim was false and without merit." *Asia Econ. Inst. v. Xcentric Ventures, LLC*, No. CV 10-1360 SVW (PJWx), 2010 WL 4977054, at *16 (C.D. Cal. July 19, 2010).

"[T]he fear of economic loss is a driving force of our economy that plays an important role in many legitimate business transactions." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 523 (3d Cir. 1998). But while there is a difference "between legitimate use of economic fear—hard bargaining—and wrongful use of such fear—extortion," *UBC*, 770 F.3d at 838, the Supreme Court has held that economic fear becomes extortion only "where the obtaining of the property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property." *United States v. Enmons*, 410 U.S. 396, 400 (1973).

That is not the case here, where the Photo Agencies have legitimate legal claims under the Copyright Act based on the unauthorized use of their images, and, as set forth above, ENTtech cannot make out a legitimate case for sham litigation. Accordingly, any use of economic pressure by Defendants was not "wrongful," and therefore there is no extortion—whether under federal or state law—to support a RICO claim. *See UBC*, 770 F.3d at 841 (dismissing RICO claim based on economic pressure from legitimate legal claims). Holding otherwise would seriously implicate First Amendment principles: if seeking redress for legal wrongs could be a RICO predicate act, RICO itself would probably be unconstitutional.

Unsurprisingly, the weight of authority therefore holds that the filing of a legal claim does not implicate the "fear" provision of an extortion cause of action. *See, e.g.*, *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984) (rejecting argument that the threat of legal action, for the purpose of frightening the plaintiff into making payments, amount to the infliction of "fear" within the meaning of the Hobbs Act). The result holds even if the legal claims asserted had no basis:

> We can not agree that the threat alleged here constituted the infliction of "fear" for purposes of the extortion statute. We assume for purposes of argument ... that the threat to sue was groundless and made in bad faith. Such conduct may be tortious under state law, but we decline to expand the federal extortion statute to make it a crime.

*Id.* (concluding that threats to sue did "not qualify as acts of racketeering bringing RICO into play"). Concluding that threats to file a civil action constitute a "pattern of racketeering activity" would cause citizens to "feel that their right of access to the courts of this country had been severely chilled." *Id.* RICO cannot extend that far. *See also Peterson v. Phil. Stock Exch.*, 717 F. Supp. 332, 336 (E.D. Pa. 1989) ("The ordinary resort to legal process does not rise to the level of a 'wrongful use' of force or fear.") (citation omitted); *Harris Custom Builders, Inc. v. Hoffmeyer*, 1994 WL 329962, at *4 (N.D. Ill. 1994) (alleged scheme of filing lawsuits to enforce an allegedly illegally obtained copyright does not constitute a predicate act of racketeering for purposes of RICO) (citing cases). Where the alleged "threat" concerns the use of DMCA notices and Instagram rules to leverage payment for legitimate copyright infringement claims, even if those notices are allegedly improper (and they are not), then they cannot support a claim for extortion.

ENTtech has no legally viable RICO claim based on these allegations. The claim should be dismissed.

## 2. ENTtech does not and cannot plead a "pattern."

ENTtech fails to adequately plead a pattern of racketeering activity. To plead a "pattern," ENTtech must show either "a series of related predicates extending over a substantial period of time" or "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* at 242.

The allegations of a pattern of racketeering activity fall woefully short of these requirements. Assuming that sending "fraudulent" DMCA takedown notices can be a

predicate act of an alleged RICO claim, ENTtech does not plead "long-term" conduct. Rather, ENTtech alleges that "Okularity sent fraudulent DMCA notices to Instagram … numerous times in June 2020." (TAC ¶ 50.) A period of (at most) a month is not "extending over a substantial period of time." Even crediting ENTtech's allegation that there were "at leasat 34 or 35" DMCA takedown notices sent "in 2019 and 2020" (TAC ¶ 37), there is still no closed-ended continuity under RICO.[5] *See Turner v. Cook*, 362 F.3d 1219, 1230-31 (9th Cir. 2004) (no closed-ended continuity when 94 fraudulent communications happened in a two-month span, and an additional three occurred sporadically in the preceding year); *Religious Tech. Center v. Wollersheim*, 971 F.2d 364, 366-67 (9th Cir. 1992) ("[w]e have found no case in which a court has held the requirement to be satisfied by a pattern of activity lasting less than a year").[6]

The allegations are insufficient to make out a "pattern" of racketeering and the RICO claim should be dismissed.

### 3.    RICO enterprise has not been sufficiently pleaded.

ENTtech's construction of a RICO enterprise is cursory and conclusory. If a plaintiff alleges an association-in-fact enterprise, as attempted here, it must state:

> facts indicating the existence of an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure. To satisfy the "continuing unit" requirement, the plaintiff must plead specific facts establishing that the association exists for purposes other than simply to commit the predicate acts.

