Robert Tauler (SBN 241964)
rtauler@taulersmith.com
Tauler Smith, LLP
626 Wilshire Boulevard, Suite 510
Los Angeles, California 90017
Tel: (310) 590-3927

Attorneys for Plaintiff
ENTTech Media Group LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTTECH MEDIA GROUP LLC | Case No. 2:20-cv-06298-RGK (Ex) |
| Plaintiff, | Assigned to Hon. John W. Holcomb |
| v. | |
| OKULARITY, INC., *et al.* | **PLAINTIFF ENTTECH MEDIA GROUP LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT [66]** |
| Defendants. | |
| | Hearing Date: February 11, 2021 |
| | Time: 10:00 a.m. |
| | Place: ***None noticed*** |

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

I. FACTS ALLEGED IN THE TAC ................................................................... 2

   A. Defendants' Scheme to Defraud ............................................................... 3

   B. Defendants' Abuse of the DMCA ............................................................ 3

   C. Defendants' Enterprise ............................................................................. 6

   D. Defendants' Extortionate Demands .......................................................... 7

   E. Okularity's Intent to Mislead Instagram .................................................. 7

II. ARGUMENT ................................................................................................. 8

   A. Defendants' Misconduct Does Not Qualify for *Noerr-Pennington* Protection ........ 8

      1. Defendants' Conduct was Objectively Baseless and had an Improper Motive ................................................................................................. 9

      2. Defendants' Policy of Commencing Proceedings Without Regard to the Merits ................................................................................................ 11

      3. Defendants Made Intentionally False Statements ............................... 13

   B. ENTTech's RICO Claim is Sufficiently Pled .......................................... 14

   C. The RICO Claim Is Otherwise Plausible ................................................ 17

      1. The TAC Pleads a Pattern ................................................................. 19

      2. The TAC Pleads an "Enterprise" ....................................................... 19

   D. Defendants Resurrect the Same Failed Argument Regarding ENTTech's DMCA Claim ............................................................................................ 20

   E. If the Court is Inclined to Grant Relief, Leave to Amend Should be Granted ........ 22

III. CONCLUSION ........................................................................................... 22

CERTIFICATE OF SERVICE ........................................................................... 24

# TABLE OF AUTHORITIES

Cases

*Andersen v. Atl. Recording Corp.*, No. 07-CV-934-BR, 2009 WL 3806449 (D. Or. Nov. 12, 2009) ................................................................................................. 12

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................... 2

*Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001) ................................................ 14

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008) ..................................................................................................... 14

*Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008) ............................... 18

*Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013) cert. denied 134 S. Ct. 618 (2013) .......... 5

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) ........................................................... 15

*Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) ................................................................ 18

*Elvis Presley Enters.*, 349 F.3d at 630 ........................................................................... 5

*First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. 89 (S.D.N.Y. 1993) ........... 19

*Freeman*, 410 F.3d at 1185 ..................................................................................... 9, 10

*IGEN Int'l v. Roche Diagnostics GmbH*, 335 F.3d 303 (4th Cir. 2003) ............................ 9

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927 (N.D. Cal. 2018) .......................................................... 18

*Infinity Broad. Corp. v. Kirkwood,* 150 F.3d 104 (2d Cir. 1998) .................................... 5

*Kottle*, 146 F.3d at 1060 ...................................................................................... 11, 12

*Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016) ............................... 15, 20

*Lustiger v. United States*, 386 F.2d 132 (9th Cir. 1967) ................................................ 17

*Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012) ....................................... 5

*Murphy v. Millenium Radio Grp. L.L.C.*, 650 F.3d 295 (3d Cir. 2011) ............................ 4

*Nader v. Democratic Nat'l Comm.*, 567 F.3d 692 (D.C. Cir. 2009) ............................. 11

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) ................................................ 17

*Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783 (9th Cir. 1992) ............................ 18

*Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062 (9th Cir. 2020) ..........2

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49 (1993)..........9

*Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640 (7th Cir. 1995) ................................. 19

*Salas v. Int'l Union of Operating Engineers*, 2015 WL 728365 (C.D. Cal. Feb. 18, 2015) ................................................................................................................................ 14

*Sosa v. DIRECTV, Inc.*, 437F.3d 923 (9th Cir. 2006) ........................................ 9, 11, 13

*Thomas v. Hous. Auth. of Cty. of Los Angeles*, No. CV046970MMM 2006 U.S. Dist. LEXIS 97511, 2006 WL 5670938 (RCX)............................................................ 13

*Transfresh Corp. v. Ganzerla & Assoc.*, 862 F. Supp. 2d 1009 (N.D. Cal. 2012) ........... 17

*UMG Recordings Inc., v. Glob. Eagle Entm't., Inc.*, 117 F. Supp. 3d 1092 (C.D. Cal. 2015) .................................................................................................................................9

*United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016).................................................................................................................. 14, 15

*United States v. Ali*, 620 F.3d 1062 (9th Cir. 2010) ...................................................... 18

*United States v. Bohonus*, 628 F.2d 1167 (9th Cir. 1980) .............................................. 18

*United States v. Hempfling*, 431 F. Supp. 2d 1069 (E.D. Cal. 2006).............................. 12

*United States v. Munoz*, 233 F.3d 1117 (9th Cir. 2000) ................................................. 18

*United States v. Woods*, 335 F.3d 993 (9th Cir. 2003) ............................................. 17, 18

iii

*USS-POSCO Indus. v. BE & K Constr. Co.*, 31 F.3d 800 (9th Cir. 1994) ...................... 12

*Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987) ................................. 16

<u>Statutes</u>

§ 512(c)(3)(A) of the Digital Millennium Copyright Act ................................................. 6

§ 512(c)(3)(A)(v) of the Digital Millennium Copyright Act ........................................... 3

§ 512(f) of the Digital Millennium Copyright Act ................................................. 1, 2, 20

