Peter E. Perkowski (SBN 199491)
peter@perkowskilegal.com
Matthew P. Kelly (SBN 224297)
PERKOWSKI LEGAL, PC
445 S. Figueroa Street, Suite 3100
Los Angeles, CA 90071
Telephone: (213) 426-2137

Attorneys for Defendants OKULARITY, INC. and JON NICOLINI

David Quinto (Bar No. 106232)
Joanna Ardalan (Bar No. 285384)
jardalan@onellp.com
ONE LLP
9301 Wilshire Boulevard, Penthouse Suite
Beverly Hills, CA 90210
Telephone: (310) 866-5157

Peter R. Afrasiabi (Bar No. 193336)
pafrasiabi@onellp.com
ONE LLP
4000 MacArthur Boulevard, East Tower Suite 500
Newport Beach, CA 92660
Telephone: (949) 502-2870

Attorneys for Defendants BACKGRID USA, INC., SPLASH NEWS AND PICTURE AGENCY, LLC, and XPOSURE PHOTO AGENCY, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTTECH MEDIA GROUP LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>OKULARITY, INC. et al.,<br><br>*Defendants*. | Case No. 2:20-cv-06298 JWH (Ex)<br><br>*Hon. John W. Holcomb*<br><br>**DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Date:       Feb. 11, 2021<br>Time:      2:00 p.m.<br>Place:      N/A<br><br>Compl. filed:     July 15, 2020<br><br>*No Trial Date Set* |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION..................................................................................................1

II. ARGUMENT........................................................................................................1

    A. ENTtech has not pleaded any *Noerr-Pennington* exception. .........................1

        1. ENTtech has not shown that Defendants' copyright claims are objectively baseless.................................................................................1

        2. The second exception does not apply in the context of a single judicial proceeding. ..................................................................................3

    B. The RICO claim does not survive scrutiny......................................................5

        1. The predicate acts are factually and legally inadequate. ..........................5

        2. ENTtech's inconsistent allegations cannot plead a pattern. .....................6

    C. The revised allegations in the TAC invalidate the DMCA claim....................6

        1. Precedent requires ENTtech to plead a lack of subjective good faith belief.................................................................................................7

        2. The allegations and evidence show that ENTtech has not and cannot plead this requisite element......................................................8

    D. Dismissal should be with prejudice. ................................................................9

III. CONCLUSION..................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Allen v. City of Beverly Hills*,
   911 F.2d 367 (9th Cir. 1990) ............................................................................ 10

*Andersen v. Atl. Recording Corp.*, No. 07-cv-934-BR,
   2009 WL 3806449 (D. Or. Nov. 12, 2009) ........................................................ 4

*Blue Oak Med. Group v. State Comp. Ins. Fund*, No. 2:18-cv-3867-RGK (SKx),
   2018 WL 6219892 (C.D. Cal. Nov. 7, 2018) ...................................................... 5

*Kottle v. Nw. Kidney Centers*,
   146 F.3d 1056 (9th Cir. 1998) ....................................................................... 3, 4

*Lenz v. Universal Music Corp.*,
   572 F. Supp. 2d 1150 (N.D. Cal. 2008) ............................................................. 7

*Lenz v. Universal Music Corp.*,
   815 F.3d 1145 (9th Cir. 2016) ........................................................................... 7

*Lenz v. Universal Music Corp.*, No. 5:07-cv-3783-JF,
   2013 WL 271673 (N.D. Cal. Jan. 24. 2013) ...................................................... 7

*Rossi v. Motion Picture Ass'n of Am. Inc.*,
   391 F.3d 1000 (9th Cir. 2004) ........................................................................... 7

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ......................................................................... 10

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ......................................................................... 3, 6

*Spencer v. City of Spokane*, -- Fed. Appx. ----,
   2020 WL 7009655 (9th Cir. Nov. 27, 2020) ...................................................... 9

*USS-POSCO Indus. v. BE & K Constr. Co.*,
   31 F.3d 800 (9th Cir. 1994) ............................................................................... 4

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ........................................................................... 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Consistent with its usual practice, ENTtech Media Group LLC's Opposition to Defendants' Motion to Dismiss is a dog's breakfast of case citations and quotations from the Third Amended Complaint ("TAC"), largely devoid of analysis except for what appears in case parentheticals and conclusory statements that follow. That approach may work in cases where a plaintiff has meritorious claims to assert. Here, though, ENTtech does not. Its claims are hopelessly deficient, and merely repeating in a brief the poorly pleaded allegations while adding largely inapposite authority does not aid in saving them.

