Peter R. Afrasiabi (Bar No. 193336)
pafrasiabi@onellp.com
**ONE LLP**
4000 MacArthur Boulevard
Each Tower, Suite 500
Newport Beach, CA 92660
Telephone:   (949) 502-2870
Facsimile:   (949) 258-5081

David Quinto (Bar No. 106232)
Joanna Ardalan (Bar No. 285384)
jardalan@onellp.com
**ONE LLP**
9301 Wilshire Boulevard
Penthouse Suite
Beverly Hills, CA 90210
Telephone:   (310) 866-5157
Facsimile:   (310) 943-2085

Attorneys for Defendants and
Counterclaimants Backgrid USA, Inc.,
Splash News and Picture Agency, LLC, and
Xposure Photo Agency, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTTECH MEDIA GROUP LLC,<br><br>Plaintiffs,<br><br>v.<br><br>OKULARITY, INC.; JON NICOLINI; BACKGRID USA, INC.; SPLASH NEWS AND PICTURE AGENCY, LLC; AND XPOSURE PHOTO AGENCY, INC.<br><br>Defendants. | Case No.: 2:20-cv-06298 JWH (Ex)<br>Hon. John W. Holcomb<br><br>**JOINT REPLY TO ORDER TO SHOW CAUSE RE SANCTIONS UNDER RULE 11(c)(3)** |

---

**REPLY TO PLAINTIFF'S, TAULER SMITH LLP AND TAULER'S RESPONSE TO OSC**

1

## **<u>TABLE OF CONTENTS</u>**

2

I.   INTRODUCTION ...............................................................................1

II.  MR. TAULER'S DECLARATION AND ATTACHMENTS PROVIDE NO
     EVIDENTIARY SUPPORT FOR HIS ALLEGATION THAT MR.
     NICOLINI DID NOT REVIEW FOR FAIR USE ............................3

III. MR. TAULER HAS NO EVIDENTIARY SUPPORT FOR HIS
     ALLEGATION THAT THE PHOTO AGENCIES DO NOT OWN THE
     COPYRIGHTS TO THE WORKS AT ISSUE .................................13

IV.  ENTTECH'S SUBSEQUENT AMENDMENTS TO THE COMPLAINT DO
     NOT AVOID RULE 11 SANCTIONS ............................................14

V.   DEFENDANTS MOTION IS NOT A "THINLY VEILED DISCOVERY
     DEVICE" AS AT LEAST THE DEFENDANTS' DEPOSITION EFFORTS
     HAVE BEEN LIMITED TO THE RULE 11 INQUIRY ................14

VI.  CONCLUSION ................................................................................14

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

**REPLY TO PLAINTIFF'S, TAULER SMITH LLP AND TAULER'S RESPONSE TO OSC**

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Cooter & Gell v. Hartmarx,*
    496 U.S. 384 (1990) ........................................................................14

*Lenz v Universal Music Corp.,*
    815 F.3d 1145 (9th Cir. 2016) ................................................. 1, 3, 4, 5

*Perfect 10 Inc. v. Amazon.com., Inc.*
    508 F. 3d 1146 (9th Cir. 2007) ..........................................................7

*Townsend v. Holman Consulting Corp.,*
    929 F.2d 1358 (9th Cir. 1990) .........................................................14

**Statutes**

17 U.S.C. § 107 ................................................................................6

17 U.S.C. § 204(a) ...........................................................................13

**Other Authorities**

Fed. R. Civ. P. 11 ................................................................. 2, 3, 5, 14

Fed. R Civ. P. 11(c)(1) ......................................................................14

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY TO PLAINTIFF'S, TAULER SMITH LLP AND TAULER'S RESPONSE TO OSC**

# I.     INTRODUCTION

ENTtech's allegation that Mr. Nicolini did not review the infringements for fair use prior to issuing DMCA notices is wrong and was a product of pure speculation. Remove this allegation from the Complaint, the First Amended Complaint, the Second Amended Complaint, and the Third Amended Complaint, and none of the claims survive. The 512(f) claim would fail on its face because it requires an allegation that Mr. Nicolini had no good faith belief that ENTtech's use was an infringement when he sent the DMCA notices to Instagram. The RICO claim would fail as well because the DMCA notices that ENTtech alleges are part of the "scheme to defraud" would be lawful.  ENTtech had no evidentiary basis for this allegation, but asserting it forced the Photo Agencies and Okularity to spend tens of thousands of dollars defending against ENTtech's rank speculation.

