**O**

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

ENTTECH MEDIA GROUP LLC,

        Plaintiff,

        v.

OKULARITY, INC.;
JON NICOLINI;
BACKGRID USA, INC.;
SPLASH NEWS AND PICTURE
    AGENCY, LLC; and
XPOSURE PHOTO AGENCY, INC.,

        Defendants.

OKULARITY, INC.;
JON NICOLINI;
BACKGRID USA, INC.;
SPLASH NEWS AND PICTURE
    AGENCY, LLC; and
XPOSURE PHOTO AGENCY, INC.,

        Counterclaimants,

        v.

ENTTECH MEDIA GROUP LLC,

        Counterdefendant.

Case No. 2:20-cv-06298-JWH-Ex

**MEMORANDUM OPINION AND ORDER REGARDING:**

**(1) DEFENDANTS' MOTIONS TO DISMISS THE THIRD AMENDED COMPLAINT [ECF Nos. 65 & 66];**

**(2) DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE [ECF No. 39]; and**

**(3) ORDER TO SHOW CAUSE RE SANCTIONS UNDER RULE 11(c)(3) OF THE FEDERAL RULES OF CIVIL PROCEDURE [ECF No. 54]**

# I.  **INTRODUCTION**

This copyright case concerns an alleged unlawful scheme devised by Defendants Okularity, Inc.; Jon Nicolini; Splash News and Picture Agency, LLC; Xposure Photo Agency, Inc.; and BackGrid USA, Inc.[1]  Defendants are the copyright owners, or agents of the copyright owners, of the works at issue— photographs of celebrities.  Plaintiff ENTTech Media LLC accuses Defendants of manipulating the takedown notice procedure of the Digital Millennium Copyright Act (the "DMCA"), *see* 17 U.S.C. § 512(c), in order to disable monetized social media accounts and then to demand extortionate sums from the social media account holders to have their accounts restored.  ENTTech claims that it was a victim of Defendants' conspiracy.  According to ENTTech, Defendants knowingly misrepresented in their takedown notices that they had exclusive rights in the allegedly infringing material and also knowingly misrepresented that they considered the possibility of fair use before issuing the takedown notices, in violation of 17 U.S.C. § 512(f).  ENTTech further alleges that Defendants' scheme constitutes a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968.

Before the Court are three separate but related matters.  The first two are Defendants' motions:  (1) for sanctions against ENTTech and its counsel, Robert Tauler and his firm, for violation of Rule 11 of the Federal Rules of Civil Procedure,[2] and (2) to dismiss ENTTech's Third Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure[3] (jointly, the

---

[1]     Defendant Splash News and Picture Agency, LLC, together with Xposure Photo Agency, Inc., and BackGrid USA, Inc., are collectively referred to herein as the "Photo Agencies."

[2]     Defs.' Joint Mot. for Sanctions (including its attachments) (the "Motion for Sanctions") [ECF No. 39].

[3]     Mot. of the Photo Agencies to Dismiss the Third Amend. Compl. [ECF No. 65]; Mot. of Defs. Jon Nicolini and Okularity, Inc., to Dismiss the Third

"<u>Motions</u>").  The third matter is the Court's Order to Show Cause regarding potential sanctions against ENTTech and its counsel under Rule 11(c)(3).[4]  The Court conducted a hearing on all of these matters on February 11, 2021.

After considering the voluminous papers filed in support and in opposition to the Motions and the OSC, and the arguments of counsel at the hearing, the Court (1) **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss; (2) **DENIES** Defendants' Motion for Sanctions; and (3) **DISCHARGES** the OSC.  The Court explains its ruling below.

## II. <u>BACKGROUND</u>

An extensive procedural history precedes the Motions and the OSC.

