1  Peter R. Afrasiabi (Bar No. 193336)
   pafrasiabi@onellp.com
2  **ONE LLP**
   4000 MacArthur Boulevard
3  Each Tower, Suite 500
   Newport Beach, CA 92660
4  Telephone:  (949) 502-2870
   Facsimile:  (949) 258-5081
5
   David W. Quinto (Bar No. 106232)
6  dquinto@onellp.com
   Joanna Ardalan (Bar No. 285384)
7  jardalan@onellp.com
   **ONE LLP**
8  9301 Wilshire Boulevard
   Penthouse Suite
9  Beverly Hills, CA 90210
   Telephone:  (310) 866-5157
10 Facsimile:  (310) 943-2085

11 Attorneys for Defendants and
   Counterclaimants Backgrid USA, Inc.,
12 Splash News and Picture Agency, LLC, and
   Xposure Photo Agency, Inc.
13

14            **UNITED STATES DISTRICT COURT**

15            **CENTRAL DISTRICT OF CALIFORNIA**

16 ENTTECH MEDIA GROUP LLC,          Case No.: 2:20-cv-06298 JWH (Ex)
                                      Hon. John W. Holcomb
17            Plaintiff,

18      v.                            **BACKGRID USA, INC.'S**
                                      **OPPOSITION TO PLAINTIFF'S**
19 OKULARITY, INC.; JON NICOLINI;     **MOTION FOR JUDGMENT ON THE**
   BACKGRID USA, INC.; SPLASH         **PLEADINGS**
20 NEWS AND PICTURE AGENCY,
   LLC; AND XPOSURE PHOTO
21 AGENCY, INC.                       Complaint Filed: July 15, 2020

22            Defendants.

23
24
25
26
27
28

---
            **BACKGRID'S OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

1

## TABLE OF CONTENTS

2

3    I.    INTRODUCTION ...................................................................................................1

4    II.   STATEMENT OF FACTS ........................................................................................1

5    III.  LEGAL STANDARD ............................................................................................2

6    IV.   BACKGRID HAS SUFFICIENTLY ALLEGED ITS OWNERSHIP OF THE
           PHOTOGRAPHS INFRINGED BY ENTTECH ..................................................3

7          A.   Backgrid Has Alleged that It Owns the Rights to the Photographs at
                Issue in Its Copyright Infringement Claim .................................................3

8          B.   Backgrid's Claims Should Not be Dismissed Because It Attached True
                and Accurate Screenshots of the Infringements .......................................5

9

10   V.    BACKGRID HAS SUFFICIENTLY ALLEGED ENTTECH'S
           INFRINGEMENT OF BACKGRID'S PHOTOGRAPHS .............................5

11         A.   Backgrid Sufficiently Alleges "How" ENTtech Infringed Its
                Photographs ................................................................................................5

12         B.   Without Any Legal Support, ENTtech Argues that Copyright
                Infringement Requires a Heightened Pleading Standard ........................6

13

14   VI.   BACKGRID'S CLAIM IS NOT PRECLUDED BY THE DOCTRINE OF
           UNCLEAN HANDS ...............................................................................................7

15   VII.  BACKGRID HAS ADEQUATELY ALLEGED THAT IT IS ENTITLED TO
           AN INJUNCTION ..................................................................................................8

16

17   VIII. THE DECLARATORY RELIEF CLAIM IS NOT DUPLICATIVE OF THE
           COPYRIGHT INFRINGEMENT CLAIM ..........................................................9

18

19   IX.   BACKGRID HAS ADEQUATELY ALLEGED MISREPRESENTATION
           UNDER 17 U.S.C. § 512(F) ...............................................................................10

20   X.    ENTTECH DID NOT ADEQUATELY MEET AND CONFER....................10

21   XI.   CONCLUSION .....................................................................................................11

22

23

24

25

26

27

28

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*A & M Records. Inc. v. Napster. Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ............................................................... 6