*Cadle Co. v. Schultz*, 779 F. Supp. 392, 397 (N.D. Tex. 1991) (internal quotation marks and footnotes omitted); *see also Lujan v. Mansmann*, 956 F. Supp. 1218, 1231 (E.D. Pa. 1997) (properly pleaded enterprise requires (1) names of people or entities

---

[5] ENTtech also alleges, "on information and belief," that the scheme has been "continuous since 2018." (TAC ¶ 56.) This is inconsistent with its other allegations and also is the type of rote recitation of elements, without factual support, that the Court is not required to credit on a motion to dismiss.

[6] ENTtech cannot allege open-ended continuity either. Its Instagram account is suspended, so there is no ongoing threat of repetition.

comprising it; (2) its structure, purpose, function, course of conduct; (3) information on whether defendants are employed by it; (4) statement on whether defendants are associated with it; and (5) statement on whether defendants are separate from, members of, or are the enterprise). Courts have not hesitated to dismiss RICO claims for failure to clearly identify the RICO enterprise. *E.g.*, *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645-46 (7th Cir. 1995); *First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993) (dismissing RICO claim when plaintiff did not plead "any facts regarding the continuity of structure or personnel" of the enterprise).

In *Blue Oak Medical Group*, the Court decided that the plaintiff had not adequately alleged enterprise with sufficient factual detail (especially in light of the Rule 9 pleading standard). *See* 2018 WL 6219892, at *3-4. There, the Court stated that "it [was] unclear from the Complaint how the Defendants work together to achieve their common purpose of putting Blue Oak out of business," and that Blue Oak has not pleaded with particularity a "scheme to defraud," even though plaintiff had alleged:

> [T]he common purpose of the enterprise is to (1) financially harm and ultimately put out of business patient oriented medical providers; (2) induce Plaintiff to dispense medicine to injured workers covered by [State Fund], at Plaintiff's expense; (3) avoid paying Plaintiff for medicine dispensed by Blue Oak; and (4) retain money owed to Blue Oak. The enterprise carries out this common purpose by authorizing RFA's [sic] for the provision of medications and promising to pay for them, by inducing Blue Oak to dispense the medications to patients, and then consistently delaying payment and ultimately never paying at all [and that e]ach Defendant coordinated with one another to implement and conceal the enterprise.

*Blue Oak Med. Group*, 2018 WL 6219892, at *4 (internal quotation marks and citations omitted) (second and third alteration in original).

These allegations in *Blue Oak* provide more detail than what is alleged here, as the TAC makes no effort to explain how the Defendants engaged in an enterprise with respect the relationships among one another. Indeed, the allegations do not even

break down the actions or omission of each Defendant, but instead lumps them together (the "Clearinghouse Defendants" and "Okularity"). These allegations are insufficient.

### D.    The DMCA claim cannot survive factual admissions in the TAC.

Though the DMCA claim previously survived a motion to dismiss, ENTtech added claims in the TAC demonstrating that the claim has no merit. In the face of these new allegations, the DMCA claim should be dismissed.

To plead a valid claim for violation of the DMCA, a plaintiff must plead facts tending to show that defendant (1) knowingly, and materially misrepresented that copyright infringement occurred, (2) that a service provider relied on such misrepresentation, and (3) that plaintiff was injured as a result. *See* ECF 40, at 6 (order on motion to dismiss) (citing 17 U.S.C. § 512(f)); *see also Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004). An essential element of the claim is "that defendant falsely misrepresented a claim of copyright infringement." *Design Furnishings, Inc. v. Zen Path, LLC*, No. Civ. 2:10-2765 WBS GGH, 2010 WL 5418893, at *4 (E.D. Cal. Dec. 23, 2010).

The Court, with Judge Klausner presiding, previously held that the DMCA claim was adequately pleaded:

> … Plaintiff alleges that Okularity automatically generates [and submits] DMCA notices without considering potential non-infringing use of images, including fair use. (FAC ¶¶ 15, 27, 40, 37.) Read in the light most favorable to Plaintiff, such allegations constitute lack of a subjective good faith belief because if Okularity failed to consider fair use, it could not have formed a good faith belief that the images were infringing. (ECF 40, at 7.)

But two things are different in the TAC: First, the TAC no longer alleges that Okularity "automatically generates and submits" DMCA takedown notices. Rather, ENTtech now alleges only that DMCA takedown notices are automatically generated. *Compare* FAC ¶ 15 ("automatically generates and submits DMCA Notices"), ¶ 17 ("By automatically generating and submitting DMCA Notices"), and ¶ 27 ("DMCA

20

1  Notices are automatically generated and submitted), *with* TAC ¶ 15 ("automatically

2  generates DMCA Notices"), ¶ 17 ("By submitting DMCA Notices"), and ¶ 27

3  (removing "automatically generated and submitted" language). That is, ENTtech no

4  longer alleges that DMCA takedown notices are automatically submitted.[7] The clear

5  implication of the change is that Okularity submits those notices *manually*. And since

6  the submission of DMCA takedown notices is a manual process, any inference that

7  the process does not include infringement or fair-use analysis—on which Judge

8  Klausner's prior decision was based—is largely unwarranted.

9      Second, the TAC now includes allegations demonstrating that Okularity did in

10  fact conduct infringement and fair-use analysis before submitting DMCA takedown

11  notices. (TAC ¶ 15.) Specifically, ENTtech alleges: "In truth, many or all of the

12  DMCA notices contained identical verbatim discussion of infringement and fair use

13  …." (TAC ¶ 15.) Under federal law, "admissions in the pleadings are generally

14  binding on the parties and the Court." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d

15  224, 226 (9th Cir. 1988); *see also id.* ("Factual assertions in pleadings … are

16  considered judicial admissions conclusively binding on the party who made them.").