<u>Other Authorities</u>

5A Charles Alan Wright & Arthur R. Miller, *et al.*, *Federal Practice and Procedure*, § 1298 (3d ed. 2016) ................................................................................................. 15

<u>Rules</u>

FRCP 9(b) ...................................................................................... 1, 2, 14, 15, 17

Rule 408 of the Federal Rules of Evidence .................................................................. 7

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## **OPPOSITION TO MOTION TO DISMISS**

By making false statements to a third-party so that Defendants might impede access to a valuable asset – namely, the right of access by Plaintiff ENTTech Media Group, LLC ("ENTTech" or "Plaintiff") to its social media account with Instagram – Defendants have engaged in fraud and extortion under RICO. Those same misrepresentations violated § 512(f) of the DMCA. The Third Amended Complaint (Dkt. 57, the "TAC") alleges those violations, plausibly and with particularity. *See* Dkt. 57 (the "TAC"). The Joint Motion to Dismiss (Dkt. 67) (the "Motion") by Defendants should be denied. This case should be allowed to proceed, so that further light may be shed upon Defendants' ongoing use of sophisticated software to defraud, under the auspices of copyright law and the DMCA.

The Motion asserts a variety of baseless arguments designed to prevent this case from proceeding to discovery. First, Defendants argue that their scheme deserves protection from RICO liability under *Noerr-Pennington*. No such protection exists because Defendants' egregious conduct qualifies for the "sham exception" to *Noerr-Pennington*. Among other things, Defendants submitted false DMCA notices that misrepresent the ownership rights of Defendants Backgrid USD, Inc., Splash News and Picture Agency, LLC, and XPosure Photo Agency, Inc. (collectively, the "Clearinghouse Defendants"). The DMCA notices were submitted by Defendants Okularity, Inc. ("Okularity") and Jon Nicolini, who also falsely certified in the notices that they conducted an adequate review of fair use for each notice. In fact, Nicolini never conducted a sufficient fair use review, as he certified and as required by law. Defendants' misrepresentations disqualify them from protection and they are liable under the RICO statute.

Second, Defendants' argue that the TAC does not plead with sufficient particularity to satisfy Rule 9. Even if Rule 9 does apply to a portion of the claim, which is far from certain here, the TAC pleads more than sufficient particulars for each of its

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

two claims for relief:  Violation of DMCA § 512(f) (FAC, ¶¶ 35-43), and Violation of RICO (FAC, ¶¶ 44-57). The TAC meets the burden of specificity under Rule 9(b) because it states specific statements, the source of the statements, where they can be found (in possession of Defendants) and explains why the statements are false or misleading.  As such, the Motion should be denied as to Rule 9(b).

Third, the RICO allegations in the TAC are plausible and more than sufficient to state a claim relating to Defendants' misconduct. Explained below, by making false statements to a third party so that Defendants might impede access to a valuable asset – namely, the right of access by Plaintiff ENTTech Media Group, LLC to its social media account with Instagram – Defendants have engaged in fraud and extortion under RICO. This is exactly the type of behavior that RICO is designed to prosecute. Those same misrepresentations violated § 512(f) of the DMCA.

Last, in an attempt to take a second bite of the apple, Defendants rehash their argument that the allegations for Defendants' violation of § 512(f) of the DMCA are insufficient. Defendants attempt to make this argument despite the fact that the Court specifically rejected it in its October 2, 2020 Order. Nothing has changed between the TAC and prior pleadings to allow Defendants to resurrect the failed argument. Defendants should be sanctioned for raising an argument that was specifically rejected by the Court.

The Motion is frivolous and should therefore be denied.  This case should be allowed to proceed, so that further light may be shed upon Defendants' ongoing use of sophisticated software to defraud, under the auspices of copyright law and the DMCA.

## I.      FACTS ALLEGED IN THE TAC

"The facts are taken from the complaint.  For purposes of this decision we must assume them to be true." *Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062, 1066 n.2 (9th Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

As alleged here, all five of the named Defendants have engaged (and still are engaging) in an illegal scheme to defraud ENTTech of its assets by unlawfully manipulating the take-down notice provisions of the DMCA.  *See* TAC ¶ 12. The scheme to defraud was orchestrated by Okularity and involved other members including Nicolini, who is the CEO of Okularity, joined by Defendants Backgrid, USA, Inc., Splash News and Picture Agency, LLC, and Xposure Photo Agency, Inc. – who acted together as an enterprise to carry out their intent to defraud ENTTech and thereby damage ENTTech's flagship property, the online and print magazine called ENTTech.  TAC ¶¶ 18, 48, 49.

**A.    Defendants' Scheme to Defraud.**

Defendants engaged in a scheme to deprive ENTTech of its digital assets (specifically, ENTTech's  Instagram account) through a pattern of fraudulent statements made in DMCA notices that were issued to intentionally disable ENTTech's Instagram account and to effectively transfer control of the Instagram account to the enterprise; this was done, so that Okularity, through its CEO Jon Nicolini, could demand extortionate sums from ENTTech in exchange for having ENTTech's valuable Instagram account reinstated. TAC ¶¶ 12, 18, 28.  In fact, the scheme was specifically set up so that ENTTech had to first reach out to Okularity, in a state of desperation, to retrieve its valuable asset (Instagram business account) that Okularity held hostage by virtue of false statements to Instagram.  TAC ¶ 28.