ENTtech's Opposition does not even address each of the deficiencies that Defendants raised in the Joint Memorandum in support of the motion to dismiss. The arguments made in opposition fail to show that the TAC states valid claims and fail to show that the claims can be pleaded in yet another amendment. As such, both the claim under the Digital Millennium Copyright Act ("DMCA") and the RICO claim should be dismissed with prejudice.

## II.   ARGUMENT

### A.   ENTtech has not pleaded any *Noerr-Pennington* exception.

ENTtech's arguments against application of the *Noerr-Pennington* doctrine fall well short. None of the three *Noerr-Pennington* exceptions applies here.

#### 1.   ENTtech has not shown that Defendants' copyright claims are objectively baseless.

ENTtech's Opposition acknowledges that an action is objectively baseless when "no reasonable litigant could realistically expect success on the merits." (Opp'n at 9.) This standard requires ENTtech to plead facts showing either that the Photo Agencies do not own valid copyright registrations or ENTtech has not infringed them. ENTtech fails to do so: each of its arguments crumbles under scrutiny.

*First*, ENTtech argues that the Photo Agencies had no right to issue DMCA notices because they did not possess exclusive rights in the photos. (Opp'n at 9.) This is a bald assertion, without support, that the Court need not accept as true. It fails spectacularly given that the Photo Agencies have valid copyright registrations for each of the photos—and ENTtech itself has asked the Court to take judicial notice of these registrations. (ECF 35-1, Ex. A-1 to A-6.) ENTtech does not plead any facts showing that the Photo Agencies entered into written agreements assigning away ownership or providing an exclusive license. Absent such facts, this argument fails.

*Second*, ENTtech argues that "three of the photographs are actually owned by AKM-GSI Media, Inc.," not Defendants. (Opp'n at 9.) But ENTtech itself asked the Court to take judicial notice of the Photo Agencies' copyright infringement complaint against ENTtech, in which the Photo Agencies pleaded that they own the copyright of *all* the photos in question. (ECF 35-1.) ENTtech is not privy to assignment agreements between AKM-GSI Media and BackGrid, for example. But even so, this alleged "defect" applies to only three photographs out of 49. The Photo Agencies' copyright claims, wholly considered, are not objectively baseless on this ground.

*Third*, ENTtech argues that the copyright registration of one photograph lists "Maria Buda of AKM-GSI" in the "rights and permissions" section. But this portion of the copyright registration certificate informs potential licensees who to contact for "rights and permissions" to use the photograph. *See* Circular 18, Privacy: Copyright Public Records, at 3 (U.S. Copyright Office).[1] It does not relate to ownership at all, and ENTtech's argument otherwise is as embarrassing as it is wrong. The Photo Agencies' copyright claims are not objectively baseless on this ground.

*Fourth*, ENTtech argues that "many" of the photographs were "distributed widely across the internet," which ENTtech suggests is an implicit invitation—if not outright authorization—for anyone to use the photographs. (Opp'n at 10.) What ENTtech is describing is either legitimate licensing or wide-scale infringement, the

---

[1] Available at https://www.copyright.gov/circs/circ18.pdf.

very thing that the Photo Agencies are fighting against. The Photo Agencies' copyright claims against ENTtech are not objectively baseless simply because ENTtech wrongly interpreted copyright principles as allowing it to misuse the photographs because they were "widely distributed." This argument fails.

*Fifth*, ENTtech argues that the claims are objectively baseless because "nobody made any inquiry" to determine whether the Photo Agencies owned "exclusive rights." (Opp'n, at 10:10-14.) This non-sensical allegation misses the mark for the same reason as the allegation, discussed above, that the Photo Agencies did not possess exclusive rights in the photos. In fact, the Photo Agencies hold valid copyright registrations. Absent facts to the contrary, this argument fails.

*Finally*, ENTtech further argues that certain *conduct* of Defendants is "objectively baseless from beginning to end." (Opp'n at 9; *see also* Opp'n at 10-11.) But the sham inquiry focuses on the objective validity of Defendants' *claims*, not their *conduct*. This argument fails as well.

Given ENTtech's failure to demonstrate objective baselessness, the Court need not even consider whether the claims were instituted in bad faith. *See White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000) ("Because, in the present case, the first requirement cannot be sustained, we need not even consider the second."). "Objective baselessness is the sine qua non of any claim that a particular lawsuit is not deserving of First Amendment protection." *Id.* Without it, as here, the first *Noerr-Pennington* exception does not apply.