Mr. Tauler's declaration does not reveal any evidentiary basis for the allegation that Mr. Nicolini did not consider fair use.  Despite Mr. Tauler's numerous and extensive opportunities to explain how and why he was supposedly justified in making the allegation, his testimony and the documents themselves confirm that it is based on nothing more than his own baseless suspicion. Mr. Tauler's and his associate's Westlaw History revealed nothing about Mr. Nicolini in particular, except for a 2012 declaration, which Mr. Tauler recognized was attested to long before *Lenz v Universal Music Corp.,* 815 F.3d 1145 (9th Cir. 2016) ("*Lenz*"), the decision that made clear that a fair use review is required before issuing a DMCA notice. And the declaration related to different software, a different company, and did not describe scanning a social media site, but a BitTorrent peer-to-peer network; it did show however that human beings reviewed every potential infringement flagged by the software. Excerpts of Mr. Nicolini's and Mr. Ginsburg's deposition transcript do not reveal anything Mr. Tauler learned before filing the complaints; their depositions were purely discovery and unhelpful to Mr. Tauler anyway.  Mr. Nicolini testified that he performed an adequate fair use analysis,

1

**REPLY TO PLAINTIFF'S, TAULER SMITH LLP AND TAULER'S RESPONSE TO OSC**

1    something which Mr. Tauler contends "any idiot" can perform.  As Mr. Nicolini

2    explained at his deposition, no notice would be sent without his "direct intervention"

3    and he explained that he personally reviews the infringements because it is "the most

4    reliable way of matching." (Nicolini Depo., 15:13-22:01.) And screenshots of a

5    Tumblr blog post and a magazine article attached to Mr. Tauler's declaration do not

6    discuss Mr. Nicolini's review of fair use and are not helpful to Mr. Tauler.  In short,

7    nothing in Tauler's pre-suit investigation provided to the Court, or developed since,

8    justifies the allegations, as none of that pre-suit investigation informed Mr. Tauler of

9    Mr. Nicolini's actual practice in reviewing and submitting DMCA takedown notices

10   in this case (or any other case).

11        In the end, Mr. Tauler seems to rest the adequacy of his pre-suit investigation

12   on his own beliefs: he believes that Okularity's software is fully automated and that

13   DMCA takedowns are automatically submitted, and—as he testified in deposition—

14   he simply does not believe Mr. Nicolini did any fair-use analysis "at all."  But

15   beliefs, no matter how strongly held, are not adequate under Rule 11, especially

16   when contradicted by facts that were available, revealed, and provided to Tauler

17   before filing the offending pleadings.

18        Mr. Tauler has been given ample opportunity to address his Rule 11 problem:

19   He was told in a Rule 11 letter that this allegation was wrong; he was given a copy

20   of the Rule 11 motion 21 days before filing; and, he was warned in the Court's OSC

21   re Sanctions. Instead of explaining his basis for his allegations or dismissing the

22   claims with prejudice, he filed a Third Amended Complaint, which included the

23   same problematic allegations, after which he had been given another two

24   opportunities to file a response to the OSC. For all of this time he has maintained

25   that he had an evidentiary basis, but after a full examination of his declaration, it is

26   clear he did not and does not now.

27

28

2

**REPLY TO PLAINTIFF'S, TAULER SMITH LLP AND TAULER'S RESPONSE TO OSC**

## II.   MR. TAULER'S DECLARATION AND ATTACHMENTS PROVIDE NO EVIDENTIARY SUPPORT FOR HIS ALLEGATION THAT MR. NICOLINI DID NOT REVIEW FOR FAIR USE

Despite being told by Mr. Nicolini that he *had reviewed* each infringement on the ENTtech Instagram account for fair use before issuing a DMCA takedown notice, Mr. Tauler continues to contend that Mr. Nicolini had not done so.  (Nicolini Decl., ¶¶ 6, 7 (Dkt. 39-7), ¶ 3 (Dkt. 67-3), Ardalan Decl., Ex. A, *e.g.*, 94:16-18 (explaining he reviews each infringement for fair use), Complaint ¶¶ 40, 41, FAC ¶¶ 40, 41, SAC ¶¶ 40, 41, TAC ¶¶ 40, 41, 53.) Mr. Tauler's declaration contains the universe of his investigation with respect to the allegation regarding Mr. Nicolini's failure to review fair use, as confirmed by his deposition. (Deposition of Robert Tauler ("Tauler Depo") lodged concurrently (*passim*.)) The declaration confirms he had no evidentiary basis supporting this theory as required by Rule 11.