ENTTech filed its original complaint on July 15, 2020.[5]  On August 5, 2020, counsel for Defendants notified ENTTech's counsel, Robert Tauler, that Defendants were contemplating several motions, including a motion to dismiss under Rule 12(b)(6) and a motion for sanctions under Rule 11.[6]  Among other grievances, Defendants objected that the factual contentions in ENTTech's Complaint lacked the requisite legal and evidentiary support—in violation of Rule 11—particularly ENTTech's allegations regarding Defendants' abuse of the DMCA takedown notice procedures.[7]  Defendants demanded that

---

Amend. Compl. [ECF No. 66]; and Defs.' Joint Mem. of P. & A. in Supp. of Defs.' Mots. to Dismiss the Third Amend. Compl. [ECF No. 67] (jointly, the "<u>Motion to Dismiss</u>").  Unless otherwise indicated, citations herein to the Motion to Dismiss refer to the Joint Memorandum of Points and Authorities filed in support of Defendants' respective motions.

[4]    *See* Order to Show Cause Re Sanctions under Rule 11(c)(3) of the Federal Rules of Civil Procedure (the "<u>OSC</u>") [ECF No. 54].

[5]    *See generally* Compl. [ECF No. 1].  ENTTech asserted the following four claims for relief in its original Complaint:  (1) Violations of the DMCA; (2) Violations of RICO; (3) Intentional Interference with Economic Advantage; and (4) Unfair Competition, Cal. Bus. & Prof. Code § 17200.

[6]    *See* Letter from Peter Perkowski to Robert Tauler (Aug. 5, 2020) [ECF No. 39-13].

[7]    *See id.* at 1 & 3–6.

1  ENTTech withdraw its Complaint.[8]  ENTTech filed its First Amended

2  Complaint five days later.[9]

3       On August 24, 2020, Defendants moved to dismiss ENTTech's FAC for

4  failure to state a claim pursuant to Rule 12(b)(6);[10] ENTTech opposed.[11]  On

5  September 25, 2020, Defendants filed a joint Motion for Rule 11 Sanctions,[12]

6  which ENTTech also opposed.[13]  On October 2, 2020, the Court—the

7  Honorable R. Gary Klausner, presiding—(1) granted Defendants' motion to

8  dismiss the FAC, with leave to amend, with respect to ENTTech's RICO claim;

9  and (2) denied Defendants' motion to dismiss with respect to ENTTech's

10  DMCA claim.[14]  A few days later, the action was transferred to this Court by

11  order of the Chief Judge.[15]  ENTTech filed its Second Amended Complaint on

12  October 16, 2020.[16]  Shortly thereafter, the Photo Agencies filed a Counterclaim

13  against ENTTech with respect to the alleged infringing material that was the

14  target of the DMCA takedown notices.[17]

---

[8]    *See id.* at 1.

[9]    *See* First Amend. Compl. (the "<u>FAC</u>") [ECF No. 23].  ENTTech asserted two claims for relief in its FAC:  (1) Violations of the DMCA; and (2) Violations of RICO.

[10]    Defs.' Mot. to Dismiss the FAC [ECF No. 26]; Mem. in Supp. of Mot. to Dismiss the FAC [ECF No. 27]; Notice of Joinder in Mot. to Dismiss the FAC [ECF No. 28].

[11]    Pl.'s Opp'n to Defs.' Mot. to Dismiss the FAC [ECF No. 35].

[12]    *See* Motion for Sanctions; *see also* Defs.' Reply in Supp. of the Motion for Sanctions (the "<u>Sanctions Reply</u>") [ECF No. 45].

[13]    *See* Opp'n by Pl. ENTTech Media Group LLC, Tauler Smith LP, and Robert Tauler, Esq. to Defs.' Motion for Sanctions (the "<u>Sanctions Opposition</u>") [ECF No. 42].

[14]    *See generally* Order Re: Defs.' Mot. to Dismiss [ECF No. 40].

[15]    *See* Order of the Chief Judge (#20-156) [ECF No. 43].

[16]    Pl.'s Second Amend. Compl. (the "<u>SAC</u>") [ECF No. 46].

[17]    *See generally* Answer to ENTTech's SAC and Counterclaim to SAC by Defs. Backgrid, Splash, and Xposure (the "<u>Counterclaim</u>") [ECF No. 53].