6

*Backgrid USA, Inc. v. Sessoms*,
   2:19-cv-03540-AB-MRW ...................................................................... 9

7

8

*Beery v. Hitachi Home Electronics (America), Inc.*,
   157 F.R.D. 477 ....................................................................................... 5

9

10

*Brighton Collectibles, Inc. v. Pedre Watch Co., Inc.*,
   2013 WL 5719071 (S.D. Cal. Oct. 21, 2013) ....................................... 8

11

12

*Broderbund Software, Inc. v. Unison World*,
   648 F.Supp. 1127 (N.D.Cal.1986) .......................................................... 7

13

14

*Butler v. Resurgence Fin., LLC*,
   521 F. Supp. 2d 1093 (C.D. Cal. 2007) ................................................. 2

15

*Chihuly, Inc. v. Kaindl*,
   2006 U.S. Dist. LEXIS 2420 (W.D. Wash. Jan. 11, 2006) ................... 6

16

17

*Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist
   Congregational Church*,
   887 F.2d 228 (9th Cir. 1989) ................................................................. 3

18

19

20

*Greg Young Publishing Inc. v. Zazzle, Inc.*,
   2020 WL 3871451 (C.D. Cal., July 9, 2020) ........................................ 8

21

22

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
   896 F.2d 1542 (9th Cir. 1990) ............................................................... 3

23

*Hybrid Promotions, LLC v. Zaslavsky*,
   2016 WL 10988656 (C.D. Cal. 2016) .................................................... 3

24

25

*Mavrix, Inc. v. Love Tree Fashion, Inc.*,
   2013 WL 4763869 (C.D. Cal. Sept. 4, 2013) ........................................ 3

26

27

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
   518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................. 7

28

ii

*Morfin-Arias v. Knowles*,
   2018 WL 1710369 (N.D. Cal. Apr. 9, 2018)....................................................7

*In re Napster, Inc. Copyright Litigation*,
   191 F.Supp.2d 1087 (N.D. Cal. 2002).............................................................4

*Nirvana, LLC v. Mark Jacobs Intern, LLC*,
   2019 WL 7817082 at *6 (C.D. Cal. Nov. 8, 2019) .........................................4

*Payne v. Manilow*,
   2018 WL 6321638, at *6 (C.D. Cal. Oct. 29, 2018) ........................................4

*Sun Savings & Loan Ass'n v. Dierdorff*,
   825 F.2d 187 (9th Cir. 1987) ...........................................................................3

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) ...........................................................................9

**Statutes**

17 U.S.C. § 106....................................................................................................5, 7

17 U.S.C. § 410(c) ....................................................................................................3

17 U.S.C. § 501(a) ....................................................................................................5

17 U.S.C. § 512(F) ..................................................................................................10

DMCA ...............................................................................................................10, 11

**Other Authorities**

Fed. R. Civ. P. 9................................................................................................1, 10

Fed. R. Civ. P. 12(b)(6) ............................................................................................3

Fed. R. Civ. P. 12(c) .................................................................................................2

Fed. R. Civ. P. 12(e) .................................................................................................5

1-12 *Nimmer on Copyright* § 12.09[B] (2014) .......................................................6

4 *Nimmer on Copyright* § 13.09 (2018) ..................................................................7

5 Wright & Miller, *Federal Practice & Procedure* § 1237 (3d ed.).......................4

**BACKGRID'S OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

# I.     INTRODUCTION

Plaintiff and Cross-Defendant ENTtech is a serial and repeat infringer of Defendants and Cross-Complainants Backgrid USA, Inc. ("Backgrid"), Splash News and Picture Agency LLC ("Splash"), and Xposure Photo Agency, Inc.'s ("Xposure") (collectively the "Photo Agencies") valuable celebrity photographs. ENTtech has demonstrated a pattern of infringing the Photo Agencies' celebrity photographs on its website, its Twitter account, and its Instagram account.