17  Based on these new allegations, there is no basis for the Court to conclude, as it did

18  previously, that the allegations are sufficient to plead that Okularity failed to consider

19  fair use and therefore could not have formed a good faith belief that the images were

20  infringing. *See id.* (judicial admission has "the effect of withdrawing a fact from issue

21  and dispensing wholly with the need for proof of the fact") (internal quotation marks

22  omitted).

23      To be sure, ENTtech alleges that "Okularity submits these [DMCA takedown]

24  notices without any of the analysis required by the DMCA." (TAC ¶ 15; *see also*

25  TAC ¶¶ 27, 40.) But in light of the facts alleged, this is a bald assertion—the exact

26

27  [7] ENTtech backed away from its claim that Okularity "automatically submits" DMCA takedown notices in a clear effort to avoid sanctions, since it never had a factual basis to make such a claim. *See* Motion for Sanctions (ECF 39), OSC re

28  Sanctions (ECF 54), Defs.' Resp. to OSC (ECF 63).

1  type of "[t]hreadbare recital" and unsupported conclusion that the Court need not

2  accept as true. *See Iqbal*, 556 U.S. at 678; *Sprewell*, 266 F.3d at 988. Recognizing

3  this, and to avoid the result of its binding admission of the infringement analysis

4  contained in the DMCA takedown notices, ENTtech asks simply that the Court not

5  give it any credence. Without any factual support, ENTtech pleads "on information

6  and belief" that Okularity's statement under oath is "untruthful." (TAC ¶ 15.)

7  ENTtech further alleges that the language in the DMCA takedown notices carries an

8  implication directly opposite from its clear meaning: that "no actual analysis was

9  truly performed before sending the notices." (TAC ¶ 15.) Neither assertion is

10  grounded in facts, just ENTtech's refusal to accept facts.

11      In adjudicating a motion to dismiss, however, the court need not accept as true

12  "allegations that are merely conclusory, unwarranted deductions of fact, or

13  unreasonable inferences." *Sprewell*, 266 F.3d at 988; *see also Miranda*, 279 F.3d at

14  1106 ("[C]onclusory allegations of law and unwarranted inferences will not defeat a

15  motion to dismiss for failure to state a claim"). But conclusory allegations,

16  unwarranted deductions, and unreasonable inferences is all that ENTtech offers.

17  ENTtech's binding admission renders the DMCA claim meritless, and the Court

18  should dismiss it with prejudice. *See, e.g.*, *Walter v. Drayson*, 496 F. Supp. 2d 1162,

19  1168 (D. Haw. 2007) (granting motion to dismiss, refusing to accept as true

20  unsupported contention that was contradicted by factual allegations and based on

21  improper inference and conclusion).

22      **E.   ENTtech should not be granted leave to amend again.**

23      ENTtech should not be granted leave to file a fifth complaint to assert its

24  baseless claims.

25      "In determining whether dismissal without leave to amend is appropriate,

26  courts consider such factors as undue delay, bad faith or dilatory motive on the part

27  of the movant, *repeated failure to cure deficiencies by amendments previously*

28  *allowed*, undue prejudice …, and futility of the amendment." *CyWee Group Ltd. v.*

22

*HTC Corp.*, 312 F. Supp. 3d 974, 981 (W.D. Wa. 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (emphasis added). The discretion to deny leave to amend "is particularly broad where the plaintiff has previously amended the complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (internal quotation marks omitted). And futility is determined by a situation where, even with new facts and allegations, there is not a legal theory that would give relief to plaintiff. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (denying leave to amend appropriate when "pleading could not possibly be cured by the allegation of other facts") (internal quotation marks omitted).

ENTtech has already amended its complaint *three times* and did so with full knowledge of its deficiencies. Having been unable to cure the deficiencies, ENTtech should not be granted leave to try again.

## V.    CONCLUSION

The Court should dismiss without leave to amend.

Dated: November 30, 2020    Respectfully submitted,

**PERKOWSKI LEGAL, PC**

By:    /s/ Peter Perkowski
        Peter E. Perkowski

Attorneys for Defendants
Okularity, Inc. and Jon Nicolini

Dated: November 30, 2020    **ONE LLP**

By:    /s/ Joanna Ardalan
        David Quinto
        Peter Afrasiabi
        Joanna Ardalan

Attorneys for Defendants BackGrid USA, Inc.,
Splash News and Picture Agency, LLC, and
Xposure Photo Agency, Inc.