**B.    Defendants' Abuse of the DMCA.**

The DMCA provides a rapid procedure for copyright owners to protect the widespread proliferation of their digital content.  TAC ¶ 13.  A DMCA notice requires a signed statement under penalty of perjury that the submitting party has a good faith belief that the content identified in the notice is infringing on a copyright, together with "[a] statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law" under § 512(c)(3)(A)(v) of the DMCA.  TAC ¶¶ 13, 51.  Okularity did not do any

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

investigation or legal analysis prior to filing the notices, as required by the DMCA, nor did it send a cease-and-desist letter to ENTTech concerning any of the images it reported. TAC ¶ 15.  Those DMCA notices were automatically generated and submitted to Instagram with Okularity's proprietary software, without any attorney supervision, or any analysis as to the fair use of the image, licensing, registration of the image or applicable statute of limitations, prior to filing.TAC ¶¶ 27, 40, 51.  Defendants knew that the DMCA notices were false, and did not have a "good faith" basis for believing that ENTTech's uses of the images were unauthorized. TAC ¶ 51.

The DMCA notices also contain a variety of false statements as to Defendants' rights. The notices false represent that Clearinghouse Defendants are the exclusive rights holders of the copyrights at issue. *See* TAC ¶ 50 ("[T]he Clearinghouse Defendants did not possess exclusive rights in the photos.  To the contrary, the authors of the photographs had previously granted licenses (express or implied) that allowed others to publish or promote them."), when in fact many of the copyrights were exclusively licensed or owned."). Defendants did not even make an inquiry to ensure that they possessed exclusive ownership of the copyrights at issue. TAC ¶¶ 40, 51.

Okularity, through Nicolini, submitted at least 19 identical, boilerplate statements to Instagram, in which he declared that the images ENTTech posted to their account were not fair use. Copies of many of the DMCA statements are attached as exhibits to Defendants' Counterclaims, and state the following:

As you should know, the Post does not qualify for fair use. The Post lacks significant commentary, if any, which works against a fair use defense. See *Murphy v. Millenium Radio Grp. L.L.C.*, 650 F.3d 295, 307 (3d Cir. 2011) ("("The absence of any broader commentary--whether explicit   or implicit--significantly undercuts the argument that [defendant's] use gave any new meaning to the Image. Instead, it appears that [defendants] did not

want to go to the trouble of creating their own eye-catching photo but simply appropriated the Image.").

Even if it were the case the Post had used the photographs for a different purpose than how they were published legitimately, the use would still not be transformative. See *Monge v. Maya Magazines, Inc*., 688 F.3d 1164, 1176 (9th Cir. 2012) ("But even an infringer's separate purpose, by itself, does not necessarily create new aesthetics or a new work that 'alter[s] the first [work] with new expression, meaning or message.' *Infinity Broad. Corp. v. Kirkwood,* 150 F.3d 104, 108 (2d Cir. 1998) (quoting *Campbell*, 510 U.S. at 579, 114 S.Ct. 1164). A 'difference in purpose is not quite the same thing as transformation, and Campbell instructs that transformativeness is the critical inquiry under this factor.' *Id*."). Further, the minimal cropping of the photograph and inclusion of most or all of the work in the Post is not fair use. "Qualitatively, the minimal cropping of each picture demonstrates that the 'heart' of each individual copyrighted picture was published. *Elvis Presley Enters*., 349 F.3d at 630 (courts should 'look to see whether the heart of the copyrighted work is taken.')." See *Monge*, 688 F.3d at 1178.

Finally, the Second Circuit has ruled "an accused infringer has usurped the market for copyrighted works, including the derivative market, where the infringer's target audience and the nature of the infringing content is the same as the original." *Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013) cert. denied 134 S. Ct. 618 (2013). Since the photograph has been used in the same manner, to the same audience, and with the same purpose as Backgrid London Ltd. or its clients use them, the use herein is not fair. *See* Exhibit C to Dkt. 53-13 (Defendants' Counterclaims) at 104, 108, 110, 112, 114, 117, 121, 124, 126, 129, 132, 134, 136, 138, 140, 142, 144, 146, 149. That same

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

boilerplate was repeated verbatim in every single one of the 19 notices.  Nicolini (who is not an attorney) went on to declare:

> "We have fulfilled all elements of notification as defined by § 512(c)(3)(A) of the Digital Millennium Copyright Act, so please remove the Post ***and take action against the user immediately***.  If you do not, Instagram may be ineligible for the safe harbor from copyright infringement liability provided by 17 U.S.C. § 512(c)."

*Id.*

## C.     Defendants' Enterprise.

The Okularity enterprise scheme is operated using Okularity's proprietary software that automatically generates and submits DMCA notices to Instagram to report images on Instagram as (purportedly) infringing the (purported) copyrights that have been registered by Backgrid, Splash News and Xposure Photo.  TAC ¶ 15.  Backgrid, Splash News and Xposure Photo are clearinghouse websites that use Okularity (run by and Nicolini) to act as their copyright agent.  TAC ¶ 49.  BackGrid, Splash News, and Xposure Photo provide Okularity access to their photograph databases and engage Okularity (which Nicolini controls) to extort companies with Instagram accounts through DMCA notices.  TAC ¶ 49.  All the Defendants worked together in the scheme with the intent to share in the proceeds of their scheme.  TAC ¶ 15, n.1.  Instagram requires (under its own policies) to disable any account that is deemed a "repeat" copyright infringer, solely for having numerous DMCA notices submitted to Instagram claiming copyright infringements.  TAC ¶¶ 14, 39.  Under those internal policies, Instagram does not reinstate the account of a "repeat infringer" until the underlying copyright "dispute" is resolved.  TAC ¶ 14, 39.  As such, Okularity now effectively has taken control over when ENTTech's access to the Instagram account gets reinstated.  TAC ¶¶ 12, 16.