### 2. The second exception does not apply in the context of a single judicial proceeding.

ENTtech argues that the second *Noerr-Pennington* exception applies where conduct involves "a series of claims." (Opp'n at 11:21-22 (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006), and *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1060 (9th Cir. 1998).) Not so. *All* the cases cited by ENTtech state that the second exception applies "where the conduct involves a series of lawsuits." *Sosa*, 437

3

F.3d at 938; *see also Kottle*, 146 F.3d at 1060 ("if the alleged anticompetitive behavior is the filing of a series of lawsuits …"); *USS-POSCO Indus. v. BE & K Constr. Co.*, 31 F.3d 800, 811 (9th Cir. 1994) (sham litigation precedent "deal[t] with the case where the defendant is accused of bringing a whole series of legal proceedings"); *Andersen v. Atl. Recording Corp.*, No. 07-cv-934-BR, 2009 WL 3806449, at *7 (D. Or. Nov. 12, 2009) (applying the exception to a "series of lawsuits").

Here, clearly, the conduct does not involve a series of lawsuits. ENTtech doesn't plead or argue that it does. Rather, ENTtech argues that this exception applies because Okularity sent numerous DMCA takedown notices. There is no support for this assertion. The second *Noerr-Pennington* exception does not apply.

### 3.  The third exception does not apply to extra-judicial conduct.

ENTtech recognizes that the third sham litigation exception involves the making of knowing misrepresentations *to the Court*. (Opp'n at 13:20-21.) Indeed, the Ninth Circuit has clearly defined the scope of the third exception:

> [I]n the context of a judicial proceeding, if the alleged anticompetitive behavior consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.

*Kottle*, 146 F.3d at 1060 (internal quotation marks and citations omitted). The third exception thus contains two prerequisites: a judicial proceeding, and intentional misrepresentation to (or fraud upon) the Court.

Neither of these prerequisites are present here. ENTtech makes no allegations that misrepresentations were made in a judicial proceeding involving "a party's knowing fraud upon, or its intentional misrepresentations to, the court," and the Opposition identifies none. Instead, ENTtech focuses on alleged misrepresentation in extra-judicial communications—specifically, DMCA takedown notices, which were presented to a non-governmental third party, Instagram. (Opp'n 13:25-14:2.)

ENTtech cites no case, and Defendants have found none, that applies this exception to alleged extra-judicial misrepresentations. The third exception thus does not apply.

\* \* \*

ENTtech has failed to show that any *Noerr-Pennington* exception applies here. Accordingly, Defendants' conduct is immune from RICO liability under the doctrine, and the RICO claim should be dismissed with prejudice.

### B. The RICO claim does not survive scrutiny.

ENTtech's RICO claim suffers from several problems. ENTtech's Opposition clearly fails to adequately address at least two of them, which are fatal.

#### 1. The predicate acts are factually and legally inadequate.

ENTtech has no answer to Defendants' showing that the predicate acts are not adequately pleaded. ENTtech does not address its pleading of the predicate act at all.

With respect to mail fraud as a predicate act, Defendants argued that ENTtech did not plead use of the mail, only the use of automated systems and email. ENTtech has no answer. Because the TAC contains no allegations concerning use of the mail, mail fraud cannot support the RICO claim.

With respect to wire fraud as a predicate act, Defendants raised as a defense the requirement that pleading a "scheme to defraud" for purposes of the wire fraud statute requires ENTtech to plead facts that would exclude "plausible or innocuous alternative explanations" for any fraudulent intent. *See Blue Oak Med. Group v. State Comp. Ins. Fund*, No. 2:18-cv-3867-RGK (SKx), 2018 WL 6219892 (C.D. Cal. Nov. 7, 2018). The obvious plausible alternative explanation here is that the DMCA worked as it was supposed to because ENTtech's Instagram posts were infringing. Despite the requirement that RICO plaintiffs plead around obviously plausible alternatives, ENTtech does not allege noninfringement (e.g., fair use), nor did it accept the clear invitation to address this issue in its Opposition. Under *Blue Oak Medical*, wire fraud cannot support the RICO claim.

Finally, as to extortion as a predicate act, ENTtech fails to address *any* of the authority requiring it to plead that any use of economic pressure by Defendants was "wrongful"—that is, that Defendants do not have legitimate legal claims under the Copyright Act. This would require ENTtech to allege that its Instagram posts were non-infringing—again, allegations and argument that ENTtech has proven unwilling to make. Without them, extortion cannot support the RICO claim.[2]

### 2. ENTtech's inconsistent allegations cannot plead a pattern.

In addressing the "pattern" requirement of RICO, ENTtech provides four lines of text that merely repeats the allegations of its FAC. It cites no authority and provides no analysis. (Oppn at 19:2-6.) But Defendants' Joint Memorandum showed why these allegations are insufficient, and ENTtech has no answer.