### *Mr. Tauler's Westlaw History (Tauler Decl., Exhibit A)*

Mr. Tauler's Westlaw research reveals he researched the litigation history of Okularity, Backgrid, Paper Magazine (an ENTtech property), and Splash, as well as other cases relating to the unauthorized practice of law, and the *Lenz* decision. At deposition, Mr. Tauler was asked to explain how each of his searches, or the documents they found, informed him that Mr. Nicolini failed to review the infringements for fair use.  Mr. Tauler confirmed that they do not. (Tauler Depo., 8:21- 21:17, 34:23-37:01, 43: 15-50:10, 66:18-72:08, 83:01-16, 86:15-88:06.)  At best, he explained that he found a declaration of Mr. Nicolini, which is attached to his declaration as Exhibit B and discussed in detail below.  He also explained that one exhibit revealed a demand letter written by Mr. Perkowski, Okularity's lawyer, that contained the same fair use statement as was used in Mr. Nicolini's DMCA notices, which he ultimately concluded was not a "direct correlation between what Mr. Nicolini did in June of 2020 and the letter his confederate wrote for Odell Beckman in 2018." (Tauler Depo. 10:10-11:23, 13:12-18) He also concluded that

**REPLY TO PLAINTIFF'S, TAULER SMITH LLP AND TAULER'S RESPONSE TO OSC**

1  one need not be a lawyer to perform a fair use analysis. [1] (Tauler Depo., 40:08-13)

2  Mr. Tauler's Westlaw research did not provide an evidentiary basis for his

3  contention that Mr. Nicolini did not review fair use.

4  ### Mr. Nicolini's 2012 Declaration on Behalf of Copyright Enforcement Group

5  ### (Tauler Decl., Exhibit B)

6  Mr. Tauler acknowledges that this declaration was written in 2012, years

7  before the *Lenz* decision was published, a decision which puts copyright holders and

8  agents on notice that they should review for fair use prior to issuing DMCA notices.

9  Mr. Tauler contends that this declaration was helpful not because it informed him

10 whether Mr. Nicolini preformed the analysis, but that it informed him of Mr.

11 Nicolini's professional background, that of a software developer, not a person

12 trained to analyze fair use. (Tauler Depo., 38:2-42:5 (explaining that the declaration

13 is helpful for Nicolini's background and that he has no legal training); *cf* Tauler

14 Depo 18:16-19:9 (acknowledging that a technological background "absolutely

15 [does] not preclude one from being able to perform fair use analysis") Mr. Tauler

16 contends that the fact Mr. Nicolini "was a CTO [Chief Technology Officer], and his

17 only responsibilities were to determine what photos match using software" in 2012

18 for a different company somehow meant that Mr. Nicolini could not or did not

19 perform a fair use analysis in 2020.

20 When asked why Mr. Tauler believed Mr. Nicolini had no legal training he

21 did not have a basis for this belief either. (Tauler Depo., 42:20-43:14 (Tauler

22 explains his pre-suit filing basis for believing Nicolini has no legal training is

23 because if he had he would have put it on his website.) Curiously, while Mr. Tauler

24 claims Mr. Nicolini's software background precludes him from doing a fair use

25 analysis, Mr. Tauler testified "[a]ny idiot can do a fair use analysis," which suggests

26

27

---

28 [1] The Court acknowledged that non-lawyers may engage in protected prelitigation activity, such as issuing DMCA notices. (Dkt. 40.)

4

1   that even Mr. Tauler does not believe that special legal training is needed to perform

2   such an analysis.

3        The 2012 declaration, which is on behalf of Copyright Enforcement Group, is

4   for a different company, relates to a different software that reviews for different

5   types of infringement (motion picture instead of photographs), with different clients

6   (production studios and videographers instead of photographers), which reviewed

7   infringements on different platforms (peer-to-peer BitTorrent networks instead of

8   social media sites). *See* Tauler Decl., Ex. B. There is no basis to assume that

9   anything in the 2012 declaration for Copyright Enforcement Group has any bearing

10  on the practices of Okularity today.