Upon review of ENTTech's SAC and ENTTech's arguments in opposition to the Motion for Sanctions, the Court determined that although the paper that was the subject of that motion (*i.e.*, the FAC) had been superseded, the SAC contained many, if not all, of the challenged allegations.[18]  On October 28, 2020, pursuant to Rule 11(c)(3) of the Federal Rules of Civil Procedure, the Court ordered ENTTech to show cause regarding sanctions under Rule 11.[19]  Specifically, the Court determined that it was "appropriate to give ENTTech one more chance to cure (or otherwise to address in a more robust manner) the apparent infirmities that Defendants raise[d] in their Motion for Sanctions."[20]  The Court, therefore, provided ENTTech with three options: (1) file a notice of withdrawal of the SAC and either a stipulation of dismissal of ENTTech's claims with prejudice or a motion for dismissal of ENTTech's claims with prejudice;[21] (2) file a Third Amended Complaint that cured each of the allegedly offending allegations in the FAC;[22] or (3) file a Memorandum of Points and Authorities, with supporting declarations, explaining why the Court should not issue sanctions and setting forth detailed facts demonstrating ENTTech and ENTTech's counsel's reasonable inquiry regarding each of the allegedly offending allegations in the FAC.[23]

ENTTech elected option two[24] and filed its Third Amended Complaint on November 13, 2020.[25]  Defendants responded to the OSC on November 20,

---

[18]   *See* OSC 4:1–5:2.

[19]   *See id.*

[20]   *Id.* at 4:24–5:2.

[21]   *Id.* at 5:5–15.

[22]   *Id.* at 5:17–20.

[23]   *Id.* at 5:22–6:2.

[24]   *See* Decl. of Robert E. Kohn in Resp. to the OSC [ECF No. 60] ¶ 2.

[25]   *See* Third Amend. Compl. (the "TAC") [ECF No. 57].  ENTTech asserts two claims for relief in its TAC:  (1) Violations of the DMCA; and (2) Violations of RICO.

-5-

2020.[26]  Defendants then requested to cross-examine Mr. Tauler live at the hearing on the OSC, pursuant to this Court's Local Rules,[27] which ENTTech opposed.[28]  Defendants filed the instant Motion to Dismiss on November 30, 2020.  On December 14, 2020, the Court held a status conference regarding Defendants' L.R. 7-8 Request and set a schedule for further briefing in response to the OSC and with respect to Defendants' Motion to Dismiss the TAC.[29] With regard to Defendants' L.R. 7-8 Request, the Court authorized the parties to depose their respective opposing declarants, so long as the scope of each deposition was limited to cross-examination regarding the declarants' testimony in connection with the Motion for Sanctions and the OSC.

Thereafter, the parties timely filed their respective supplemental briefs regarding the OSC[30] as well as their briefs in connection with Defendants' Motion to Dismiss.[31]  On February 11, 2021, the Court conducted a hearing regarding the OSC and the Motions.

---

[26]    *See* Defs.' Joint Mem. of P & A Re the OSC (the "Defs.' OSC Response") [ECF No. 63].

[27]    *See* Defs.' Request to Cross-Examine Robert Tauler Pursuant to L.R. 7-8 (the "L.R. 7-8 Request") [ECF No. 64].

[28]    *See* Pl.'s Obj. to Defs.' L.R. 7-8 Request [ECF No. 68].

[29]    *See* Minutes of Video Hearing Re:  Status Conference [ECF No. 74].

[30]    *See* Pl.'s Resp. to the OSC (the "Pl.'s OSC Response") [ECF No. 77]; Defs.' Joint Reply to the OSC (the "Defs.' OSC Reply") [ECF No. 81]; and Pl.'s Sur-Reply to the OSC (the "Pl.'s Sur-Reply") [ECF No. 82].  Relatedly, on February 9, 2021, Defendant Splash News filed a notice of assignment of its copyrights.  *See* Notice to the Ct. Re Assignment of Splash News and Picture Agency LLC's Copyrights (the "Notice of Assignment") [ECF No. 84]. ENTTech filed objections to the Notice of Assignment the same day.  *See* Pl.'s Objs. to the Notice of Assignment [ECF No. 85].

[31]    *See* Pl.'s Opp'n to the Motion to Dismiss (the "MTD Opposition") [ECF No. 78]; and Defs.' Reply in Supp. of the Motion to Dismiss (the "MTD Reply") [ECF No. 80].