Cross-defendant's motion for judgment on the pleadings, along with the motions filed concurrently against Xposure and Splash, presents a smorgasbord of unsupported legal theories and factual assumptions that cannot be the basis for dismissal. Here, ENTtech challenges whether Backgrid alleged copyright infringement because ENTtech contends chain of title must be pleaded, when case law says the opposite, and argues that Rule 9 applies to pleading copyright claims, when it does not. ENTtech also requests dismissal because it claims Backgrid has "unclean hands" for asking Instagram to comply with the DMCA. Requesting compliance with the law can never be the basis for unclean hands, a doctrine rarely adopted by courts.  It then argues that Backgrid should not be entitled to an injunction while conflating the standard for *entering* a permanent injunction with the standard for pleading a claim for relief.  As with the motions against Splash and Xposure, ENTtech incorrectly asserts that the declaratory relief claim is duplicative of Backgrid's copyright infringement claim (it is not), and that misrepresentation under the DMCA must conform to Rule 9 pleading requirements even though this Court has held otherwise.

Backgrid respectfully requests that this motion be denied.

# II.    STATEMENT OF FACTS

Backgrid, Splash, and Xposure are Hollywood's largest celebrity-photograph agencies that regularly license celebrity-driven content to top-tier outlets, such as TMZ, Entertainment Tonight, the New York Post, People Magazine, the Huffington

1

Post, the Daily Mail, as well as many television stations, newspapers and prominent media outlets throughout the world.  (Dkt. 53, ¶ 9.) Each license is granted for valuable consideration of up to hundreds of thousands of dollars. *Id.*

Counter-defendant EntTech touts itself as an "entertainment technology ecosystem that leverages creative content, social amplification and proprietary data to deliver shareable entertainment to a diverse group of audiences."  (Dkt. 53, ¶ 12.) Among its properties is Paper Magazine, a fashion- and celebrity-driven magazine that, on information and belief, makes huge profits showcasing celebrity content. On information and belief, EntTech uses and/or has used social media, such as Instagram and Twitter, to promote its magazine and engage with potential readers. *Id.*

EntTech has reproduced, distributed, displayed, and created unauthorized derivative works of the timely registered Agency Photographs on its Social Media accounts and/or its Website without consent or license. (Dkt. 53, ¶ 14.) The Photo Agencies attached to their counterclaims screenshots of the infringements at issue and the copyright registrations for each. (*See e.g.* Dkt. 53, ¶ 11, 14, Dkt. 53-1- 53-12.)

In addition to copyright infringement, the Photo Agencies also alleged that ENTtech submitted DMCA counternotifications that misrepresented under penalty of perjury that the Photo Agencies' notices were sent as a result of a "mistake or misidentification." Those notifications were also attached to the counterclaim. (Dkt. 53-13.)

## III.   LEGAL STANDARD

Judgment on the pleadings "is proper only when there is no unresolved issue of fact, and no question remains that the moving party is entitled to a judgment as a matter of law." *Butler v. Resurgence Fin., LLC*, 521 F. Supp. 2d 1093, 1095 (C.D. Cal. 2007) (*citing Honey v. Distelrath*, 195 F.3d 531, 532-33 (9th Cir. 1999)). When addressing a motion under Rule 12(c), "the allegations of the non-moving party must

be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).  All allegations of fact by Backgrid must therefore be construed in the light most favorable to it.  *See Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir. 1989). "It must appear beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle him to relief." *Sun Savings & Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th Cir. 1987).