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**D.     Defendants' Extortionate Demands.**

On at least at least 34 instances in 2019 and 2020, the TAC alleges that Defendants willfully, knowingly and materially made third-party §512(f) misrepresentations to Instagram stating that the images posted to ENTTech's Instagram account, some over three years old, were infringing intellectual property rights owned by one of the Defendants. TAC ¶ 37.  On July 8, 2020, ENTTech discovered their Instagram account was disabled.  That was when Instagram notified ENTTech that it was being treated as a repeat copyright infringer under Instagram's policy, solely because Okularity had issued to those notices.  TAC ¶¶ 22, 29, 39.  At the same time, Instagram provided ENTTech with the contact information of the person who issued all of the DMCA notices – namely Nicolini, the CEO of Okularity.  TAC ¶ 29. When ENTTech contacted Nicolini to ask about the DMCA notices, Nicolini emailed back, saying "please cut to the chase with your settlement offer," and demanded ENTTech  acknowledge that each purported copyright infringement could fetch up to $150,000, for a total of $4.65 million in "damages" under the Copyright Act.  TAC ¶ 30.  Sixteen minutes later, Nicolini announced his authority to communicate on behalf of his "clients" – expressly invoking Rule 408 of the Federal Rules of Evidence – to settle with ENTTech for $1.01 million. TAC ¶ 31.  In exchange for the million dollar "settlement," Okularity, through Nicolini, offered to retract their DMCA notices, thereby offering to induce Instagram to reinstate ENTTech's Instagram account.  TAC ¶ 23.  ENTTech did not accept Nicolini's million-dollar offer, and requested to see all of Okularity's DMCA notices to further assess their claims.  TAC ¶ 33. But, Nicolini has refused to send ENTTech copies of the DMCA notices, in the absence of a "non-disclosure agreement." *Id*.

**E.     Okularity's Intent to Mislead Instagram.**

Nicolini is not an attorney, but, as part of the scheme to defraud Instagram and thereby injure ENTTech, he misleadingly implied he was an attorney representing certain copyright owners. TAC ¶¶ 30-32.  Nicolini purported to assert legal claims on behalf of

his copyright owner clients, interpreted the application of the Copyright Act to images, engaged in "damages" analysis regarding legal copyright infringement claims of his "clients," and negotiated resolution of legal claims on his clients behalf under FRE 408 in the context of a copyright lawsuit. *Id*. Defendants know that Instagram is the lifeblood of any digital media company, particularly ENTTech, which primarily is engaged in the business of reporting and commentary of popular culture news and, as such, targets a young demographic that uses Instagram as its primary source of media consumption. TAC ¶ 16. Defendants knew Instagram's policies, and knew that those policies afforded them leverage over ENTTech. TAC ¶ 14. As Defendants intended, ENTTech has been injured because Defendants' numerous DMCA notices caused Instagram to disable ENTTech's use of its valuable Instagram business account, which was, and continues to be, its main source of revenue at the time the account was disabled. TAC ¶ 55.

## II.      ARGUMENT

## A.      Defendants' Misconduct Does Not Qualify for *Noerr-Pennington* Protection.

The Court has already ruled in its first order granting in part and denying in part Defendants' motion to dismiss (Dkt. 40) that "DMCA take-down notices and prelitigation settlement demands constitute protected activities because, like cease-and-desist and demand letters, such activities are also incidental to a lawsuit. The fact that Defendants' settlement offer was in a form of an email instead of a formal demand letter is of no significance" (*Id.* at 4). Accordingly, ENTTech shall only address here whether the sham litigation exception to *Noerr-Pennington* protection applies.

The Ninth Circuit has identified three circumstances when the so-called sham litigation exception applies: "(1) the lawsuit is objectively baseless and the defendant's motive in bringing it is unlawful; (2) the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; or (3) if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing

fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Sosa v. DIRECTV, Inc.*, 437F.3d 923, 936 (9th Cir. 2006) (internal quotation marks omitted).

Each of these circumstances applies to Defendants' conduct.

## 1. Defendants' Conduct was Objectively Baseless and had an Improper Motive.

*Noerr-Pennington* does not protect claims that are (1) "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) instituted in subjective bad faith. *IGEN Int'l v. Roche Diagnostics GmbH*, 335 F.3d 303, 312 (4th Cir. 2003) (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993)).

Here, Defendants' conduct is objectively baseless from beginning to end. First and foremost because no investigation was done prior to sending the notices – the photos were matched by software and the DMCA Notices were sent by software.  Nicolini sent an email demanding $150,000 in statutory damages per picture, knowing full well that most of them did not qualify for statutory damages because they were not registered copyrights. Nicolini's statement that he conducted a proper fair use analysis was baseless as well, as Nicolini had no legal training and lacked an understanding of fair use. The TAC contains sufficient allegations to satisfy this element:

According to the TAC:

- [T]he Clearinghouse Defendants had no right to issue DMCA notices.  This is because the Clearinghouse Defendants did not possess exclusive rights in the photos.  To the contrary, the authors of the photographs had previously granted licenses (express or implied) that allowed others to publish or promote them. TAC ¶ 50.

- According to publicly-available copyright registration documents, three of the photographs are actually owned by AKM-GSI Media, Inc. – and not Okularity, BackGrid, Splash or Xposure. TAC ¶ 50.

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

- According to another copyright registration document, "rights and permissions" for one of the photographs are owned jointly – not exclusively – by Maria Buda of AKM-GSI Media, Inc. and BackGrid.  (This photo was listed twice, duplicatively, on lines 6 and 7 of the spreadsheet chart from Nicolini.) Many (if not all) of the photos were also distributed widely across other internet sites, thereby implicitly licensing the public at large to use them. TAC ¶ 50.

- [Defendant Okularity knew] that no good faith basis existed for believing that "the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed," as required by § 512(c)(3)(A)(vi).  This is so, because nobody made any inquiry to determine whether [Defendants] BackGrid, Splash or Xposure owned any "exclusive right[s]." TAC ¶ 51.

- [Defendants'] misconduct also includes falsely certifying in DMCA notices that the Clearinghouse Defendants possess exclusive rights, when they purposely do not know (because, they have not inquired) whether any such rights exist. TAC ¶ 40.