Moreover, the available evidence (submitted by ENTtech) tends to undermine its allegations. ENTtech's Request for Judicial Notice (ECF 35-1) contains 19 DMCA counternotifications submitted by ENTtech's counsel. Everyone of them shows that Okularity's DMCA takedown notices were sent in the month of June, ranging from June 5 to June 23. This short period of a few weeks is legally insufficient to support a RICO element of a "pattern" of racketeering activity.

### C. The revised allegations in the TAC invalidate the DMCA claim.

ENTtech filed the TAC in response to this Court's Order to Show Cause, which instructed ENTtech to "cure[] *each* of the allegedly offending allegations … that Defendants challenge in their Motion for Sanctions." (ECF 54, at 5:17-20.) Having done so, ENTtech now asserts that the challenge to its DMCA claim has previously been adjudicated and that the Defendants are merely rehashing failed

---

[2] ENTtech does not argue that Defendants do not have legitimate copyright claims because those claims are a "sham." (ENTtech makes no arguments at all as to the predicate acts.) If ENTtech did make such an argument, though, that argument would fail for the same reasons discussed above as to the *Noerr-Pennington* sham exceptions. *See Sosa*, 437 F.3d at 940-41 (in applying *Noerr-Pennington* exemption, federal Hobbs Act does not "impose[] liability for threats of litigation were the asserted claims do not rise to the level of a sham," and state extortion claim predicated on threat to sue requires allegation that threated sue was "objectively baseless").

arguments. But that's not true: in attempting to satisfy the Order to Show Cause, additional allegations in the TAC, along with other documents the Court may consider, demonstrate that the DMCA claim is without merit.

### 1. Precedent requires ENTtech to plead a lack of subjective good faith belief.

To satisfy Section 512(f), the Ninth Circuit has repeatedly affirmed that a copyright holder, before sending a DMCA notice, "need only form a subjective good faith belief that a use is not authorized." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153 (9th Cir. 2016) (citing *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000 (9th Cir. 2004)). But "a full *investigation* to verify the accuracy of a claim of infringement is not required" to form meet the requirement. *Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150, 1155-56 (N.D. Cal. 2008) (citing *Rossi*, 391 F.3d at 1003-04). Rather, while "some evaluations of fair use will be more complicated than others, … in the majority of cases, a consideration of fair use prior to issuing a takedown notice will not be so complicated as to jeopardize a copyright owner's ability to respond rapidly to potential infringements." *Id.* at 1155.

This is not an exacting review. "[A]t minimum," it requires only "an initial assessment as to whether the fair use doctrine applies to the use in question …. ." *Lenz v. Universal Music Corp.*, No. 5:07-cv-3783-JF, 2013 WL 271673, at *6 (N.D. Cal. Jan. 24. 2013). Defendants' liability in *Lenz*—the leading and controlling case on this issue, as ENTtech admits—turned on allegations there that "Universal did not form any subjective belief about the video's fair use—one way or another—because it failed to consider fair use at all, and knew that it failed to do so." *Id.* at 1154.

In sum, satisfying Section 512(f) does not require an exacting consideration of fair use principles. Only so much consideration as to form a subjective good-faith belief is required, and only the complete failure to consider fair use—and the knowledge that one failed to do so when submitting a DMCA takedown notice—has previously been found to violate this standard. Here, the allegations are insufficient to

1  plead the lack of subjective good-faith belief, and both judicially noticeable evidence
2  and documents incorporated by reference in the TAC show that the Court need not
3  credit ENTtech's bald allegations that "Okularity submits these [DMCA takedown]
4  notices without any of the analysis required by the DMCA." (TAC ¶ 15.)