11       Significantly, the 2012 declaration even acknowledges that ***a person*** reviews

12  the infringement prior to any action undertaken, which Mr. Tauler knows was not

13  required back in 2012. (Tauler Decl., Ex. B, ¶ 28 ("This new download is viewed by

14  a person to confirm that it is a copy of at least a substantial portion of the Plaintiff's

15  motion picture."); Tauler Depo, 37:20-38:10 (acknowledging that the declaration

16  was written years before the *Lenz* decision issued).

17       The 2012 declaration provides no evidentiary basis for Tauler's allegation that

18  Mr. Nicolini did not review fair use. While it describes Mr. Nicolini's technological

19  background, such a background does not preclude him from being able to review for

20  fair use and has no bearing on whether he in fact did review fair use in good faith in

21  2020.

22  ***Selected Portions of Mr. Nicolini's Deposition (Tauler Decl., Exhibit C)***

23       As a threshold matter, the deposition excerpts attached as Exhibit C relate not

24  to what Mr. Tauler knew or did not know before filing the First Amended

25  Complaint.  The deposition transcript demonstrates only Mr. Tauler's post-

26  complaint discovery efforts on the issue of whether Mr. Nicolini engaged in fair use

27  analysis before sending the notices, which is not useful to him in the Rule 11

28

**REPLY TO PLAINTIFF'S, TAULER SMITH LLP AND TAULER'S RESPONSE TO OSC**

1  context.  This deposition therefore cannot exonerate Tauler; it can and does,

2  however, confirm that Tauler has no evidentiary basis for ENTtech's allegations.

3       While Mr. Tauler admonishes Mr. Nicolini for not being able to recite the

4  statutory fair use factors, such a recitation is not a requirement to be able to do a

5  good faith fair use review. When asked to perform a fair use analysis on an ENTtech

6  infringement, Mr. Nicolini testified that the infringement was not fair use because it

7  had "Minimal commentary. The heart of the photo is there. Zendaya. The whole

8  photo was used. It's an exact copy of the photograph. And it's on a – it's on a[n]

9  Instagram account used to make money." (Tauler Decl., Ex. C, 58:18-23.)  Mr.

10  Nicolini's fair use analysis addresses each of the factors delineated in 17 U.S.C.

11  § 107.  He addresses the first factor, the purpose and character of the use, when he

12  explains there is minimal commentary on an exact copy of the photograph, which

13  then would preclude the use as having a new message or meaning. He addresses the

14  second factor, the nature of the copyrighted work in that underlying work is a

15  photograph. He addresses the third factor, the amount used, "the whole photo was

16  used" and the substantiality of the portion used "the heart of the photo is there[,]

17  Zendaya," who is the subject matter of the photograph. Finally, he addresses the

18  effect on the potential market for or the value of the copyrighted work when he

19  testifies "it's on a[n] Instagram account used to make money." That is a good faith

20  fair use analysis.[2]

21

22  _____

23  [2] Mr. Tauler admonishes Mr. Nicolini for not being able to recall the name of a
   judicial opinion relating to fair use. But recalling the name of a judicial opinion is not
24  indicative of whether Mr. Nicolini performed the analysis. Even so, Mr. Tauler omits
   relevant testimony on this point. When asked about what legal research he has done,
25  Mr. Nicolini testified that he has "read some newsletters" (Ardalan Decl., Ex. A.,
   13:10) and that "The U.S. Copyright Office has a great repository about fair use. And
26  they offer various summaries." (Nicolini Depo., 13:18-20; *See* Request for Judicial
27  Notice (filed concurrently.)  Indeed, the Fair Use Index on the Copyright Office
   website is an excellent resource for lay people (and lawyers) to learn about fair use as
28

**REPLY TO PLAINTIFF'S, TAULER SMITH LLP AND TAULER'S RESPONSE TO OSC**

1    Mr. Tauler contends that Mr. Nicolini's analysis is "dead wrong," citing to

2    *Perfect 10 Inc. v. Amazon.com., Inc.* 508 F. 3d 1146, 1164 (9th Cir. 2007), because,

3    he claims it stands for the proposition that "use of images was a fair use primarily

4    based on the transformative nature of a search engine platform." (Response at 9.)

5    But that case involved Google's indexing of thumbnails, which were transformative

6    because there is a great public benefit in being able to use a Google Image Search

7    for thumbnails.  That is very different from ENTtech's use of the photographs on

8    Instagram in full scale, and used to generate interest and traffic to its site and brand.

9    In any event, that Mr. Tauler would conclude differently than Mr. Nicolini when

10   conducting his own fair-use analysis is both unsurprising and legally irrelevant here,

11   where the question is whether fair use was considered at all for purposes of forming

12   a "good faith belief" as to infringement.  Tauler's argument confirms that it was.