### III.  DISCUSSION

The analysis of Defendants' Motion to Dismiss informs the Court's analysis and conclusion with respect to Defendants' Motion for Sanctions. Accordingly, the Court will address the Motions in that order.

**A.   The Motion to Dismiss**

**1.   Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002).  Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations and footnote omitted).  A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also id.* at 679 (a complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct").

Allegations of fraud, however, must be pleaded with particularity. Fed. R. Civ. P. 9(b). This means that the pleader must "detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (citing Fed. R. Civ. P. 9(b)); *see Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). The heightened pleading standard under Rule 9(b) applies to claims that are "grounded in fraud" or that "sound in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003)).

Furthermore, if the court finds that dismissal of a claim is appropriate, it must also decide whether to grant leave to amend. The Federal Rules of Civil Procedure strongly favor granting leave to amend, *see* Fed. R. Civ. P. 15(a); however, the court has discretion to deny leave if it determines "that the pleading could not possibly be cured by the allegation of other facts," *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

### 2. ENTTech's DMCA Claim

The DMCA imposes liability for misrepresenting that copyright infringement occurred. 17 U.S.C. § 512(f). To state a claim under § 512(f), a plaintiff must allege facts to show that (1) the defendant knowingly and materially misrepresented that copyright infringement occurred; (2) a service provider relied on that misrepresentation; and (3) the plaintiff was injured as a result. *See id.* The "knowingly" prong of the first element is the focus of the parties' arguments.[32]

To satisfy the "knowingly" prong, ENTTech must allege sufficient facts to show that Defendants lacked a subjective good faith belief that the images that

---

[32] *See generally* Motion to Dismiss 20:17–22:21; MTD Reply 8:7–10.

were the subject of the takedown notices were infringing.  *See Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154 (9th Cir. 2016) (citing *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004)).  In this regard, the Ninth Circuit has held that the DMCA "requires consideration of fair use prior to sending a takedown notification . . . ."  *Id.*  In other words, a defendant in a § 512(f) claim cannot maintain that it formed a subjective good faith belief of the plaintiff's copyright infringement if the defendant did not consider fair use. This Court previously held that ENTTech adequately pleaded its DMCA claim[33] based upon ENTTech's allegations that Okularity "automatically generates [and submits] DMCA notices without considering . . . fair use."[34] The Court reasoned that those allegations, if true, were enough to constitute "lack of subjective good faith belief because if Okularity failed to consider fair use, it could not have formed a good faith belief that the images were infringing."[35]

In the instant Motion to Dismiss, Defendants contend that dismissal of the DMCA claim is appropriate for two related reasons.  Defendants' arguments are as follows:

•    In its TAC, ENTTech alleges that the DMCA takedown notices are automatically ***generated***, but ENTTech does not allege that the notices are automatically ***submitted*** (as ENTTech alleged in its previous pleadings). Therefore, the TAC does not support an inference that Okularity's process does not include any infringement or fair use analysis.[36]

---

[33]    *See* Order Re Defs.' Motion to Dismiss 6–8.

[34]    *Id.* at 7 (citing FAC ¶¶ 15, 27, 40, & 37).

[35]    *Id.*

[36]    *See* Motion to Dismiss 20:24–21:8.

- By alleging that "many or all of the DMCA notices contained identical verbatim discussion of infringement and fair use . . .,"[37] ENTTech effectively admits that Okularity "did in fact conduct infringement and fair-use analysis before submitting DMCA takedown notices."[38]  In this regard, each takedown notice contains a multi-paragraph legal analysis of fair use with respect to the allegedly infringing work.[39]  However, the fair-use analysis contained in the takedown notices is identical for each of the allegedly infringing works.[40]

ENTTech's allegation that the DMCA notices contained an analysis of infringement and fair use presents a question of first impression with respect to the standard for pleading a claim under § 512(f).  Is it sufficient for ENTTech to allege that, notwithstanding the takedown notices' explicit and extensive fair-use analysis, Defendants did not ***actually*** or ***sufficiently*** consider fair use before issuing the takedown notices?  At first blush, the fact that the DMCA takedown notices contain fair-use analyses—even if those analyses are identical and *pro forma*—seems to satisfy the requirement to "consider" fair use before issuing a takedown notice.  *See Lenz*, 815 F.3d at 1154.  The presence of the purported fair-use analysis in each takedown notice also distinguishes this case from *Lenz* where the plaintiff alleged that the defendant did not consider fair use at all.  *Cf. id.*

---

[37]  TAC ¶ 15.