## IV.    BACKGRID HAS SUFFICIENTLY ALLEGED ITS OWNERSHIP OF THE PHOTOGRAPHS INFRINGED BY ENTTECH

### A.    Backgrid Has Alleged that It Owns the Rights to the Photographs at Issue in Its Copyright Infringement Claim

Backgrid has alleged that it owns "all rights, title and interest" to the works at issue. Backgrid attached copies of its copyright registrations of the works, even though doing so is ***not required*** to allege copyright infringement.  *Hybrid Promotions, LLC v. Zaslavsky,* cv 16-02227-RAO, 2016 WL 10988656, *10 (C.D. Cal. 2016) ("While it may be helpful for claimants to identify by number their copyright registrations in their initial pleadings, and indeed necessary to do so at later stages in litigation, the failure to do so is not fatal at the FRCP 12(b)(6) stage."); *Mavrix, Inc. v. Love Tree Fashion, Inc.*, No. 2:13-cv-04565-ODW (JCGx), 2013 WL 4763869, at *2 (C.D. Cal. Sept. 4, 2013). Moreover, the registration provides *prima facie* evidence of all facts stated in the certificate. 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.")

ENTtech's contention that this motion should be granted because AKM-GSI Media, Inc. appears as the claimant on one of the registrations ignores Backgrid's allegation that "Backgrid, or the previous owner of the works that later assigned all

3

1    rights, title and interest to those works to Backgrid filed for copyright registration."

2    The allegations, taken as true, amount to ownership. (Dkt. 53, ¶ 24.)

3        *In re Napster, Inc. Copyright Litigation,* 191 F.Supp.2d 1087, 1101 (N.D. Cal.

4    2002), cited by ENTtech, does not require otherwise. That case, even as explained

5    by ENTtech, provides only that the copyright owner bears the burden ***of proof***.  The

6    only other case cited by ENTtech is also inappropriate because it held that on a

7    motion for summary judgment, the plaintiff needed to show proof of its ownership.

8    *Id.*

9        The issue on this motion is whether Backgrid adequately pleaded ownership.

10    ENTtech's contention that Backgrid must plead chain of title is not supported by

11    case law. "Courts have held that '[t]o the extent defendants argue that plaintiff failed

12    to allege an unbroken chain of title to the rights at issue, it is unnecessary for the

13    complaint to include such detailed factual recitation.'" *Payne v. Manilow,* CV-18-

14    3413 PSG (PLAx), 2018 WL 6321638, at *6 (C.D. Cal. Oct. 29, 2018) (citing *Gym*

15    *Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 894 (S.D.N.Y.

16    Sept. 12, 2016);  *U2 Home Entm't, Inc. v. Kylin TV, Inc.*, 20007 WL 2028108, at *7

17    (E.D.N.Y. July 11, 2007)); *Nirvana, LLC v. Mark Jacobs Intern, LLC,* cv-18-10743

18    JAK (SKx), 2019 WL 7817082 at *6 (C.D. Cal. Nov. 8, 2019) ("That the Complaint

19    does not specifically allege the process by which any such 'work for hire' or similar

20    arrangement resulted in ownership by Nirvana, Inc. is not a 'fatal' 'omission[ ].'"

21    Dkt. 26 at 18. The adequacy of Nirvana's 'chain of title' is instead an issue to which

22    Defendants may respond on its merits through discovery and subsequent

23    proceedings."); 5 Wright & Miller, *Federal Practice & Procedure* § 1237 (3d

24    ed.) ("Complaints [for copyright infringement] simply alleging present ownership by

25    the plaintiff, registration in compliance with the applicable statute, and infringement

26    by the defendant, have been held sufficient under the rules.").

27    / / /

28    / / /

4

**BACKGRID'S OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

**B.    Backgrid's Claims Should Not be Dismissed Because It Attached True and Accurate Screenshots of the Infringements**

ENTtech complains that screenshots of its infringements at times contain additional infringements of works belonging to third parties. If the motion is granted on this basis, Backgrid will be punished for attaching true and accurate screenshots to its complaint, which, of course, is preposterous.  ENTtech has copies of the registrations at issue and is therefore on notice as to the subject matter of the photographs it infringed. (*See* Exhibit B-1 showing no references to the Queen of England.) Even if ENTtech had brought a Rule 12(e) motion, such motion should be denied because ENTtech could have found answers to its purported questions through discovery.  *Beery v. Hitachi Home Electronics (America), Inc.,* 157 F.R.D. 477, 480 (*"*If the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied.").