In addition to Defendants' "objectively baseless" transmittal of DMCA notices without authority, it is obvious that no reasonable litigant would have claimed that a smattering of paparazzi photos on ENTTech's social media account would amount to an award of $4.65 million in damages, as Nicolini suggested in his July 8, 2020 email to ENTTech's CEO. TAC ¶ 23.  Nor would a reasonable copyright agent, who is not a licensed attorney (in this case Nicolini) have the ability to obtain settlement "authority" for "$1,010,000" as Nicolini claims to have had in his subsequent email sixteen minutes later.  TAC ¶ 31. Nicolini's offer is objectively baseless.

On the subjective component "the plaintiff must show that the defendant brought the lawsuit "with the specific intent to further wrongful conduct through the use of governmental process -- as opposed to the outcome of that process." *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 696 (D.C. Cir. 2009). This is precisely what has

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

been alleged.  Defendants' scheme was initiated solely to disable ENTTech's Instagram account.  Each notice contained the following automated directive:

> PLEASE NOTE we've already sent [____] takedown notifications for the account in question: papermagazine. The Instagram Terms of Use clearly state: "If you repeatedly infringe other people's intellectual property rights, we will disable your account when appropriate." Thus, ***we strongly urge you to disable this account immediately.***

(Dkt 53-13 at pages 943, 946, 951, 953, 956, 959, 962, 965, 968, 971, 973, 975, 977, 979, 981, and 988)(emphasis added)

Instead of communicating their copyright claims to ENTTech, Defendants opted to issue over 30 take-down notices.  TAC ¶ 41.  After the third such DMCA Notice, Defendants software automatically generated the statement "we strongly urge you to disable this account immediately." TAC ¶ 50.  The only purpose of this statement, when combined with Defendants failure to reach out to ENTTech before Instagram ultimately acceded to Defendants' demands, is that, is that it was pursued to "injur[e] plaintiffs' business or property interests." *Sosa*, 437 F.3d at 940.  As such, a plausible inference can be drawn that the motive was improper. Therefore, both elements of the first *Noerr-Pennington* exception are established in the TAC.

## 2. Defendants' Policy of Commencing Proceedings Without Regard to the Merits

The second *Noerr-Pennington* exception applies where conduct involves (1) a series of claims (2) brought pursuant to a policy of starting legal proceedings without regard to the merits, and (3) for an unlawful purpose. *Sosa*, 437 F.3d at 938; see also *Kottle*, 146 F.3d at 1060 (defining the exception in the anti-trust context). Under this exception, the "question is not whether any one of [the claims] has some merit … but whether they are brought pursuant to a policy of starting legal proceedings without regard

11

to the merits." *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1085 (E.D. Cal. 2006) (quoting *Kottle*, 146 F.3d at 1060).

The exception is satisfied through a pattern of filing claims without regard to their merits or a genuine interest in redressing legitimate grievances. *USS-POSCO Indus. v. BE & K Constr. Co.*, 31 F.3d 800, 811 (9th Cir. 1994). Under that element a court does not analyze the objective baselessness of each action; a court only determines if plaintiff's allegations recite a "pattern or practice" of filing lawsuits without regard to their merits. *Andersen v. Atl. Recording Corp.*, No. 07-CV-934-BR, 2009 WL 3806449, at *7 (D. Or. Nov. 12, 2009) (citing *USS-POSCO*, 31 F.3d at 810-11).

Here, as alleged in the TAC, Defendants repeatedly certified and transmitted DMCA notices, without regards to the merits of the contents of the notices. The notices contained false statements that Defendants possessed exclusive rights to all of the copyrights and that Okularity conducted an adequate fair use determination. Neither of these certifications were accurate. TAC ¶¶ 41, 50, 51. Moreover, the purpose of transmitting the false DMCA notices was not to redress a legitimate grievance, but rather to cause Instagram to remove ENTTech's account so that Defendants can hold the account hostage to extract a large settlement. TAC ¶ 28, 52.

The evidence speaks for itself. The 35 DMCA take-down notices sent to Instagram only pertain to 25 registered copyrights. *See* Exhibits A1-A6 to Dkt. 53-1 (Defendants' Counterclaims). Of these 25 copyrights, twelve were registered the day after this lawsuit was initially filed and an additional three were registered only after ENTTech's Instagram was taken down on July 8, 2020.[1] *Id*. Therefore, for at least fifteen of the twenty-five copyrights there are no statutory damages available. The remaining ten

---

[1] The following images were registered on July 16, 2020 – the day after Plaintiff's lawsuit was initially filed: VA0002212446, VA0002212441 , VA0002212436 , VA0002212318, VA0002212442, VA0002212446, VA0002212435, VA0002212444, VA0002212438, VA0002212439, VA0002212319, VA0002211697. These are attached as Exhibits A1-A6 of to Defendants' Counterclaims (See, Exhibit 1 to Request for Judicial Notice, filed concurrently herewith).

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

were originally owned by different entities, are more than three years old, or are simply not subject to copyright protection by the authors own admissions.

Similarly, each DMCA Notice sent by Nicolini (ostensibly on behalf of the Clearinghouse Defendants) states that the subject image violates the Clearinghouse Defendants' "copyright **and/or** exclusive rights." See Exhibit C to Dkt. 53-13 (Defendants' Counterclaims) at Page ID Nos. 943, 946, 951, 953, 956, 959, 962, 965, 968, 971, 973, 975, 977, 979, 981, and 988. The DMCA Notices themselves does not make clear who owns what right. In fact, many of the DMCA Notices were sent on behalf of entities that are not a part of the litigation, including "Backgrid London Ltd." *Id.* at PageID No. 975. Still other images are over five years old according to excel spreadsheet provided by Nicolini, and are alleged to belong to an entity called "AKM-GSI," however, that entity is also not a party. *See* Request for Judicial Notice, filed concurrently herewith, at 13-14 (2015 Copyright); 33-34 (2014 Copyright).