5  **2. The allegations and evidence show that ENTtech has not and**
6  **cannot plead this requisite element.**

7  ENTtech's Opposition makes clear that the DMCA claim rises and falls on an
8  alleged misrepresentation of "good faith belief," which flows entirely from
9  ENTtech's allegation that Defendants did not consider fair use before sending the
10 DMCA takedown notices. (TAC ¶ 15.) But the Opposition wholly fails to address
11 Defendants' argument that the Court need not accept that allegation as true because it
12 is contradicted by judicial admissions and documents that are referenced in the
13 Complaint and subject to judicial notice.
14 The new allegations—the judicial admissions—reveal that Okularity did in fact
15 consider fair use before submitting the DMCA takedown notices. (TAC ¶ 15 ("many
16 or all of the DMCA notices contained identical verbatim discussion of infringement
17 *and fair use*") (emphasis added).) ENTtech asserts that Defendants' argument
18 "distorts" the TAC. But ENTtech has submitted documents to the Court, and
19 requested judicial notice of them, showing that fair use was considered. (ECF 35-1.)
20 The documents are 19 DMCA counternotifications that ENTtech's counsel caused to
21 be sent to Instagram, and those counternotifications contain the text of the DMCA
22 takedown notices that Okularity sent. Each of the takedown notices contains an
23 *extensive* discussion of fair use. (RJN Ex. 1, at 104, 108, 110, 112, 114, 117, 121,
24 124, 126, 129, 132, 134, 136, 138, 140, 142, 144, 146, 149.) The language in the
25 takedown notices is actual analysis, separately discussing four different legal points
26 about why ENTtech's use of each image was not fair. The language is the same in
27 each of the takedown notices because ENTtech's use was the same, and the same
28 analysis applied. Given the judicial admissions and judicially noticeable documents,

8
REPLY MEMO OF Ps & As IN SUPPORT OF MOTION TO DISMISS

the Court need not accept as true ENTtech's baseless allegation that Okularity submits notices without considering fair use.

To divert attention from the evidence contradicting its key allegations, ENTtech attempts to emphasize its allegations that it claims satisfy the pleading requirements. They boil down to this: (1) Okularity automatically generates DMCA takedown notices, and (2) the DMCA notices are verbatim. (Opp'n at 21.) But these allegations say nothing about what Okularity does, in terms of analyzing fair use and forming a "good faith belief" of infringement. Even accepting as true the allegation that DMCA takedown notice are automatically generated, it is not a reasonable inference to conclude that Okularity subsequently does not consider fair use. Nor is it reasonable to infer that fair-use analysis is not conducted merely because the takedown notices are identical. In the end, ENTtech is left with nothing but a bald assertion—which need not be credited—that Okularity submits DMCA takedown notices without conducting a fair-use analysis.

Finally, the Court may also consider the Declaration of Jon Nicolini in ruling on this Motion to Dismiss. (ECF 39-7.) The Nicolini Declaration is referenced in the TAC. (TAC ¶ 15.) Under well-settled principles, "because [ENTtech's] own Complaint referenced the documents attached to [defendants'] dispositive motion," here, the Nicolini Declaration, "the district court could consider those documents without converting the motion into a summary judgment motion." *See*, *e.g.*, *Spencer v. City of Spokane*, -- Fed. Appx. ----, 2020 WL 7009655, at *1 n.1 (9th Cir. Nov. 27, 2020). In the TAC, ENTtech pleaded the Declaration only to declare that it does not believe it. (TAC ¶ 15.) Unfortunately for ENTtech, its belief—or in this case, disbelief—is not an adequate basis to plead a valid claim or to survive a motion to dismiss. The DMCA claim should be dismissed.

### D. Dismissal should be with prejudice.

ENTtech should be denied leave to file yet another iteration of its complaint. The Court's discretion to deny leave to amend is "particularly broad" where plaintiff

has previously amended. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). ENTtech has now filed four versions of its claims, each one with only the bare minimum of changes—this despite having been repeatedly informed, through motion practice, letters, and declarations—of the repeated deficiencies. Another attempt would be equally as futile.

ENTtech asserts that information learned in discovery would salvage its claims. But ENTtech neither describes that information nor explains how it would be relevant a fifth attempt to plead valid claims. Considering that failure, the Court should deny leave to amend. "A plaintiff may not in substance say 'trust me,' and thereby gain a license for further amendment when prior opportunity to amend has been given." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (affirming denial of leave to amend when plaintiff represented that it had additional facts to cure complaint deficiencies "but never proffered these facts to the court").

## III. CONCLUSION

The Court grant the motion and dismiss the case without leave to amend.

Dated: January 27, 2021                Respectfully submitted,

**PERKOWSKI LEGAL, PC**

By:   /s/ Peter Perkowski
      Peter E. Perkowski

Attorneys for Defendants
Okularity, Inc. and Jon Nicolini

Dated: January 27, 2021                **ONE LLP**

By:   /s/ Joanna Ardalan
      David Quinto
      Peter Afrasiabi
      Joanna Ardalan

Attorneys for Defendants BackGrid USA, Inc., Splash News and Picture Agency, LLC, and Xposure Photo Agency, Inc.