13   Surprisingly, while the allegation that Mr. Nicolini did not review for fair use

14   is the very heart of the claims against the Defendants—and, if false, would require

15   dismissal of the DMCA claim and the RICO claim—***Mr. Tauler admits that he has***

16   ***not reviewed the infringements for fair use himself and therefore he cannot***

17   ***credibly argue that Okularity's analysis was deficient***. (Tauler Depo., 59:03-05

18   ("Did you do your own fair use analysis of the images that are at issue in this case?

19   A. I don't think so. I don't recall."); Tauler Depo., 61:10-15 ("So is it fair to say that

20   you did fair use analysis on some of them, but not necessarily all the photos that are

21   at issue here? A. I don't think I did a complete fair use analysis on any of them, quite

22   frankly, because that wasn't an issue at the time.").)  Such an admission corroborates

23   a lack of factual basis in bringing ENTtech's claims. After all, had Mr. Tauler

24   completed a fair use analysis which informed him that the infringement was not fair

25

26

27   ————————————————

28   it indexes cases by Circuit and provides helpful layperson-friendly summaries on each
     of the cases.

7

**REPLY TO PLAINTIFF'S, TAULER SMITH LLP AND TAULER'S RESPONSE TO OSC**

1  use, certainly he would need something more to suggest to him that no review was
2  actually completed.

3       The irony of Mr. Tauler's admonishment of Mr. Nicolini for his fair use
4  review is that at least Mr. Nicolini's review was legally correct. At deposition, Mr.
5  Tauler was both unable to correctly state the fair use factors and was unable to
6  complete a meaningful fair use review.  (Tauler Depo., 117:14-124:12 (showing
7  Tauler's inability and unwillingness to review the infringement for fair use.)

8       *A 'BooksAndCatsLover' Tumblr Blog Post (Tauler Decl., Ex. D)*

9       The BooksandCatsLover Tumblr Blog post does not inform Mr. Tauler that
10  Mr. Nicolini did not review for fair use. Mr. Tauler contends that it does because "it
11  says that he used his software to automatically do the takedowns." (Tauler depo.,
12  142:11-12.) But the blog post does not say that. At best for Mr. Tauler, it complains
13  about ***receiving notifications from Tumblr***, another social media platform,
14  regarding its receipt of DMCA notices sent by Mr. Nicolini.  However, Mr. Tauler
15  himself acknowledges that one could use software and perform a fair use analysis
16  and that the only reason he contends Mr. Nicolini did not perform the analysis is that
17  he is a "software person."

18      2 Q. What precludes Nicolini reviewing for fair use
19      3 and then having a software send the notice?
    4 A. You'd have to ask him.
20      5 Q. Well, I'm asking you. What information do you
21      6 have that says or that suggests that using software
    7 precludes one from reviewing fair use initially?
22      8 A. I never said that.
23      9 Q. Okay. So what prevents -- what information do
    10 you have that says that Mr. Nicolini could not have
24      11 reviewed fair use and then sent it to the software to
25      12 issue the notice?
    13 A. I mean, I could just -- you know, I almost
26      14 want to quote a complaint, "I hereby incorporate the
27      15 foregoing paragraphs by reference," but, you know, for
    16 all the reasons I've stated.
28      17 He doesn't know how to do it. He's a software

**REPLY TO PLAINTIFF'S, TAULER SMITH LLP AND TAULER'S RESPONSE TO OSC**

18 person. He has no legal training. He doesn't
19 understand the elements.
20 Q. Is that it? Do you have any other
21 information?
22 A. Do you need more?
23 Q. Yes. I need more. If you have more, I'd like
24 to hear more.
25 A. Yeah. I think that about covers it.
(Tauler Depo., 144:02-25)

### *The InStyle Magazine Article Does Not Inform Mr. Tauler that Mr. Nicolini Did Not Perform a Fair Use Analysis (Tauler Decl., Exhibit E)*

The InStyle article provides little information about Okularity.  Mr. Tauler contends it was helpful because the article mentioned that Backgrid "outsource[ed]" its copyright enforcement efforts to Okularity. This cannot be an evidentiary basis to contend that Mr. Nicolini did not review for fair use. Mr. Tauler contends that by outsourcing, it must mean that the parties are not communicating about the market value of the works.  Even assuming that this logical leap is true, Mr. Tauler testified that even he was able to figure out the market value of the works based on his own internet research. (Tauler Depo. 56:16-23.) Therefore, this article does not provide any information helpful to Mr. Tauler.