[38]  Motion to Dismiss 21:9–21:11; *see also id.* at 21:11–22:21.  Thus, according to Defendants, the Court should disregard ENTTech's conclusory allegation that "Okularity submits these [DMCA takedown] notices without any of the analysis required by the DMCA."  Motion to Dismiss 21:23–25 (quoting TAC ¶ 15).

[39]  *See, e.g.*, Counterclaim, Ex. C [ECF No. 53-13] at ECF p. 4.  Exhibit C to the Counterclaim contains the takedown notices transmitted by Defendants.

[40]  *Compare, e.g., id.* at ECF p. 4, *with id.* at ECF pp. 8, 10, 12, & 14.

Is ENTTech required to allege *additional* facts, in view of the appearance that Defendants considered fair use?[41]  For example, must ENTTech allege evidentiary facts concerning Defendants' analytical process or subjective state of mind (the type of facts which, in most cases, are not available to a plaintiff before discovery is taken)?  Does the *Iqbal/Twombly* plausibility standard require ENTTech to aver its *own* analysis of fair use to support an inference that Defendants merely paid "lip service" to the consideration of fair use?[42]  *Cf. id.* at 1163.  Having considered these questions, the Court concludes that ENTTech's allegations in the TAC are sufficient at this stage of the litigation.

Although *Lenz* involved a motion for summary judgment, that decision is nevertheless instructive with respect to the issue presently before the Court. *Lenz* supports the conclusion that the question of whether a copyright owner formed a subjective good faith belief that an alleged infringer's copying of the work did not constitute fair use is, in most instances, a factual issue that is not appropriate for resolution on a motion to dismiss.  "Because the DMCA requires consideration of fair use prior to sending a takedown notification," the Ninth Circuit held that "a jury must determine whether [the defendant's] actions were sufficient to form a subjective good faith belief about the [allegedly infringing] video's fair use or lack thereof."[43]  *Id.* at 1154.  In response to the

---

[41]     In this regard, because § 512(f) "does not require an exacting consideration of fair use principles," Defendants contend that ENTTech is required to plead a lack of subjective good faith, supported by sufficient factual allegations plausibly to show the same.  MTD Reply 7:24–25; *see also id.* at 7:4–5. Defendants argue that § 512(f) requires only "so much consideration [of fair use] as to form a subjective good-faith belief" and "only the complete failure to consider fair use—and the knowledge that one failed to do so when submitting the DMCA takedown notice—has previously been found to violate this standard." *Id.* at 7:25–28.

[42]     *Cf., e.g.*, Motion for Sanctions 7:10–12 ("[H]ad Tauler reviewed ENTTech's infringements himself, he would have seen that fair use is not a plausible legal argument for any of the 34 unauthorized uses.").

[43]     The Court *makes no finding* that would preclude a future motion for summary judgment, by any party, in this case.  In *Lenz*, the Ninth Circuit explained that "[a] copyright holder who pays lip service to the consideration of

1 arguments in the dissenting opinion regarding the propriety of granting

2 summary judgment, the *Lenz* panel majority explained that the relevant question

3 was "whether the analysis [the defendant] did conduct of the [alleged infringing

4 material] was sufficient, not to conclusively establish as a matter of law that the

5 . . . use of the [copyrighted material] was fair, but to form a subjective good faith

6 belief that the video was infringing on [the] copyright." *Id.* at 1154 n.3.