**V.    BACKGRID HAS SUFFICIENTLY ALLEGED ENTTECH'S INFRINGEMENT OF BACKGRID'S PHOTOGRAPHS**

**A.    Backgrid Sufficiently Alleges "How" ENTtech Infringed Its Photographs**

"Anyone who violates any of the exclusive rights of the copyright owner as provided by section[] 106 [] is an infringer of the copyright []." 17 U.S.C. § 501(a). A copyright owner holds the exclusive rights to reproduce the work, to prepare derivative works based on the copyrighted work, to distribute copies of the work, to publicly perform the work, and to publicly display the copyrighted work. 17 U.S.C. § 106.

Backgrid has attached screenshots of ENTtech's infringements and alleged that "EntTech has reproduced, displayed, and created unauthorized derivative works of the timely registered [photos] on its Social Media accounts and/or its Website without consent or license." *See e.g.* Dkt. 53, ¶14. That is sufficient to put ENTtech on notice of how it violated Backgrid's exclusive rights under Section 106. Each

5

screenshot evidences, at a minimum, a reproduction, distribution, and public display of Backgrid's works. In many instances ENTtech has also created unauthorized derivative works.

ENTtech's contention that Backgrid has not identified the location of the infringement is also unfounded. Backgrid's screenshots include a url to the online location of the infringing work giving ENTtech specific information as to where the infringement appeared. Backgrid thus provided **more** information than is necessary because ***there is no requirement that copies of the infringement be attached to the complaint.*** See 1-12 *Nimmer on Copyright* § 12.09[B] (2014) ("**In a statutory infringement action**, **it is no longer necessary that either a copy of** the **work allegedly infringed**, **or a copy of the allegedly infringing work**, **accompany** the **complaint**."); *Chihuly, Inc. v. Kaindl*, 2006 U.S. Dist. LEXIS 2420, at *7 (W.D. Wash. Jan. 11, 2006) ("Plaintiffs are not required to attach copies of the allegedly infringed and infringing works.").

## B. Without Any Legal Support, ENTtech Argues that Copyright Infringement Requires a Heightened Pleading Standard

ENTtech argues that to plead copyright infringement, Backgrid must allege "how or where the screenshots were obtained by Backgrid, when the screenshots were obtained, or how or why the image was infringed." Dkt. 89 at 5:21-25. Further, ENTtech claims "Backgrid must allege the very basics as to the specific registration for each image [] including the chain of title [], the date and location where infringement allegedly occurred, and the dates of publication and discovery of the alleged infringement." *Id.* at 6:23-26.   ENTtech cannot cite to any legal authority for these novel requirements to plead copyright infringement. All that is required to plead copyright infringement is ownership and infringement, which has been alleged as discussed, *supra*.  *A & M Records. Inc. v. Napster. Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) ("Plaintiffs must satisfy two requirements to present a prima facie case of direct [copyright] infringement: (1) they must show ownership of the

6

allegedly infringed material and (2) they must demonstrate that the

alleged infringers violate at least one exclusive right granted to copyright holders

under 17 U.S.C. § 106."). And, as discussed *supra*, registration need only be alleged.

There is no requirement that it even be included by registration number or by

attachment.

## VI.   BACKGRID'S CLAIM IS NOT PRECLUDED BY THE DOCTRINE OF UNCLEAN HANDS

"To establish unclean hands, a defendant must demonstrate (1) inequitable

conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim

which it has asserted against the defendant; and (3) plaintiff's conduct injured the

defendant." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d

1197, 1223 (C.D. Cal. 2007) (quoting *Survivor Productions LLC v. Fox Broad. Co.*,

No. CV01-3234 LGB (SHX), 2001 WL 35829270, at *3 (C.D. Cal. June 12, 2001) )

(citing *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir.