The inescapable conclusion is that Okularity and Nicolini's automated dispatch of dozens of DMCA take down Notices was done without regard to the merits of the claims. Instead, they were done for the unlawful purpose of disabling ENTTech's Instagram account so that Defendants could ask for extortionate amounts to restore the account. Accordingly, the RICO claim survives under the second exception to *Noerr Pennington*.

### 3. Defendants Made Intentionally False Statements

The third sham litigation exception applies if unlawful conduct "consists of making intentional misrepresentations to the court." *Sosa*, 437 F.3d at 938. In other words, if it is not 'objectively genuine.'" *Thomas v. Hous. Auth. of Cty. of Los Angeles*, No. CV046970MMM 2006 U.S. Dist. LEXIS 97511 at *9, 2006 WL 5670938 (RCX) (C.D. Cal. Feb. 28, 2006).

Here, as alleged in the TAC, Defendants included misrepresentations in DMCA Notices, including the same cut-and-paste statement regarding a fair use inquiry that they never adequately made, and exclusive copyright ownership they did not possess. *See*

13

TAC ¶¶ 40, 50, 51. Defendants' misrepresentations, in this regard, disqualify them from immunity under the third *Noerr-Pennington* exception.

**B.    ENTTech's RICO Claim is Sufficiently Pled.**

The TAC here pleads more than sufficient particulars for Violation of RICO. TAC ¶¶ 44-57.  To satisfy Rule 9(b)'s requirement of particularity, a pleading grounded in fraud "must allege 'the who, what, when, where, and how of the misconduct charged … including what is false or misleading … and why it is false. " *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (citations and internal quotation marks omitted).

On the other hand, "[o]ther than fraud, RICO predicate acts need not be pled with particularity but must be sufficiently pled to give [d]efendants notice of the factual basis of the claim." *Salas v. Int'l Union of Operating Engineers*, 2015 WL 728365, at *3 (C.D. Cal. Feb. 18, 2015) (citation and quotation marks omitted). Thus, "extortion claims should be evaluated against the more lenient pleading standards of Rule 8(a)." *Ibid.* Regardless, ENTTech's allegations are more than "specific enough to give defendants notice of the particular [alleged] misconduct" as required by Rule 9(b) for claims of fraud, "so that they can defend against the charge." *Swoben*, 848 F.3d at 1180 (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Where (as here) a predicate offense is mail or wire fraud, the plaintiff must allege facts to show that "someone" – not necessarily ENTTech – relied on the defendants's misrepresentations.  *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008).  That happened here, as the TAC alleges, when Instagram disabled ENTTech's account access in reliance upon the false statements of "good faith" in the DMCA notifications.  In fact, this was not only ***foreseeable***, but it was the ***intended*** result, as Nicolini expressly requested:

"*** PLEASE NOTE we've already sent 13 [and various other numbers, at different times] takedown notifications for the account in question:

---

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

papermagazine.  The Instagram Terms of Use clearly state: "If you

repeatedly infringe other people's intellectual property rights, we will

disable your account when appropriate."  Thus, we strongly urge you to

disable this account immediately. ***

TAC ¶ 50.

The TAC details the false statements of "good faith" that Okularity and Nicolini

made on behalf of the Backgrid, Splash News and Xposure Photo.  The DMCA notices

"contained a statement that the complaining party has a good faith belief that use of the

material in the manner complained of is not authorized by the copyright owner, its agent,

or the law," which the TAC alleges was false.  TAC ¶ 51 (internal quotations omitted).

Those statements were misrepresentations, because (in fact) no investigation or analysis

was undertaken by an attorney (or other human being) to determine the factual veracity

of the claims asserted.  TAC ¶ 40.  Plausibly and with particularity, that suffices to show

that the Defendants "knowingly misrepresented in the takedown notification that [they]

had formed a good faith belief the [photographs] were not authorized by the law, *i.e.*, did

not constitute fair use."  *See Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154 (9th

Cir. 2016).

Contrary to Defendants' principal argument (*see* Dkt. 67 at 11), the Rule 9(b)

standard " 'does not require absolute particularity or a recital of the evidence,' " *see*

*Swoben*, 848 F.3d at 1180 (quoting 5A Charles Alan Wright & Arthur R. Miller, *et al.*,

*Federal Practice and Procedure*, § 1298 (3d ed. 2016)), and thus, "a complaint need not

allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify

the 'precise method' used to carry out the fraud."  *Id.* (quoting *Cooper v. Pickett*, 137

F.3d 616, 627 (9th Cir. 1997)).  Specifically, the TAC states that Okularity "at least

thirty-four (34) or thirty-five (35) DMCA take-down notices against ENTTech (and

possibly as many as forty-eight (48) such notices, or more)."  TAC ¶¶ 29, 37.  As it also

alleges, Nicolini has refused to provide copies of those notices to ENTTech itself.  TAC ¶

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

33.  Consequently, there is no Rule 9(b) requirement that ENTTech plead any more specifics concerning those notices.  *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987) (" 'the rule may be relaxed as to matters peculiarly within the opposing party's knowledge' "; quoting the 1969 edition of Wright & Miller, *supra* § 1298, n.95).

As the TAC further alleges, any DMCA notice must have "contained '[a] statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.'" TAC ¶ 51.  Because Okularity used automation to generate the DMCA notices, "Defendants knew that this statement was false (which is, in fact, the reason why they are concealing their DMCA notices from ENTTech)."  TAC ¶ 51.  Thus, when Okularity (acting through Nicolini), submitted the DMCA notices to Instagram (on behalf of their principals, the Backgrid, Splash News, and Xposure Photo), Nicolini knew (and thus, Okularity and all of its principals also knew) that no "good faith" basis existed for believing that ENTTech's uses of the images were unauthorized.  TAC ¶ 51.