### *The Okularity Website (Tauler Decl., Exhibit F)*

Mr. Tauler contends that the Okularity website assists him in determining that Mr. Nicolini did not review for fair use because "[i]t describes only the software deployed, and it doesn't describe in any fashion the fact that they complied with fair use."  (Tauler Depo., 152:11-13.)  This omission from the "About Us" section cannot provide Mr. Tauler with an evidentiary basis to say that no fair use analysis was performed as there is no requirement that Mr. Nicolini make this disclosure. Mr. Tauler again contends that because Okularity is not a law firm it should not be able to do a fair use analysis, but that contention runs contrary to this Court's earlier order and Mr. Tauler's own testimony that "any idiot" could perform the analysis.

9

1        ***Tauler Smith LLP Timesheets (Tauler Decl., Exhibit G)***

2              Mr. Tauler submits his firm's timesheets to demonstrate that attorneys and

3    paralegals spent a total of 58.3 hours on this case prior to filing the complaint.  But

4    these timesheets do not demonstrate that Mr. Tauler had a factual basis for claiming

5    that Mr. Nicolini did not review fair use.  Indeed, a majority of the firm's time was

6    dedicated to tasks unrelated to research regarding Mr. Nicolini, and to the extent it

7    was, Mr. Tauler has not provided any other information demonstrating an

8    evidentiary basis for his allegations about Mr. Nicolini's fair use analysis.

9        ***Tauler Smith Associate's Westlaw Search Records (Tauler Decl., Exhibit H)***

10             Mr. Tauler submitted records from his associate lawyer to support his

11   contention that he had an evidentiary basis to contend that Mr. Nicolini did not

12   review fair use. Like Mr. Tauler's records, these records reveal nothing that is

13   helpful to this inquiry. (Tauler Depo., 100:20-115:02.) Mr. Tauler argued that

14   research on whether a meme is fair use was helpful because, he contends, a meme is

15   fair use, and therefore Mr. Nicolini did not review fair use. But this argument is

16   circular and self-serving; it does not address what Mr. Nicolini actually reviewed

17   before sending notices and does not give Mr. Tauler a factual basis to claim Mr.

18   Nicolini did not review fair use, especially when Mr. Tauler contends that he has not

19   done his own fair use analysis.

20       ***Excerpts of Mr. Ginsburg's Deposition Transcript (Tauler Decl., Exhibit I)***

21             Mr. Tauler contends Mr. Ginsburg's deposition is helpful because it

22   demonstrates that "Nicolini never communicated with the [Photo Agencies] about

23   the value of the images." (ENTtech Response to OSC at 9 (Dkt. 77).)  Problematic to

24   this position is that Mr. Ginsburg was not testifying on behalf of each of the Photo

25   Agencies as a person most knowledgeable, he was there to testify as to his personal

26   knowledge about his testimony presented in his declaration. And Mr. Ginsburg did

27   not testify that he has not communicated with Mr. Nicolini about the value of the

28   photographs. (*See* Tauler Decl., Ex. I.) Mr. Tauler did not close the gap; there may

**REPLY TO PLAINTIFF'S, TAULER SMITH LLP AND TAULER'S RESPONSE TO OSC**

1  be other ways for Mr. Nicolini to access information about the value of the

2  photographs.[3]

3                  ***Mr. Tauler's Gripe with "Automated Software" (Tauler Decl., ¶ 10)***

4          Mr. Tauler contends again and again that Mr. Nicolini's software is

5  "automated" to support his contention that no fair use analysis had been completed.

6  Mr. Nicolini has stated during his initial pre-litigation phone calls, in his declaration,

7  and in his deposition that the software is ***not*** fully automated, yet Mr. Tauler

8  continues to contend that it is, without evidentiary basis. After all, even the

9  declaration of Mr. Nicolini from 2012 explains the Bit-Torrent software is ***not*** fully

10  automated.  Mr. Nicolini testified that the current software is not fully automated,

11  but Mr. Tauler did not attach those pages of his deposition testimony.  (Ardalan

12  Decl., Ex. A, 15:13-22:01.)

13          Mr. Tauler does not even believe that using software precludes one from

14  conducting a fair use analysis. (Tauler Depo., 144:02-144:25.) When asked what

15  prevents Mr. Nicolini from reviewing for fair use and then using software to

16  generate the notice, Mr. Tauler acknowledged that the only reason was that Mr.