7       Therefore, because it is generally a factual issue whether the analysis that

8 the defendant did conduct of the alleged infringing material was sufficient, *see*

9 *id.*, it necessarily follows that to plead a claim under § 512(f), it is enough for

10 ENTTech to allege that Defendants did not consider fair use (sufficiently or at

11 all) before issuing the takedown notices.  And that is exactly what ENTTech

12 alleges here.  Requiring ENTTech to allege more would effectively impose a

13 heightened pleading standard, *see* Fed. R. Civ. P. 9(b), and no authority holds

14 that claims under § 512(f) must be pleaded with particularity.[44]  Thus, although

15 it may be advisable for a plaintiff like ENTTech to aver additional facts (such as

16 its own analysis of fair use) to support the allegation that a defendant's fair use

17 analysis was merely *pro forma*, the Court cannot conclude that ENTTech is

18 required to plead such facts in order to state a plausible claim for relief under

19 § 512(f).

20

21 _____

fair use by claiming it formed a good faith belief ***when there is evidence to the***

22 ***contrary*** is still subject to § 512(f) liability." *Lenz*, 815 F.3d at 1154–55

(emphasis added) (citing cases denying summary judgment of § 512(f) claims

23 where there was evidence in the record to suggest the defendant did not form a

good faith belief).  In this regard, the plaintiff in *Lenz* submitted evidence that

24 the defendant "did not form any subjective belief about the video's fair use—

one way or another—because it failed to consider fair use at all, and knew that it

25 failed to do so." *Id.* at 1154.  The presence of such evidence, therefore,

precluded summary judgment. *Id.*  This case, in contrast, is still in its initial

26 stages.

[44]     Moreover, this Court previously held that ENTTech's claim under

27 § 512(f) does not turn upon allegations of fraud and, therefore, that ENTTech is

not required to plead its DMCA claim with particularity.  *See* Order Re Defs.'

28 Motion to Dismiss 6.

Based upon the foregoing, the Court finds that ENTTech sufficiently pleaded its DMCA claim.  Therefore, the Court **DENIES** Defendants' Motion to Dismiss with respect to ENTTech's DMCA claim.

### 3.     ENTTech's RICO Claim

In its TAC, ENTTech alleges that Defendants formed an enterprise that engages in a pattern of racketeering activity to harm ENTTech in violation of RICO.  Defendants argue that the *Noerr-Pennington* doctrine[45] bars ENTTech's RICO claim.[46]  In its Opposition, ENTTech acknowledges this Court's previous ruling that the DMCA takedown notices constitute petitioning activity for the purpose of the *Noerr-Pennington* doctrine.[47]  Accordingly, ENTTech's argument is limited to whether the sham litigation exception to the *Noerr-Pennington* doctrine applies in this case.[48]

Under that exception, a party cannot claim the protections of the *Noerr-Pennington* doctrine if it engaged in a "sham" litigation.  *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014).  To assert the sham litigation exception, ENTTech must allege that Defendants' transmittal of the DMCA notices—the petitioning conduct—was both (1) objectively baseless; and (2) subjectively improper.  *Id.*; *see also Prof'l Real Est. Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62 (1993).  In this regard, the Ninth Circuit has held that *Noerr-Pennington* immunity "is not a shield for petitioning conduct that, 'although ostensibly directed toward

---

[45]     *See E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1965); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).

[46]     Defendants also argue that ENTTech fails to plead its RICO claim with particularity.  However, because the Court finds that the *Noerr-Pennington* doctrine bars ENTTech's RICO claim, and that the sham litigation exception to that doctrine does not apply, the Court need not reach Defendants' second argument.

[47]     MTD Opposition 8:15–21.

[48]     *Id.*

-13-

influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006) (citation omitted).

ENTTech contends that Defendants' transmittal of the DMCA takedown notices was objectively baseless because: (1) Defendants did not have exclusive ownership of some of the allegedly infringing photographs and, therefore, Defendant Okularity (through Defendant Nicolini) did not have a good faith basis for believing that it was acting on behalf of the "owner of an exclusive right,"[49] *see* 17 U.S.C. § 512(c)(3)(A)(vi); and (2) no reasonable litigant in similar circumstances would have claimed damages in the amount claimed by Defendants in connection with the alleged infringement.[50]  The Court is not persuaded.