1987) ). "The application of the unclean hands doctrine is generally a fact intensive

inquiry," *Morfin-Arias v. Knowles*, No. 16-CV-06114-BLF, 2018 WL 1710369, at

*8 (N.D. Cal. Apr. 9, 2018), and the "defense is recognized only rarely." 4 *Nimmer

on Copyright* § 13.09 (2018) (citing *Dream Games of Ariz., Inc. v. PC Onsite*, 561

F.3d 983, 990 (9th Cir. 2009); *L.A. News Serv. v. Tullo*, 973 F.2d 791, 799 (9th Cir.

1992) ). "[A] defense of unclean hands may be asserted in a copyright infringement

action only where the defendant can show that he has personally been injured by the

plaintiff's conduct." *Broderbund Software, Inc. v. Unison World,* 648 F.Supp. 1127

(N.D.Cal.1986) (citing *Mitchell Brothers Film Group v. Cinema Adult Theater,* 604

F.2d 852, 863 (5th Cir.1979)).

ENTtech contends that Backgrid engaged in inequitable conduct because its

copyright agent reminded Instagram that it has an obligation to terminate repeat

infringers should it wish to rely on a Digital Millennium Copyright Act ("DMCA")

safe harbor defense.   Section 512 provides internet service providers ("ISPs") a safe

7

harbor from infringement claims if, and only if, those ISPs comply with certain requirements. One of those requirements, codified under Section 512(i), requires that ISPs adopt and implement a reasonable repeat infringer policy, pursuant to which repeat infringers are terminated or suspended by the ISP after receiving a threshold number of DMCA notices.[1] Here, Okularity, Backgrid's agent, simply reminded Instagram that it had received a certain number of notices relating to the Paper Magazine account, thus triggering the suspension requirement.  Asking Instagram to follow the law is not inequitable conduct. Even assuming *arguendo* that asking Instagram to comply with the DMCA could amount to inequitable conduct, there is no causation between Backgrid or Okularity's request and any harm.  Instagram was required to take down ENTtech's account to comply with the DMCA regardless of any complaint. It therefore cannot be assumed that the account was taken down because of the DMCA notice.

## VII.   BACKGRID HAS ADEQUATELY ALLEGED THAT IT IS ENTITLED TO AN INJUNCTION

ENTtech has confused two standards: the standard for pleading entitlement to a permanent injunction with the standard for ***entering*** a permanent injunction. ENTtech cites to *Brighton Collectibles, Inc. v. Pedre Watch Co., Inc.,* No. 11-cv-00673 AJB, 2013 WL 5719071, at *4 (S.D. Cal. Oct. 21, 2013) in which, the court refused to issue a permanent injunction because the request was based only on conclusory allegations of irreparable harm.  It did not involve a motion to dismiss or a motion for judgment on the pleadings.  Similarly, *Greg Young Publishing Inc. v. Zazzle, Inc.,* No., 2:16-cv-04587 SVW (KSx) 2020 WL 3871451 (C.D. Cal., July 9, 2020), concerned a motion to enter a permanent injunction (and is currently pending appeal).

---

[1] What constitutes a "reasonable" repeat infringer policy and how many strikes an infringer must receive to be considered a "repeat infringer" are not defined by statute.

A determination of whether Backgrid is entitled to injunctive relief at the pleading stage is not appropriate. *See Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 975, fn. 2 (9th Cir. 2010) (finding a determination as to whether certain damages were barred by contract as a factual inquiry not appropriate for the pleading stage of litigation).

Even so, ENTtech's assumption that merely because an Instagram account is taken down there is no continuing harm to Backgrid is wrong.  As shown in Exhibit B-1 and B-4 of docket 53, ENTtech infringed Backgrid's copyrights on its Twitter account, on its Paper Magazine website, and on its Instagram account; ENTtech has multiple online properties capable of infringing Backgrid's works.