Notably, the RICO claim is asserted as to Defendants' entire scheme to defraud, not just the Notices by themselves.  As the TAC alleges, Nicolini actively solicit members of the public, including persons with whom it has no relationship and about whom it has no knowledge, to upload photos which Backgrid will then ostensibly "license" (for payment) to others to display and otherwise exploit.  TAC ¶¶ 25-26; 51. The "Clearinghouse Defendants" then engage Okularity (and Nicolini) as their "copyright agent" for the purpose of sending automated DMCA notices.  TAC ¶ 49.

Nicolini is the CEO of Okularity. TAC ¶ 24.  Okularity uses software solely to take down social media accounts so that it can have those accounts taken down by companies like Instagram. TAC ¶ 15.  Okularity, through Nicolini, then negotiates extortionate demands on behalf of itself and the Clearinghouse Defendants. TAC ¶ 16. Nicolini is not an attorney, but engages in fraudulent acts on behalf of the enterprise,

16

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

including asserting legal claims on behalf of his "clients," and negotiating resolution of legal claims on their behalf. TAC ¶ 32.  Nicolini applies law to facts when negotiating, and deploys the lexicon of a licensed attorney (i.e. "FRE 408"  "all rights reserved") to give the false impression that he a lawyer.  *See* TAC ¶¶ 30-31 (screenshots).  Nicolini and Okularity's acts of (1) advocating copyright "claims" for "clients," (2) negotiating settlements under FRE 408 on behalf of its "clients" and (3) reserving "rights" on behalf of his "clients" are all intended to deceive, and are an integral part of the scheme.

The TAC meets the burden of specificity under Rule 9(b) because it states specific statements, the source of the statements, where they can be found (in possession of Defendants) and explains why the statements are false or misleading.  As such, the Motion should be denied as to Rule 9(b).  *Transfresh Corp. v. Ganzerla & Assoc.*, 862 F. Supp. 2d 1009, 1019 (N.D. Cal. 2012) (finding that a plaintiff met Rule 9(b)'s pleading requirements where it identified specific statements, the source of the statements, where they can be found, and included allegations explaining why the statements are false and misleading).

## C.    The RICO Claim Is Otherwise Plausible.

"There has been some judicial resistance to RICO, manifested in narrow readings of its provisions by lower federal courts. In four notable cases, the Supreme Court has corrected these narrow readings." *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007).  If a scheme is devised with the intent to defraud, and the mails [or wires] are used in executing the scheme, the fact that there is no misrepresentation of a single existing fact is immaterial.  It is only necessary to prove that it is a scheme reasonably calculated to deceive, and that the mail service of the United States was used and intended to be used in the execution of the scheme. *United States v. Woods*, 335 F.3d 993, 998 (9th Cir. 2003) (quoting *Lustiger v. United States*, 386 F.2d 132, 138 (9th Cir. 1967)) (emphasis added).

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Put another way, "[t]he fraudulent nature of the 'scheme or artifice to defraud is measured by a non-technical standard. Thus, schemes are condemned which are contrary to public policy or which fail to measure up to the reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society." *Id.* (quoting *United States v. Bohonus*, 628 F.2d 1167, 1171 (9th Cir. 1980)) (internal quotation marks and citations omitted); see also *United States v. Ali*, 620 F.3d 1062, 1070–71 (9th Cir. 2010) (quoting *United States v. Munoz*, 233 F.3d 1117, 1131 (9th Cir. 2000)) ("Under the mail fraud statute the government is not required to prove any particular false statement was made. Rather, there are alternative routes to a mail fraud conviction, one being proof of a scheme or artifice to defraud, which may or may not involve any specific false statements.")

To successfully plead a RICO injury, plaintiffs must satisfy two requirements. *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 957 (N.D. Cal. 2018). First, they must plausibly allege "a harm to a specific business or property interest." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc). Second, they must plausibly allege that their injury has resulted in "concrete financial loss." *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008) (quoting *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc)), abrogated on other grounds by *Diaz*, 420 F.3d 897.

Both elements are pled in the TAC which details ENTTech was injured by Defendants' scheme to defraud by making false statements to Instagram to obtain control over the disposition of ENTTech's asset so that it could extort ENTTech. Put another way, Defendants "caused Instagram to disable ENTTech's use of Instagram, which is its main source of revenue at the time the account was disabled. Defendants knowingly obstructed ENTTech's ability to engage in commerce through improper means, which has caused, and will continue to cause ENTTech significant damage, as yet to be ascertained." TAC ¶ 55.

### 1.  The TAC Pleads a Pattern.

The TAC states that Okularity "at least thirty-four (34) or thirty-five (35) DMCA take-down notices against ENTTech (and possibly as many as forty-eight (48) such notices, or more)."  TAC ¶¶ 29, 37.  Some of the notices date back over three years. TAC ¶ 37.  Defendants scheme has been continuous since 2018. TAC ¶ 56.  A pattern has been adequately pled.

### 2.  The TAC Pleads an "Enterprise."

As the moving papers note, a properly pleaded enterprise requires (1) names of people or entities comprising it; (2) its structure, purpose, function, course of conduct; (3) information on whether defendants are employed by it; (4) statement on whether defendants are associated with it; and (5) statement on whether defendants are separate from, members of, or are the enterprise). Courts have not hesitated to dismiss RICO claims for failure to clearly identify the RICO enterprise. *E.g., Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645-46 (7th Cir. 1995); *First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993)

First, the TAC alleged the names of the persons and entities (Defendants).

Second, the structure is explained in great detail.  The Clearinghouse Defendants, engage Okularity (and Nicolini) as their "copyright agent" for the purpose of sending automated DMCA notices. TAC ¶ 49.  Okularity uses software solely to take down social media accounts so that it can have those accounts taken down by companies lke Instagram. TAC ¶ 15.  Okularity, through Nicolini, then negotiates extortionate demands on behalf of itself and the Clearinghouse Defendants. TAC ¶ 16.