17  Nicolini lacked the legal training and is a "software person." *Id.* Problematic to this

18  position is that Mr. Tauler only speculates that Mr. Nicolini does not have any legal

19  training to begin with.  (Tauler Depo., 42:20-43:14 (Tauler explains his pre-suit

20  filing basis for believing Nicolini has no legal training is because if he had he would

21  have put it on his website).)

22  / / /

23  / / /

24  ─────────────────────

25  [3] Mr. Tauler represents that Mr. Ginsburg testified as to the value of an infringement in this case.  That is not what Mr. Ginsburg testified. Mr. Ginsburg actually explained that he is not

26  a sales manager and that it would depend on a lot of variables. "There is more to it than what you just said. There is a lot of variables. How long does he want it? Does he want it

27  embeddable? Is he going to put it on his Facebook? [] [A]s I say, there is a lot of variables involved in licensing images." (Tauler Decl., Ex. I, 54:12-23.) Moreover, this is one of many

28  examples where Mr. Tauler deposed Mr. Ginsburg on issues well outside the scope of his declaration, in violation of this Court's order.

**REPLY TO PLAINTIFF'S, TAULER SMITH LLP AND TAULER'S RESPONSE TO OSC**

1    ***Phone Calls with Mr. Nicolini Prior to Filing Suit  (Tauler Decl., ¶ 10)***

2         Curiously, at Mr. Nicolini's deposition Mr. Tauler did not ask Mr. Nicolini

3    about the phone call in which he informed Mr. Tauler that he reviewed each work

4    for fair use prior to issuing a DMCA notice. Mr. Tauler knew that Mr. Nicolini

5    contended that he had because he attested as much in prior briefing.   (Nicolini

6    Decl., ¶¶ 6, 7 (Dkt. 39-7), ¶ 3 (Dkt. 67-3).) When Mr. Tauler was asked about the

7    conversation, he contended that there were two conversations. The first call was

8    about settlement which he attests did not include a discussion about fair use. (Tauler

9    Depo., 28:11-29:01.) Mr. Tauler testified that on the second call, he could not

10   remember whether he asked Mr. Nicolini if he or someone else reviewed an

11   infringement for fair use prior to issuing a notice. (Tauler Depo. 34:3-5) ("Q. Did

12   you ever ask him if a human reviews the aggregated infringements? A. I don't

13   remember").   In fact, he has no recollection of fair use coming up at all. (Tauler

14   Depo., 29:16-19 (Q: "So you discussed the software was automated, but you have no

15   recollection of fair use coming up either way? A: "Well, correct. Yeah.")) Minutes

16   later, Mr. Tauler testified that he had asked whether Mr. Nicolini reviewed for fair

17   use but that Mr. Nicolini did not respond to his question. (Tauler Depo., 30:17-

18   31:05.)

19        Giving Mr. Tauler the benefit of the doubt, he had a hazy memory of the

20   conversation, which therefore could not inform him that Mr. Nicolini did not review

21   for fair use, especially when Mr. Nicolini has testified that he informed Mr. Tauler

22   during a call that he had reviewed each infringement for fair use.[4]

23   / / /

24   / / /

25

26   _____

27   [4] It is troubling that despite testifying that he had no recollection of fair use coming up either
     way in both conversations, Mr. Tauler nevertheless confidently alleged in the Third
28   Amended Complaint that "Nicolini did not mention any purported analysis by himself (or by
     anyone else) concerning [] whether the use of the image on social media was allowed by the
     "fair use" doctrine." (Third Amended Complaint, ¶15 (Dkt. 57.)

**REPLY TO PLAINTIFF'S, TAULER SMITH LLP AND TAULER'S RESPONSE TO OSC**

**III.   MR. TAULER HAS NO EVIDENTIARY SUPPORT FOR HIS ALLEGATION THAT THE PHOTO AGENCIES DO NOT OWN THE COPYRIGHTS TO THE WORKS AT ISSUE**

Mr. Tauler does not substantively respond to the issue of whether he had or has a basis to contend that the Photo Agencies do not own the rights to the works at issue. This argument was raised in Defendants' Joint Memorandum Re Rule 11 Sanctions (Dkt. 63) which explained that additional, frivolous allegations were made in the Third Amended Complaint. Specifically, ENTtech alleges that Defendants do not have exclusive rights in the Images because some (though not all) of the Images were posted on Instagram and "widely" across the Internet. (TAC ¶ 50; *see also* TAC ¶ 15, ¶ 40 (Defendants' "misconduct also includes falsely certifying in DMCA notices that the [Photo Agencies] possess exclusive rights, when they purposely do not know (because, they have not inquired) whether any such rights exist."); ¶ 51 (DMCA notices were fraudulent "because nobody made any inquiry to determine whether [the Photo Agencies] owned any 'exclusive rights[s]'").) But these allegations are both factually and legally unsupported: there are no facts alleged that would, if accepted as true, cast doubt on the Photo Agencies' copyright ownership; and even if Images were posted on Instagram and "widely" across the Internet, that alone does not undermine the Photo Agencies' copyright infringement claims against ENTtech.

The Court gave ENTtech the opportunity to amend its RICO claim because ENTtech mentioned the lack of rights for the first time in its briefing in opposition to Defendants' motion to dismiss, and, as such, this unsupported allegation has directly caused Defendants to incur more fees on another motion to dismiss because of this frivolous position. (Dkt. 40 at 6.) Remarkably, Mr. Tauler has not explained his basis for these legally frivolous allegations (*see* 17 U.S.C. § 204(a) ("A transfer of copyright ownership" is not valid unless in writing signed by owner of the rights conveyed.)), and Tauler continues to rely on them in opposition to the Motion to

13

Dismiss the Third Amended Complaint, even though these baseless allegations were raised as a potential Rule 11 issue both in Docket 63 and at the Court's December 14, 2020 Status Conference.

## IV.   ENTTECH'S SUBSEQUENT AMENDMENTS TO THE COMPLAINT DO NOT AVOID RULE 11 SANCTIONS

"The central purpose of Rule 11 is to deter baseless filings." *Cooter & Gell v. Hartmarx*, 496 U.S. 384, 393 (1990). Sanctions are appropriate—indeed, "must be imposed"—when the paper is either frivolous or filed for an improper purpose. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). The filing of a subsequent complaint does not avoid Rule 11 sanctions, especially as Mr. Tauler continues to allege unsupported contentions about Mr. Nicolini's fair use analysis and about the Photo Agencies apparent lack of ownership.

## V.   DEFENDANTS MOTION IS NOT A "THINLY VEILED DISCOVERY DEVICE" AS AT LEAST THE DEFENDANTS' DEPOSITION EFFORTS HAVE BEEN LIMITED TO THE RULE 11 INQUIRY

Defendants have been careful to follow the Court's order and limit the scope of their deposition of Mr. Tauler to the testimony provided in Mr. Tauler's declaration.  Especially in light of the seriousness of this OSC re Sanctions, Defendants lodge Mr. Tauler's entire deposition transcript to the Court so that it can appreciate that Defendants are not cherry-picking testimony to suit their position or misusing the deposition for an improper purpose.

## VI.   CONCLUSION

The Court should sanction both Robert Tauler and Tauler Smith LLP. See Fed. R Civ. P. 11(c)(1). The sanctions should include striking the TAC and dismissing ENTtech's claims in their entirety, with prejudice. In addition, because the sanctionable conduct has been long-standing and repeated, despite notice, monetary sanctions should be imposed to reimburse Defendants for their costs and attorney fees in defending against the baseless allegations.

14

**REPLY TO PLAINTIFF'S, TAULER SMITH LLP AND TAULER'S RESPONSE TO OSC**

1    Dated:  January 27, 2021                **ONE LLP**

2                                            By:  /s/ Joanna Ardalan

3                                                 Joanna Ardalan
                                                  Peter R. Afrasiabi
4

5                                                 Attorneys for Defendants and
                                                  Counterclaimants
6                                                 Backgrid USA, Inc.; Splash News and
                                                  Picture Agency, LLC, Xposure Photo
7                                                 Agency, Inc.

8
     Dated:  January 27, 2021                **PERKOWSKI LEGAL, PC**
9
                                             By:  /s/ Peter S. Perkowski
10                                                Peter S. Perkowski

11
                                                  Attorneys for Defendants
12                                                Okularity, Inc. and Jon Nicolini

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

15

**REPLY TO PLAINTIFF'S, TAULER SMITH LLP AND TAULER'S RESPONSE TO OSC**