ENTTech's argument that Defendants did not have exclusive rights in the allegedly infringing material is not supported by sufficient allegations, such as facts to show that Defendants assigned their rights or granted an exclusive license.  Moreover, Defendants pleaded in their Counterclaim that they own the copyrights rights for all of the photos at issue.  The Court also is not persuaded that the broad exposure of the photos on the internet supports an inference that any Defendant has relinquished its exclusive rights in any of the photos.  The allegation that the photos were "widely distributed," credited as true, does not necessarily mean that Defendants relinquished their exclusive ownership of the works.  And there are insufficient facts alleged to support any inference to the contrary.

---

[49]     *See id.* at 9:19–10:15.

[50]     *See id.* at 10:16–23; *see also* TAC ¶ 23.

Accordingly, the Court concludes that ENTTech has not demonstrated that Defendants' transmittal of the DMCA takedown notices was objectively baseless. Because the Court finds that ENTTech failed to demonstrate objective baselessness, the Court need not address whether Defendants' claims were subjectively improper. *See White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000) ("[o]bjective baselessness is the *sine qua non* of any claim that a particular lawsuit is not deserving of First Amendment protection").

In sum, ENTTech's RICO claim is barred by the *Noerr-Pennington* doctrine. Furthermore, because ENTTech has already amended its RICO claim, to no avail, the Court finds that granting ENTTech leave to amend again would be futile. The Court, therefore, **GRANTS** Defendants' Motion to Dismiss ENTTech's RICO claim **without leave to amend**.

**B.** **The Motion for Sanctions and the OSC**

**1.** **Legal Standard**

The Federal Rules of Civil Procedure authorize a district court to impose sanctions against any "attorney, law firm, or party" who signs a pleading that is not well grounded in fact, is not warranted by existing law, is not made in good faith, or is brought for an improper purpose. *See* Fed. R. Civ. P. 11(b) &(c); *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002). Rule 11 imposes an affirmative duty upon counsel to investigate the law and the facts before filing. *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987). This duty requires a reasonable inquiry. *See G.C. & K.B. Investments*, 326 F.3d 1096, 1109 (9th Cir. 2003). The subjective intent of the filing attorney is irrelevant; the standard is objective "reasonableness," viewed from the perspective of a competent attorney admitted to practice before the district court. *See id.* In cases where "the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if

1  the attorney has conducted a reasonable and competent inquiry before signing

2  and filing it." *Christian*, 286 F.3d at 1127 (quotation marks omitted).

3  Finally, as a general rule, "Rule 11 should not be used to raise issues as to

4  the legal sufficiency of a claim or defense that more appropriately can be

5  disposed of by a motion to dismiss, a motion for judgment on the pleadings, a

6  motion for summary judgment, or a trial on the merits."  5A CHARLES ALAN

7  WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 1335 (4th ed. 2020

8  update).

9      **2.**  <u>**Analysis**</u>

10  As detailed in the procedural background section of this Order, with

11  respect to the issue of sanctions under Rule 11, there are two matters pending:

12  (1) Defendants' Motion for Sanctions; and (2) the Court's OSC re Sanctions.

13  These matters have been the subject of extensive briefing and oral argument.

14  The Court recognizes that the parties' arguments are detailed and nuanced.  For

15  the present purposes, however, the Court will focus on only the critical points.

16  The fundamental question before the Court is whether the challenged

17  allegations are objectively baseless.  That question turns upon whether

18  Mr. Tauler and his law firm, Tauler Smith LLP, conducted a reasonable inquiry

19  to support ENTTech's allegations regarding Defendants' process for issuing the

20  DMCA takedown notices and, in particular, ENTTech's allegations that

21  Defendants did not consider fair use before they issued the takedown notices.

22  In their Motion for Sanctions, Defendants contend that Mr. Tauler and

23  his law firm failed to make a reasonable inquiry and ignored evidence and

24  information provided by Defendants regarding ENTTech's DMCA claim and

25  RICO claim.  The thrust of Defendants' argument[51] relates to pre-litigation

26

27  ─────────────────────
[51]  Defendants organize the allegedly offending allegations within different

28  categories.  However, the broader question of whether Rule 11 was violated
turns upon whether ENTTech's allegations—concerning Defendants'

communications between Mr. Tauler and Defendants and their counsel.  In the course of those communications, Defendants advised Mr. Tauler that (1) Mr. Nicolini conducted an analysis of fair use with respect to each alleged infringement before transmitting the respective DMCA takedown notices;[52] and (2) the DMCA notices were not automatically submitted without human intervention.[53]  To support these assertions, Defendants provided Mr. Tauler with a spreadsheet purporting to show that Mr. Nicolini reviewed each alleged infringement before transmitting the takedown notices and screenshots of the allegedly infringing photos.[54]  Defendants therefore contend that ENTTech's allegations contradicting this information run afoul of Rule 11.

The Court's analysis with respect to the *Lenz* decision, which is discussed in the preceding section, is dispositive of whether sanctions are warranted. Because the Court finds that it is generally a factual issue whether the Defendants' analysis of the alleged infringing material was sufficient, *see Lenz*, 815 F.3d at 1154 n.3, the Court cannot conclude that the challenged allegations are objectively baseless under Rule 11.  The parties have strong disagreements with respect to the inquiry that is required under these circumstances. However, Defendants' arguments effectively ask this Court to rule on the merits of ENTTech's DMCA claim, which is not appropriate in the context of a motion under Rule 11 at this stage of the litigation.  Similarly, notwithstanding the Court's decision to dismiss 's RICO claim with prejudice, in view of the broad standard set forth in *Lenz*; the nature of Defendants' process for generating DMCA takedown notices; and the parties' differing views with

---

analytical process and process for transmitting the takedown notices—are frivolous.

[52]    *See* Motion for Sanctions 7:3–9:10.

[53]    *See id.* at 9:11–10:4.

[54]    *See id.* at 7:18–8:11.

-17-

respect to the disputed facts of this case, the Court concludes that it was not objectively unreasonable for ENTTech to pursue a RICO theory of liability. Accordingly, Defendants' Motion for Sanctions is **DENIED**,[55] and the Court's OSC is **DISCHARGED**.

The Court also finds that Defendants' Motion for Sanctions was not objectively baseless.  Therefore, ENTTech's counterdemand for attorneys' fees in defense of Defendants' Motion for Sanctions[56] is **DENIED**.

The issues in this case are hotly contested, and, in the Court's view, the parties' have engaged in extremely aggressive litigation tactics.  Nevertheless, based on the present record, the Court cannot find that ENTTech, or Mr. Tauler, or Tauler Smith LLP, or any party, has run afoul of Rule 11.

## IV.  CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1.    Defendants' Motion to Dismiss ENTTech's RICO claim is **GRANTED**, **without leave to amend**.  Defendants' Motion to Dismiss ENTTech's DMCA claim is **DENIED**.

2.    Defendants are **DIRECTED** to file their respective pleadings in response to ENTTech's Third Amended Complaint on or before March 24, 2021.

3.    Defendants' Motion for Sanctions is **DENIED**.

---

[55]    Defendants complain about the resources that they have been required to expend in defense of ENTTech's § 512(f) claim—which they regard as without merit—particularly in view of their copyright infringement Counterclaim—which they regard as having great merit.  *See* Motion for Sanctions 15:7–17:16 & 19:1–4; Defs.' OSC Response 14:5–16:2.  If Defendants are correct—if ENTTech has indeed infringed Defendants' copyrights—then Defendants have powerful potential remedies under the Copyright Act.  *See, e.g.,* 17 U.S.C. § 505; *see also Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 557–59 (9th Cir. 1996) (a district court's discretion to award prevailing attorneys' fees under § 505 may be influenced by a number of factors, including "the plaintiff's culpability in bringing or pursuing the action").

[56]    *See* Sanctions Opposition 15:25–28.

4.     ENTTech's request for attorneys' fees in connection with its defense against Defendants' Motion for Sanctions is **DENIED**.

5.     The Court's OSC is **DISCHARGED**.

**IT IS SO ORDERED.**

Dated: March 10, 2021

John W. Holcomb
UNITED STATES DISTRICT JUDGE