Even though ENTtech would like to point its finger at the victim, Backgrid's litigation history is irrelevant. The stipulation in *Backgrid USA, Inc. v. Sessoms*, 2:19-cv-03540-AB-MRW, concerned breach of a settlement agreement. ENTtech should not have any information regarding that confidential settlement agreement. And the circumstances of that case have no bearing on whether irreparable damage may be caused by ENTtech.

## VIII.  THE DECLARATORY RELIEF CLAIM IS NOT DUPLICATIVE OF THE COPYRIGHT INFRINGEMENT CLAIM

ENTtech falsely contends that Backgrid's claim for declaratory relief seeks the same relief as its claim for copyright infringement. (Dkt. 89, 11:11-12.) Backgrid seeks a declaration that "EntTech knowingly and materially misrepresented that the Agency Photographs which it had caused to be uploaded to the Instagram Account were taken down as a result of mistake or misidentification" and, as such, Backgrid is entitled to injunctive relief and damages for these misrepresentations.  The injunctive relief requested is thus directed to ENTtech's misrepresentations in its DMCA counternotifications, not to copyright infringement.  As such, the declaratory relief does not seek the same relief as the claim for copyright infringement and should not be dismissed.

9

## IX.    BACKGRID HAS ADEQUATELY ALLEGED MISREPRESENTATION UNDER 17 U.S.C. § 512(F)

ENTtech's sole basis for seeking dismissal of Backgrid's misrepresentation claim is that it does not satisfy the heightened pleading standard of Rule 9, but ***the Court has already held that a heightened standard is not required for a section 512(f) claim***. (Dkt. 91 at 11, fn. 43.)

Even if the heightened standard applied, which it does not, the offending counternotifications were attached to the counterclaims. (Dkt. 53-13.)  Each notification shows that Mr. Tauler (the "who"), falsely declared under penalty of perjury that Backgrid's takedown notification was a result of a "mistake or misidentification" (the "what"), online, *i.e.* through electronic message to Instagram (the "where"), and each message that gave notice to Okularity of ENTtech's counternotification is timestamped (the "when").  Therefore, Backgrid has alleged more than what is required to support a DMCA claim for misrepresentation.

The misrepresentation under 512(f) claim should not be dismissed.

## X.    ENTTECH DID NOT ADEQUATELY MEET AND CONFER

During the conference of counsel, ENTtech raised unclean hands, a theory that Backgrid should not receive injunctive relief, and a theory that the declaratory relief claim should be dismissed. (Ardalan Decl., ¶ 2.) ENTtech did not raise numerous issues that were included in the motions against the Photo Agencies. ENTtech never met and conferred regarding its standing and judicial estoppel arguments with respect to Splash's motion, it never conferred about its argument that infringement and ownership were not sufficiently pleaded (ENTtech raised a different legal argument relating to ownership that it was persuaded by the Photo Agencies to drop), it never conferred about a heightened pleading standard applying to the DMCA misrepresentation claim, and that statutory damages did not apply to certain photographs, ignoring that Xposure never claimed they were timely registered and did not include them in the copyright infringement claim. Had

10

ENTtech raised these issues during our conference of counsel, the Photo Agencies would have provided ENTtech case law that ought to have persuaded it to avoid this motion. *Id.*

## XI.  CONCLUSION

Backgrid respectfully requests that the Court deny this motion in full. Should the Court grant any part of this motion, Backgrid requests that it be given leave to amend.

Dated:  March 19, 2021                                    **ONE LLP**

                                                          By:  /s/ Joanna Ardalan
                                                               Joanna Ardalan
                                                               Peter R. Afrasiabi
                                                               David W. Quinto

                                                               Attorneys for Defendants and
                                                               Counterclaimants

                                                               Backgrid USA, Inc.; Splash News and
                                                               Picture Agency, LLC, Xposure Photo
                                                               Agency, Inc.

11

**BACKGRID'S OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**