Third, the TAC adequately details the parties' relationships.  Nicolini is the CEO of Okularity. TAC ¶ 24.  The Clearinghouse Defendants actively solicits members of the public, including persons with whom it has no relationship and about whom it has no knowledge, to upload to it photos which Backgrid will then ostensibly "license" (for payment) others to display and otherwise exploit. TAC ¶¶ 25-26; 51.

Fourth (and fifth), the association between the conspirators is pled as an association in fact enterprise. TAC ¶ 24.

## D.   Defendants Resurrect the Same Failed Argument Regarding ENTTech's DMCA Claim.

In the October 2, 2020 Order, the Court specifically held that "Plaintiff Sufficiently Pled the DMCA Claim." (Dkt. 40 at 6). Nonetheless, Defendants rehash the same failed arguments in an attempted second bite at the apple. (Dkt. 67 at 20). Defendants' resurrection of the exact same argument, specifically rejected by the Court, is frivolous and sanctionable.

In an attempt to create the appearance of a new issue, while in reality asserting the same rejected prior argument, Defendants misrepresent the allegations in the TAC to argue that "two things are different in the TAC." (Dkt. 67 at 21). First, that ENTech purportedly "no longer alleges that DMCA takedown notices are automatically submitted." *Id*. Second, that "Okularity did in fact conduct infringement and fair use analysis before submitting DMCA takedown notices." *Id*. Both of these arguments are distortions of the allegations in the TAC.

Under § 512(f) of the statute, that "[a]ny person who knowingly materially misrepresents under this section ... that material or activity is infringing ... shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer ... who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing[.]" *See* 17 U.S.C. § 512(f).  Defendants "face[ ] liability if [they] knowingly misrepresented in the takedown notification that [they] had formed a good faith belief the [photographs] were not authorized by the law, *i.e.*, did not constitute fair use." *See Lenz*, 815 F.3d at 1154.

The Court previously held that "Plaintiff alleges that Defendants knowingly and materially misrepresented that copyright infringement occurred." (Dkt 40, at 7). Citing

allegations that continue to exist in the TAC the Court noted "Plaintiff alleges that Okularity automatically generates DMCA notices without considering potential non-infringing uses of images, including fair use . . . such allegations constitute lack o a subjective good faith belief . . ."

Here, the TAC is replete with allegations that satisfy the pleading requirements that Defendants knowingly and materially misrepresented copyright infringement:

- Through its proprietary software, Okularity automatically generates DMCA Notices to any social media platform, including Instagram, containing an image in Okularity's database. Okularity submits these notices without any of the analysis required by the DMCA, let alone any demand letter or even a warning to the alleged infringer. TAC ¶ 15.

- In truth, many or all of the DMCA notices contained identical verbatim discussion of infringement and fair use, which indicates that no actual analysis was truly performed before sending the notices. Additionally, during telephone call on July 14, 2020 – prior to getting sued – Nicolini admitted to ENTTech's counsel that Okularity uses automated software to generate DMCA notices. During the same call, Nicolini did not mention any purported analysis by himself (or by anyone else) concerning (a) whether Okularity's ostensible principals (Backgrid, Splash and Xposure) possessed the exclusive right to enforce any copyrights that the images might have infringed, (b) whether the social media use of the image really did infringe any coprights, or (c) whether the use of the image on social media was allowed by the "fair use" doctrine. In fact, during the telephone call on July 14, 2020, Nicolini did not mention any analysis of anything; instead, he only stated that that Okularity uses automated software to generate DMCA notices. TAC ¶ 15.

- The problem with Okularity's scheme, however, is that it is illegal. By submitting DMCA Notices on basis of false certifications under

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

§§ 512(c)(3)(A)(v) and 512(c)(3)(A)(vi), Okularity has failed to follow the terms of the DMCA.  TAC ¶ 17.

- BackGrid then uses software to automatically generate copyright management information ("CMI") so that it can track whenever an image is used.  Since BackGrid conducts no due diligence of images uploaded to its website for exploitation, and the corollary opportunity for abuse, BackGrid itself has been sued by actual copyright holders for copyright infringement. TAC ¶ 25.

Defendants simply distort the allegations in the TAC by falsely asserting that it fundamentally changed the in a manner that would allow them to rehash an argument specifically rejected by the Court. Defendants should be sanctioned for impermissibly attempting a second bite at the apple and resurrecting an argument that was specifically rejected by the Court.

**E.     If the Court is Inclined to Grant Relief, Leave to Amend Should be Granted**

Defendants' Motion lacks merit and should be denied. However, in the event that the Court grants relief, ENTTech respectfully requests leave to amend its allegations relating to the additional facts that were revealed during the recent depositions of Nicolini and Ginsberg. These facts were revealed while this motion was pending.  (Dkt. 77-1, Exhibit C (Nicolini Deposition) & Exhibit I (Ginsberg Deposition)

"Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 845 (9th Cir. 2003) (quoting *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991)).  The new facts provided by Nicolini and Ginsberg militate towards providing Plaintiff with another opportunity to plead its claims again with these facts  *Brown v. Stored Value Cards, Inc.,* 953 F.3d 567, 574 (9th Cir. 2020)(leave to amend based on newly discovered evidence)

## III.   CONCLUSION.

Defendants' motion to dismiss should be denied in its entirety.

---

22

1

2 DATED: January 6, 2021                    TAULER SMITH LLP

3

4

5                                           By:   /s/ *Robert Tauler*
                                                  Robert Tauler
6                                                 Attorneys for Plaintiff
                                                  ENTTech Media Group LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# **CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2021, copies of the foregoing document were served by the Court's CM/ECF system to all counsel of record in this action.

Dated: January 6, 2021                    **TAULER SMITH, LLP**


By: /s/ Robert Tauler
       Robert Tauler

Counsel for Plaintiff
ENTTECH MEDIA GROUP LLC

ENTTECH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS